# EXHIBIT B



*Thi:*

Doc#: 0800931088 Fee: $114.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 01/09/2008 01:08 PM Pg: 1 of 46

**THIS DOCUMENT
PREPARED BY AND
AFTER RECORDING
RETURN TO:**

Adam T. Berkoff, Esq.
DLA Piper US LLP
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60601

## DECLARATION OF PARTY WALL RIGHTS, COVENANTS, CONDITIONS, RESTRICTIONS AND EASEMENTS FOR THE ENCLAVE AT GALEWOOD CROSSINGS TOWNHOMES

THIS DECLARATION OF PARTY WALL RIGHTS, COVENANTS, CONDITIONS, RESTRICTIONS AND EASEMENTS FOR THE ENCLAVE AT GALEWOOD CROSSINGS TOWNHOMES (this "**Declaration**") is made and entered into as of the _4TH_ day of _January_, 2008, by **RSD GALEWOOD, LLC,** an Illinois limited liability company (hereinafter referred to as "**Declarant**").

## W I T N E S S E T H:

A.   Declarant is the owner and legal title holder of certain real estate in the County of Cook and State of Illinois, which real estate is legally described in Exhibit A attached hereto and by this reference made a part hereof (the "**Property**").

B.   Declarant intends to construct on the Property a development containing Seventy Six (76) Townhome Units, as hereinafter defined, together with certain common areas which will require continuing care and maintenance for the privacy, benefit and enjoyment of all persons owning and residing in the Townhome Units.

C.   The Property is a part of a larger development (the "**Master Development**") that the Declarant intends to construct, which includes approximately One hundred and Ninety Two (192) residential units, including townhome units, single family units, 2-flat buildings and condominium units, if any.

D.   Declarant has deemed it desirable for the efficient preservation of the values and amenities of the Property to create an agency to which shall be delegated and assigned the powers of maintaining and administering aspects of the Townhome Units and the Townhome Common Lots, as

Final  1-3-08

hereinafter defined, and administering and enforcing the covenants and restrictions hereinafter contained and created.

E.     The Association (as hereinafter defined) has been incorporated under the laws of the State of Illinois as a not-for-profit corporation for the purpose of exercising the functions aforesaid.

F.     Declarant desires to establish for its own benefit and the mutual benefit of all future owners, tenants and occupants of the Property and any part thereof, certain easements or rights in, over, under, upon and along the Property and certain mutually beneficial restrictions and obligations with respect to the use, conduct and maintenance thereof.

**NOW, THEREFORE,** Declarant hereby declares that the Property and such additions thereto as may hereinafter be made is and shall be transferred, held, sold, conveyed and accepted subject to this Declaration of Party Wall Rights, Covenants, Conditions, Restrictions and Easements. Declarant does hereby further declare that the following easements, covenants, restrictions, conditions, burdens, uses, privileges, charges and liens shall: (1) exist at all times hereafter amongst all parties having or acquiring any right, title or interest in any portions of the Property; (2) be binding upon and inure to the benefit of each Townhome Unit Owner (as hereinafter defined); and (3) run with the land subjected to this Declaration, to be held, sold and conveyed subject thereto.

## ARTICLE 1

## DEFINITIONS

"**Association**" shall mean and refer to an Illinois not-for-profit corporation, its successors and assigns to be known by the name of "THE ENCLAVE AT GALEWOOD CROSSINGS TOWNHOME ASSOCIATION", or such other name or names as Declarant shall designate. All Townhome Unit Owners shall be members of the Association, as more particularly described in this Declaration.

"**Board**" shall mean the Board of Directors of the Association as constituted at any time or from time to time, in accordance with the applicable provisions of Article 3.

"**Building**" shall mean a structure which contains Townhome Units, including, without limitation, the structural components of such structure, the roofs and other exterior portions of the structure, but excluding garage doors and all exterior doors, windows, side lights, fixtures and decks and is located on two or more Townhome Lots.

"**By-Laws**" shall mean the By-Laws of THE ENCLAVE AT GALEWOOD CROSSINGS TOWNHOME ASSOCIATION, a copy of which is attached as Exhibit "B" hereto and by this reference made a part hereof.

"**City**" shall mean the City of Chicago, a municipal corporation.

"**Declarant**" shall mean and refer to RSD GALEWOOD, LLC, an Illinois limited liability company.

Final - 1-3-08                                                      2

"**Declaration**" shall mean this Declaration of Party Wall Rights, Covenants, Conditions, Restrictions and Easements for The Enclave at Galewood Crossings Townhomes.

"**Eligible Mortgage Holder**" shall mean each holder of a first mortgage on a Townhome Lot or Townhome Unit that has requested in writing that the Association notify it of any proposed action that requires consent of a specified percentage of mortgage holders.

"**Master Association**" shall mean the association created by the Master Declaration.

"**Master Association Assessments**" shall mean the assessments owed by the Townhome Units Owners to the Master Association pursuant to the Master Declaration.

"**Master Association Board**" shall mean the Board of Directors of the Master Association as constituted at any time or from time to time.

"**Master Declaration**" shall mean that certain Master Declaration of Covenants, Conditions Restrictions, Easements and Rights for The Enclave at Galewood Crossings executed by Declarant and recorded on December 10, 2007 in the Office of the Recorder of Cook County, Illinois, as Document Number 0734434123, as the same may be amended from time to time.

"**Master Development**" as defined in Recital C.

"**Material Amendment**" shall mean any amendment to this Declaration, By-Laws or the Association's articles of incorporation that would change any of the following in a manner other than as expressly provided herein: voting rights in the Association; assessment liens; subordination of assessments liens; rights to, or use of, any portion of the Townhome Common Lots; termination of the legal status of the Association or the Property following substantial destruction or condemnation; or any provisions that expressly benefit holders, insurers or guarantors of mortgages secured by portions of the Property.

"**Member**" shall mean and refer to any person or entity who holds membership in the Association.

"**NFR Letter**" shall mean those certain "No Further Remediation" letters issued by the Illinois Environmental Protection Agency in response to the performance of certain environmental remediation work and the submission by Declarant of environmental remediation reports, including the several Remedial Action Completion Reports issued for various portions of the Property and to be recorded upon their issuance against title to the relevant portions Property in the Office of the Recorder of Deeds of Cook County, Illinois, within the time specified therein. Upon completion of construction of every Building to be constructed within the Property, at least one, NFR Letter will have been issued and recorded against title to every Townhome Lot and every Townhome Common Lot.

"**Occupant**" shall mean any person or persons other than the Townhome Unit Owner in possession of a Townhome Unit.

"**Plat of Subdivision**" shall mean Galewood Residential Plat of Subdivision recorded March 29, 2007 as document number 0708815072 in the Office of the Recorder of Deeds of Cook County, Illinois, as the same may be amended from time to time.

"**Property**" shall mean and refer to that certain real estate described in Exhibit "A" attached hereto and by this reference made a part hereof and such additions thereto as may hereafter be brought within the jurisdiction of this Declaration and the Association.

"**Sewer Covenant**" shall mean that certain Covenant dated March 1, 2007 and recorded March 8, 2007 as document number 0706739002 in the Office of the Recorder of Deeds of Cook County, Illinois.

"**Townhome Common Lots**" shall mean Lots 163, 164, 165 and 168 as shown on the Plat of Subdivision. The Townhome Common Lots shall be owned by the Association and shall be for the exclusive use and possession of the Townhome Unit Owners.

"**Townhome Lot**" shall mean Lots 16-28, 65 to 83 and 97 to 140 as shown on the Plat of Subdivision, upon which Townhome Lot a Townhome Unit is constructed or is to be constructed.

"**Townhome Unit**" shall mean an attached residential housing unit consisting of one or more rooms which are designed or intended for the exclusive use as living quarters for one family and which is located upon a separate Townhome Lot even though such Townhome Unit shares a common exterior wall, roof or other structural or common component with one or more other Townhome Units.

"**Townhome Unit Owner**" shall mean and refer to the record owner, whether one or more persons or entities, of a fee simple title to any Townhome Lot, including contract sellers, but excluding those having such interest merely as security for the performance of an obligation. The term "Townhome Unit Owner" shall include Declarant to the extent of the number of Townhome Lots owned by Declarant and also includes the interest of Declarant as contract seller of any Townhome Lot or Townhome Lot and Townhome Unit.

"**Transfer Date**" shall mean the date which is the earlier of: (i) the date on which seventy-five percent (75%) of the Townhome Lots have been conveyed to Townhome Unit Owners other than Declarant, (ii) three (3) years after the first Townhome Lot is conveyed to a Townhome Unit Owner other than Declarant or (iii) such date as Declarant may, in its sole discretion, determine prior to the occurrence of the events set forth in the foregoing clauses (i) and (ii).

## ARTICLE 2

## MEMBERSHIP

Every Townhome Unit Owner, including a contract seller, shall be a member of the Association. The foregoing is not intended to include persons or entities who hold an interest merely as security for the performance of an obligation. No Townhome Unit Owner shall have more than

one membership. Membership shall be appurtenant to and may not be separated from ownership of any Townhome Lot which is subject to assessment by the Association. Ownership of such Townhome Lot shall be the sole qualification of membership. Nothing herein contained shall be interpreted to exclude Declarant from membership while it or its successors in interest, if any, owns one or more Townhome Lots. Voting rights with regard to each Member are set forth in Article 3 hereof.

## ARTICLE 3

## VOTING RIGHTS AND BOARD OF DIRECTORS

3.1    The Association shall have two classes of voting membership:

Class A.  Class A Members shall be all those Townhome Unit Owners as defined in Article 2, provided that Declarant shall not be a Class A Member until the Transfer Date. Class A Members shall be entitled to one vote for each Townhome Lot in which they hold the interest required for membership pursuant to Article 2. When more than one person holds such interest in any Townhome Lot, all such persons shall be Members. The vote for such Townhome Lot shall be exercised as they among themselves determine, but in no event shall more than one vote be cast with respect to any Townhome Lot. All Members holding any interest in a single Townhome Lot shall together be entitled to cast only one vote for the Townhome Lot.

Class B.  The Class B Member shall be Declarant. The Class B Member shall be entitled to three (3) votes for each Townhome Lot in which it holds the interest required for membership by Article 2; provided that the Class B membership shall cease and be converted to Class A membership on the Transfer Date.

3.2    The provisions of Section 3.1 hereof shall be mandatory. No owner of any interest in any Townhome Lot shall have any right or power to disclaim, terminate or withdraw from his membership in the Association or any of his obligations as such Member, and no purported disclaimer, termination or withdrawal thereof or therefrom on the part of any such owner shall be of any force or effect for any purpose.

3.3    The Association shall have a Board of five (5) Directors who shall be elected by the Members of the Association at such intervals as the corporate charter and By-Laws of the Association shall provide, except that the first Board may be appointed by Declarant (or its designee). Each member of the Board, with the exception of the Board members appointed by Declarant (or its designee) shall be one of the Townhome Unit Owners (including Declarant); provided, however, that in the event a Townhome Unit Owner is a corporation, partnership, trust, limited liability company, or other legal entity other than a natural person or persons, then any director or officer of such corporation, partner of such partnership, individual trustee or beneficiary of such trust, manager, officer or member of such limited liability company, or manager or principal of such legal entity, shall be eligible to serve as a member of the Board. The Association shall have such officers as shall be appropriate from time to time, who shall be elected by the Board and who shall manage and conduct the affairs of the Association under the direction of the Board, all as

provided for in the By-Laws. Except as expressly otherwise provided by the Association's articles of incorporation, this Declaration or the By-Laws, all power and authority to act on behalf of the Association both pursuant to this Declaration and otherwise shall be vested in its Board from time to time and its officers under the direction of the Board, and shall not be subject to any requirement of approval on the part of its Members. The articles of incorporation and By-Laws of the Association may include such provisions for the protection and indemnification of its officers and directors as shall be permissible by law.

3.4    The Association, being a not-for-profit corporation, shall not distribute to its Members any sums in the nature of dividends upon its shares. To the extent that funds shall not be required for current expenditures or for such reserves, the next monthly assessments may, in the discretion of the Board, be eliminated or the amount thereof appropriately reduced. Such reduction shall not prevent reinstatement of, or increase in, such assessments when required, but such reinstatement or increase shall not be retroactive.

3.5    Whenever possible, the Association shall perform its functions and carry out its duties by entering into agreements for the performance thereof with such persons and business entities regularly engaged in the performance of generally similar functions and duties as the Board shall determine, which agreements shall be for such length of time, at such rates of compensation and upon such other terms and provisions as the Board shall determine from time to time; provided however, that if the Association, Declarant or Board shall enter into an agreement or agreements for the professional management of the Property before the Transfer Date, each such agreement shall provide that it is terminable by the Association without cause at any time after the Transfer Date and shall not require the payment of any penalty by the Association and shall not require advance notice of termination of more than ninety (90) days. Such persons or business entities may, but need not, be persons or business entities owning or otherwise directly or indirectly interested in the Property or any part thereof. The Association itself shall also have power to perform its functions and carry out its duties.

3.6    The Association, through the resolutions of the Board, shall have the right to adopt rules and regulations governing the Townhome Lots and the Townhome Common Lots and the use thereof; provided, however, that no rule or regulation shall conflict with this Declaration, the Master Declaration, or any applicable laws, ordinances or codes.

3.7    A copy of this Declaration, the By-Laws and the Association's books, records and financial statements to be kept by the Board shall be available for inspection by any Townhome Unit Owner or any representative of a Townhome Unit Owner duly authorized in writing, or any holder, insurer or guarantor of a first mortgage lien on a Townhome Lot at such reasonable time or times during the normal business hours as may be requested by the Townhome Unit Owner or by the holder of said first mortgage lien.

3.8    Neither the Directors nor the officers of the Association shall be liable to the Townhome Unit Owners for any mistake of judgment or for any other acts or omissions of any nature whatsoever made by such individuals as such Directors and officers, except for any acts or omissions finally adjudged by a court of competent jurisdiction to constitute gross negligence or

fraud. The Townhome Unit Owners (including the Directors and the officers of the Association in their capacity as Townhome Unit Owners) shall indemnify and hold harmless each of the Directors and each of the officers of the Association against all contractual and other liabilities to others arising out of contracts made by or other acts of the Board and officers of the Association on behalf of the Townhome Unit Owners or arising out of their status as Directors or officers of the Association, unless any such contract or act shall have been finally adjudged by a court of competent jurisdiction to have been made fraudulently or with gross negligence. It is intended that the foregoing indemnification shall include indemnification against all costs and expenses (including, but not limited to, attorneys' fees, amounts of judgments paid and amounts paid or received in settlement) reasonably incurred in connection with the defense of any claim, action, suit or proceeding, whether civil, criminal, administrative, or other, in which any Director or officer of the Association may be involved by virtue of such persons being or having been such Director or officer; provided, however, that such indemnity shall not be operative with respect to (a) any matter as to which such person shall have been finally adjudged in such action, suit or proceeding to be liable for gross negligence or fraud in the performance of such person's duties as such Director or officer, or (b) any matter settled or compromised, unless, in the opinion of independent counsel selected by or in a manner determined by the Board, there is not reasonable ground for such person being adjudged liable for gross negligence or fraud in the performance of such person's duties as such Director or officer. It is also intended that the liability of each Townhome Unit Owner arising out of any contract made by, or other acts of, the Board or officers of the Association, or out of the aforesaid indemnity in favor of the Directors or officers of the Association, shall be limited to an amount equal to the total liability thereunder divided by the number of Townhome Lots. Every agreement made by the Board on behalf of the Townhome Unit Owners shall be deemed to provide that the Directors are acting only as agents for the Townhome Unit Owners, and shall have no personal liability thereunder (except as Townhome Unit Owners) and that each Townhome Unit Owner's liability thereunder shall be limited to an amount equal to the total liability thereunder divided by the number of Townhome Lots.

## ARTICLE 4

## PROVISIONS RELATING TO THE TOWNHOME COMMON LOTS

4.1     **Description of the Townhome Common Lots**. The Townhome Common Lots may be improved with, among other things, sidewalks, landscaping, storm sewer service lines, water service lines and sanitary sewer service lines and related appurtenances, open space and other improvements, all as may be located within the Property. The Townhome Common Lots are intended to be for the non-exclusive mutual use and enjoyment of all Townhome Unit Owners.

4.2     Every Townhome Unit Owner and such Townhome Unit Owner's tenants, guests and invitees shall have a non-exclusive right and easement of ingress and egress in, over, upon and to, and use and enjoyment of, all portions of the Townhome Common Lots. All portions of the Townhome Common Lots shall be held for the non-exclusive use and benefit of each Townhome Unit Owner (and said Owner's tenants, guests and invitees). The aforesaid non-exclusive right and easement shall be appurtenant to and shall pass with the title to every Townhome Lot subject to the following reserved rights and easements in favor of others:

(a)    The right of the Association as legal titleholder thereto to dedicate or transfer all or any part of any Townhome Common Lot to any public agency, authority, or utility for such purposes and subject to such conditions as may be agreed to by the Board. No such dedication or transfer shall be effective unless an instrument agreeing to such dedication or transfer has been recorded, which instrument has been signed by (i) Declarant until the Transfer Date and (ii) the Chairman of the Board or President of the Association and approved by those Members entitled to cast at least three-fourths (3/4) of the votes of the membership after the Transfer Date.

(b)    Each Townhome Unit Owner shall be entitled to the exclusive use and possession of that portion of the driveway, driveway apron, service walk and entry walkway immediately adjacent to the front or rear of the Townhome Lot, falling within the Townhome Common Lot which is contiguous and appurtenant to, and exclusively serves, such Townhome Unit Owner's Townhome Lot, except as otherwise provided herein.

(c)    To the extent not granted by Declarant, the Association hereby reserves the right, without the necessity of having to obtain any Member's consent, to grant, at any time and from time to time after title to the Townhome Common Lots have been conveyed to the Association, utility easement(s) for sanitary and storm sewers, water, gas, electricity, telephone, cable television and any other necessary public or municipal service over, through, upon and across all or any portion of the Townhome Common Lots, all upon such terms and conditions as the Board deems necessary or appropriate.

(d)    As part of the overall program of development of the Master Development into a residential community and to encourage the marketing and construction thereof, at any time until the completion of the Master Development, Declarant hereby reserves for itself, its contractors and their respective subcontractors, agents and employees the right and easement of ingress and egress and of access and use in, over, upon, under and across each and every portion of the Townhome Common Lots for sales, marketing and construction purposes, as well as the right and easement of use of certain Townhome Lots and the facilities thereof, all without charge during the entire sales, marketing, and construction period on the Property for such purposes.

(e)    At any time prior to the Transfer Date and notwithstanding that Declarant may have theretofore conveyed title to the Townhome Common Lots to the Association, Declarant shall have and hereby reserves the right, without having to obtain the consent of any other party, (i) to grant and record such easements (in addition to the easements set forth and granted on the Plat of Subdivision) over, under, through, across, upon, in and on the Townhome Common Lots or portions thereof for the provision of any utility service, landscaping, buffering, ingress and egress, and such other purposes as Declarant, in its reasonable discretion, deems necessary, desirable or required by the final engineering plans for the Property or by the "as-built" condition of the Property, or any part or portion thereof; and (ii) to add to the Townhome Common Lots by causing a deed to be recorded which conveys to the Association fee simple title to the real property which is to be added to the

Townhome Common Lots, provided, however, that the addition of said real property (and its designation) is consistent with the intent and purposes of this Declaration.

(f)     All rights granted to the Declarant, the Master Association, the Master Association Board, owners of other portions of the Master Development and other parties under the Master Declaration.

4.3     Each Townhome Unit Owner and such Townhome Unit Owner's tenants, guests and invitees shall have a right and easement in, over, upon and to any and all sidewalks and lawns (except for the service walks and entry walkways located immediately adjacent and appurtenant to the front or rear of each Townhome Lot) located in the Townhome Common Lots for the purposes of pedestrian ingress and egress.

4.4     **Improvement of the Townhome Common Lots**.

(a)     There shall be located upon the Townhome Common Lots (i) such driveways or portions thereof and service walks and entry walk as shall be necessary to provide ingress and egress to and from the Townhome Lots and Townhome Units for the use and benefit of the Townhome Unit Owners of the Townhome Lots and their guests and invitees  and (ii) such additional landscaping, walks, driveways, fences, walls, aesthetic features and any other similar improvements as Declarant shall from time to time determine to be necessary, appropriate or desirable or to be required by governmental laws, ordinances and regulations as shall be in effect during, and applicable to, the development of the Property. Subsequent to the Transfer Date, the Association shall have the right, subject to obtaining the approval of a majority of the Members, to further improve the Townhome Common Lots in a manner consistent with the intent and purpose of this Declaration or as required or permitted by any governmental laws, ordinances or regulations then in effect.

(b)     In the event, in the course of undertaking the construction, installation and/or location of improvements permitted hereunder on a Townhome Lot, a Townhome Unit Owner (or anyone undertaking such construction, installation and/or location on behalf of a Townhome Unit Owner) causes damage to the Townhome Common Lots which, in the opinion of the Board, requires the repair or restoration thereof, such restoration or repairs shall be undertaken by the Association and such Townhome Unit Owner shall reimburse the Association for the Association's costs of such repair or restoration within thirty (30) days of receipt of a written invoice from the Association therefor, and in the event such Townhome Unit Owner fails to pay the amounts the Association incurs to undertake such repair or restoration within said thirty (30) days, such amounts, together with interest and all reasonable costs of collection, including attorneys' fees and litigation expenses, shall become a lien upon such Townhome Unit Owner's Townhome Lot, enforceable by an action similar to the type of action instituted to foreclose the lien of a mortgage or deed of trust on real property.

(c)     If, due to the willful misconduct or negligent act or omission of a Townhome Unit Owner, or of a member of such Townhome Unit Owner's family or household pet or of

a guest or other authorized occupant or visitor of such Townhome Unit Owner, (i) damage shall be caused to: (A) the Townhome Common Lots, or (B) a portion of a Townhome Lot or Townhome Unit (e.g., a deck) of which the maintenance, repair and replacement obligation is borne by the Association, or (C) a portion of a Townhome Unit of which the maintenance, repair and replacement obligation is not borne by the Association, or (ii) maintenance, repairs or replacements shall be required which would otherwise be charged to the Association, then such Townhome Unit Owner shall pay for such damage and/or such maintenance, repairs and replacements as may be determined by the Board.

4.5     **City Easement**. An irrevocable license and non-exclusive easement is hereby granted to the City and, as applicable, its police, fire, water, public works, engineering, development, health and other authorized officials, employees and vehicles, to go upon the Property, including the Townhome Common Lots, at any time and from time to time for the purpose of performance of official duties and emergency services and for the purpose of enforcing this Declaration and all applicable ordinances, rules and regulations, and the statutes of the City of Chicago, County of Cook, State of Illinois and the United States and any easements and/or rights granted to the City hereunder in the Sewer Covenant or on the Plat of Subdivision. In addition to those rights granted under the Sewer Covenant, duly designated officials and employees of the City are hereby also granted a non-exclusive easement to enter upon, on and over the Property, including the Townhome Common Lots, for the purposes of maintaining and repairing, except as otherwise provided hereunder, stormwater drainage and retention areas, storm and sanitary sewers, water mains, and any other utility or public service located or which may be located in the Townhome Common Lots or on any Townhome Lot and to correct or eliminate nuisances or violations resulting from the failure to exercise maintenance responsibilities by Declarant or its successors and assigns, any Townhome Unit Owner or the Association. Said easement rights shall be exercised only to the extent and for such period of time as is required to accomplish said maintenance or repair. Except in the event of emergency situations, the City shall serve written notice upon the Association setting forth the manner in which Declarant, a Townhome Unit Owner or the Association has failed to comply with its obligations under this Declaration or the Plat of Subdivision. Said notice shall include a demand that such deficiency be cured within ten (10) days from the date such notice is received. If such deficiency has not been cured within said ten (10) days or any extension thereof granted by the City, the City may (but shall not be obligated to) exercise its easement rights under this Declaration by entering the Townhome Common Lots and the Townhome Lots and performing such maintenance or repair that, in the sole and absolute opinion of the City, Declarant, a Townhome Unit Owner or the Association has failed to perform on all or any portion of the Townhome Common Lots or any Townhome Lot. The Association shall reimburse the City for all expenses, including all administrative costs and attorneys' fees, incurred by it in performing such maintenance or repair that, in the City's sole and absolute opinion, Declarant, a Townhome Unit Owner or the Association has failed to perform on all or any portion of the Townhome Common Lots or on any Townhome Lot. If the Association has not reimbursed the City in full for all such expenses incurred within thirty (30) days after receipt of a bill detailing such expenses, then the portion of the cost of such maintenance or repair not so reimbursed shall be assessed in equal shares against all of the Townhome Lots, and shall become a lien upon such Townhome Lots, which lien shall be in all respects subject and subordinate and junior to any prior mortgage recorded against all or any portion of such Townhome Lots. Such lien may be

enforced by all methods generally available for the enforcement of liens, including all methods available to the Association for enforcement of its lien rights hereunder, as well as by foreclosure through an action brought in a manner similar to the type of action instituted to foreclose the lien of a mortgage or deed of trust. The City shall be under no obligation to exercise the rights herein granted except as it shall determine to be in its best interest. No failure to exercise any right herein granted to the City shall be construed as a waiver of that or any other rights.

4.6 **Limitations on Easement and Rights in Townhome Common Lots**. Notwithstanding any provisions herein to the contrary, the easements and rights in the Townhome Common Lots and the Townhome Lots herein created shall be subject to:

(a) The right of Declarant to execute all documents and do all other acts and things affecting the Property which, in Declarant's sole opinion, are desirable in connection with Declarant's rights hereunder.

(b) Easements of record (or any recorded rights to grant additional easements) existing on the date hereof, including the Master Declaration, any and all easements granted on the Plat of Subdivision and any easements which may hereafter be granted by Declarant or the Association to any public utilities or governmental bodies for the installation and maintenance of electrical, cable television and telephone conduit and lines, gas pipes, sewers or water mains and pipes and related appurtenances to the foregoing, or any other utility services serving any Townhome Lot.

4.7 **Dedication of Townhome Common Lots**. Nothing contained in this Declaration shall be construed or be deemed to constitute a dedication, express or implied, of any part of the Townhome Common Lots to which Declarant is in title as of the date hereof to or for any public use or purpose whatsoever.

4.8 **Easements Contained on the Plat of Subdivision**. Easements for serving the Townhome Common Lots and other properties with public utilities and municipal services are contained in the Plat of Subdivision.

## ARTICLE 5

## MAINTENANCE OF TOWNHOME LOTS,
## EXTERIOR OF THE BUILDINGS AND TOWNHOME UNITS

5.1 The Association shall determine the need for and may carry out or cause to be performed all maintenance and repair to the exteriors of the Buildings and, as hereinafter set forth, the Townhome Lots upon which they are located, including, without limitation, building exteriors (but not including garage doors or any exterior doors, windows, fixtures or side lights), roofs (including sky-lights), siding and trim, building foundations, entry walkways, entry stairs and stoops, window wells, decks and railings, gutters and downspouts and roof access ladders, all as may be necessary or desirable as a result of natural or ordinary wear and deterioration and all as is determined by the Association in its sole discretion. The Association shall, in addition, determine

the need for, and shall carry out or cause to be performed, all maintenance and repair of those gas, telephone and electrical lines incorporated in and forming a part of one or more Townhome Units as originally constructed that pass through one or more other Townhome Units to provide such service. The Association's maintenance and repair obligations shall not include the maintenance or repair of any furnaces; water heaters; stoves; refrigerators; washing machines or other household appliances; sump pumps; glass surfaces; garage doors; any exterior door, window, fixture or side light; fireplaces (including the interiors of chimneys); air conditioners and compressors; any other portion of a Townhome Unit which serves only that Unit or the interior of any Townhome Unit or portion thereof (except as otherwise expressly set forth above). In the event that the need for maintenance or repair is caused through the willful or negligent act of the Townhome Unit Owner, his family, guests, pets or invitees, the cost of such maintenance or repair shall be added to and become a part of the assessment to which such Townhome Lot is subject.

5.2   The Association shall carry out or cause to be performed all maintenance, improvement, repair and replacement of the Townhome Common Lots, excluding those portions of any Townhome Common Lots or facilities located thereon which have been or are hereafter dedicated, donated or otherwise conveyed to the City or are maintained by the Master Association, but including, without limitation, sidewalks, landscaping, open space, stormwater service lines, water service lines, sanitary sewer lines, and other similar matters, whether or not specifically described or existing on the date hereof, except for repairs necessitated by the gross negligence or willful misconduct of one or more Townhome Unit Owners or their respective invitees, permittees, Occupants, pets or guests, which shall be the responsibility of such Townhome Unit Owners.

5.3   The Association shall have the obligation to monitor, maintain and repair all of the engineered barriers on the Townhome Common Lots described in the NFR Letter and to preserve the validity of the NFR Letter, which obligations include, without limitation, (a) engaging environmental consultants or contractors (including utility companies) working in subsurface areas located beneath such engineered barriers described in the NFR Letter to insure compliance with all requirements of the NFR Letter (including health and safety requirements) and (b) insuring that all replacement of, and other work undertaken with respect to, such engineered barriers is performed in a manner consistent with the NFR Letter and satisfactory to the Illinois Environmental Protection Agency and all other governmental agencies having jurisdiction over the Property.

5.4   Each Townhome Unit Owner shall have the obligation to maintain in good condition and repair, whether located on the Townhome Unit Owner's Townhome Lot or located on a Townhome Common Lot but exclusively serving said Townhome Unit Owner's Townhome Unit, all glass surfaces; fireplaces (including the interior of chimneys); garage doors; all exterior doors, windows, fixtures and side lights; electrical fixtures; and air conditioners and compressors which are a part of, attached to, or serve exclusively, said Townhome Unit Owner's Townhome Unit. Upon the failure of any Townhome Unit Owner to maintain those areas not the maintenance responsibility of the Association, the Association, through its agents and employees, is hereby granted the right to enter upon the Townhome Lot and into the Townhome Unit thereon and make such reasonable repairs, maintenance, rehabilitation or restoration thereof as may be necessary, and the costs thereof shall become a lien upon such Townhome Lot and Townhome Unit in the same manner as provided in Article 6 hereof for nonpayment of maintenance assessments.

5.5    **Conformance to Master Association**.

(a)    With respect to the Property, the Association shall (i) mow the lawn, (ii) prune all trees and shrubs, (iii) remove snow in accordance with Section 5.5(b) below, and (iv) maintain all landscaping, fences, driveways, and other improvements in good and sightly condition. Upon the failure of the Association to so maintain the Property in a manner satisfactory to the Master Association, the Master Association, through its agents and employees, is hereby granted the right to enter upon the Property and make such reasonable repairs, maintenance, rehabilitation or restoration thereof as may be necessary, and the costs thereof shall become a lien upon the Property in the same manner as provided in the Master Declaration for nonpayment of Master Association Assessments.

(b)    In accordance with the Master Declaration, the Association shall be responsible for snow removal over all of the Property (e.g., the service walks serving individual Townhome Units), including the Townhome Common Lots (and the disposal thereof or storage of such snow in appropriate areas of the Townhome Common Lots). If the Association fails to remove snow from the Property when such snow removal is reasonably required, the Master Association may, but shall not be obligated to, remove such snow, and the costs thereof shall become a lien upon the Property.

5.6    Each Residential Unit Owner shall be responsible for all maintenance and repairs to the Property, including, without limitation, maintenance and repairs to the Townhome Common Lots, that are caused by the gross negligence or willful misconduct of such Townhome Unit Owner or its pets, invitees, permittees, Occupants or guests.

5.7    An irrevocable license and non-exclusive easement is hereby granted to the Association to enter upon the Townhome Lots for purposes of performing its obligations and exercising its rights pursuant to this Article 5.

## ARTICLE 6

## COVENANTS FOR MAINTENANCE ASSESSMENTS

6.1    Declarant, for each Townhome Lot owned within the Property, hereby covenants, and each Townhome Unit Owner of any Townhome Lot by acceptance of a deed therefor, whether or not it shall be so expressed in such deed or other conveyance, is deemed to covenant and agree to pay to the Association: (1) annual assessments to be fixed, established and collected from time to time as hereinafter provided; and (2) special assessments to be fixed, established and collected from time to time as hereinafter provided. The annual and special assessments, together with such interest thereon and costs of collection thereof, as hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the Townhome Lot against which each such assessment is made. Each such assessment, together with such interest and costs of collection, including reasonable attorneys' fees, shall also be the personal obligation of the person who was the Townhome Unit Owner of such Townhome Lot at the time when the assessment fell due. The personal obligation shall not pass to his successors in title unless expressly assumed by them.

6.2     The assessments levied by the Association shall be used exclusively for the purpose of promoting the health, safety, and welfare of the residents in the Property and in particular for the improvement and maintenance of the Property, services and facilities devoted to this purpose and related to the use and enjoyment of the Townhome Common Lots, and of the Townhome Units situated upon the Property. Such uses shall include, but are not limited to, the cost to the Association of all taxes, insurance, repair, replacement and maintenance of Townhome Common Lots, and of the maintenance and repair of the Townhome Lots and the exteriors of the Buildings (except as otherwise provided herein) as may from time to time be authorized by the Board, and other facilities and activities and other charges required by this Declaration or that the Board shall determine to be necessary or desirable to meet the primary purpose of the Association, including the establishment and maintenance of a reserve fund for repair, maintenance, replacements, taxes, and other charges as specified herein. In addition, water, waste removal and/or any utilities which are not separately metered or otherwise directly charged to individual Townhome Unit Owners by the utility companies or the Master Association shall be paid for by the Association from the assessments levied hereunder. The Board reserves the right to levy additional assessments against any Townhome Unit Owner to reimburse it for excessive use by such Townhome Unit Owner of any utility service, the expense of which is included to the assessments.

6.3     At the time of closing of the sale of each Townhome Lot by Declarant, the Townhome Unit Owner shall pay (in addition to the first monthly assessment) to the manager or managing agent, or as otherwise directed by the Board, an amount equal to two (2) times the first full monthly assessment for such Townhome Unit Owner, which amount shall be used and applied as a working capital fund in the manner herein provided.

6.4     It is contemplated that the Master Development will have a "master water meter", the reading of which will dictate the total monthly water bill for the Master Development, and the Master Association shall be responsible for the payment of such water bill. In the event that each Townhome Lot and Townhome Unit is not separately metered and the water bill is not directly charged to the Townhome Unit Owners, then the Master Association shall include in the Master Association Assessments a line item for water. In the event that each Townhome Lot and Townhome Unit is separately metered, but water usage is not directly charged to the individual Townhome Unit Owners, then the Master Association shall be responsible for reading each individual water meter and the Master Association shall levy an assessment on each Townhome Lot in an amount equal to each Townhome Lot's proportionate share (based on the meter reading) of such total water bill, plus any applicable administrative fees incurred relative to the reading of each meter.

6.5     In addition to the annual assessments authorized above, the Association may levy a special assessment, for the purpose of defraying, in whole or in part, the cost of any construction or reconstruction, unexpected repair, or maintenance or replacement (including those items of maintenance and repair set forth in Section 5.1 hereof) of a described capital improvement upon the Townhome Common Lots or any Townhome Unit, including the necessary fixtures and personal property related thereto, if any.

6.6    Both annual and special assessments shall be fixed at a uniform rate for all Townhome Lots, except for certain Townhome Lots as provided in Section 6.10 hereof, and shall be collected on a monthly basis.

6.7    The assessments provided for herein shall commence for all Townhome Lots within the Property on the first day of the month following the conveyance of the first Townhome Lot, except as otherwise provided in Section 6.10 hereof. A Townhome Unit Owner shall first be liable for payment of the full monthly assessment on the 1st day of the month following conveyance of title to him. In addition the first Townhome Unit Owner of a Townhome Unit shall pay the prorated portion of the monthly assessment due for the month during which he acquires his Townhome Unit, calculated as of the date title to his Townhome Lot and Townhome Unit is conveyed.

6.8    Any assessments which are not paid when due shall be delinquent. Such assessments, interest and all costs of collection shall be a continuing lien upon the Townhome Lot against which each such assessment was made. If the assessment is not paid within thirty (30) days after the due date, then (i) the amount of the assessment shall bear interest from the date of delinquency at the rate per annum which is the lesser of (a) eighteen percent (18%) and (b) the maximum rate allowed by law, and (ii) in addition to said interest, the Association shall have the right, to be exercised in a non-discriminatory manner, to charge a delinquent Townhome Unit Owner a late fee of Twenty-Five and no/100 Dollars ($25.00) for each month or portion thereof that said amount remains delinquent, said late fee to cover the Association's administrative costs in monitoring and collecting such amount. The Association may bring an action at law or in equity against the Townhome Unit Owner personally obligated to pay the same, or foreclose the lien against the respective Townhome Lot and Townhome Unit and all interest, late fees, costs and reasonable attorneys' fees of any such action shall be added to the amount of such assessment. Each Townhome Unit Owner, by his acceptance of a deed to a Townhome Lot and Townhome Unit, hereby expressly vests in the Association, or its agents, the right and power to bring all actions against such Townhome Unit Owner personally for the collection of such charges as a debt, and to enforce the aforesaid lien by all methods available for the enforcement of such liens, including foreclosure by an action brought in the name of the Association in a like manner as a mortgage or deed of trust lien on real property.

6.9    The lien of the assessments provided for herein shall be subordinate to the lien of any first mortgage now or hereafter placed on each Townhome Lot and Townhome Unit and recorded prior to the due date of the delinquent assessment; provided, however, that such prior recorded mortgage shall be subject to the lien of all unpaid assessments with respect to such Townhome Lot and Townhome Unit which became due and payable subsequent to the first to occur of the date the holder of said mortgage (i) takes possession of the Townhome Lot and Townhome Unit, (ii) accepts a conveyance of any interest in the Townhome Lot and Townhome Unit and (iii) has a receiver appointed in a suit to foreclose his lien. The lien of the assessments shall not be affected by the sale or transfer of the corresponding Townhome Lot and Townhome Unit unless the sale or transfer is pursuant to the foreclosure of the first mortgage thereon or a deed-in-lieu of foreclosure. In such a case, the transfer of title pursuant to the foreclosure or deed-in-lieu of foreclosure shall extinguish the lien. However, neither the personal obligation of the transferor, if any, nor the resulting pro rata share of the burden of such non-payment or non-enforcement, imposed through a subsequent assessment, shall be affected.

6.10    With regard to all Townhome Lots which are vacant or upon which Townhome Units are being constructed or have been completed and to which title has not been conveyed by Declarant (the **"Declarant Owned Lots"**), the total aggregate assessment due with respect to all Declarant Owned Lots shall be limited to the amount by which (a) the aggregate amount of actual operating expenses from time to time required to be paid with respect to the Property exceed (b) the amounts required to be paid by the Townhome Unit Owners other than Declarant for said actual operating expenses. For purposes of the foregoing calculation, in the event Declarant enters into a lease or installment contract for any Townhome Lot and Townhome Unit, then Declarant shall, as of the first day of occupancy under such lease or contract, be responsible for the payment of all assessments on each such Townhome Lot and Townhome Unit on the same basis as any other Townhome Unit Owner as provided in this Article and consequently, said Lot shall no longer be deemed to be a Declarant Owned Lot hereunder. Actual operating expenses shall mean those ordinary expenses attributable only to the period in question covering the maintenance and operation of the Property and shall not include capital expenditures, amounts set aside as a reserve for contingencies or replacements, prepaid items or inventory items to the extent attributable to subsequent periods. The foregoing amounts owed by Declarant for the Declarant Owned Lots may be paid by Declarant on a monthly basis or, at Declarant's option, paid to the Association at the close of each calendar year without interest. It is expressly understood and agreed that in no event shall Declarant's total obligation under this Section 6.10 with respect to the Declarant Owned Lots ever exceed the amount of assessment due from each of the Townhome Unit Owners other than Declarant multiplied by the number of Declarant Owned Lots from time to time.

6.11    The Master Association, at its sole option, may require that the Association pay the Master Association Assessments collectively for all of the Townhome Unit Owners for purposes of the administrative convenience of the Townhome Unit Owners and acting solely as a collection agent. In no event shall the amount of such Master Association Assessments collected by the Association and paid to the Master Association be deemed a part of the assessment for the Association. In the event a Townhome Unit Owner is delinquent in the payment of any Master Association Assessment, the Association shall give timely notice of such delinquency to the Master Association, in which event the lien of the Master Association for such delinquency shall only apply to the affected Townhome Lot and Townhome Unit; however, in the event the Association fails to pay the amount of the Master Association Assessment for each of the Townhome Lots and Townhome Units and fails to timely deliver notice to the Master Association of the specific delinquent Townhome Lot(s)/Townhome Unit(s), the lien of the Master Association shall attach to all of the Townhome Lots and Townhome Units. Any Master Association Assessment collected by the Association shall be held in trust without any deduction or setoff and no such payment shall be deemed made to the Master Association until actually received by the Master Association. No Townhome Unit Owner shall be relieved of personal liability for payment of the Master Association Assessment due to the failure of the Association to pay the same to the Master Association.

## ARTICLE 7

## INSURANCE

7.1

(a)     The Association shall be responsible for procuring and maintaining comprehensive general liability insurance, including liability for injuries to, and death of, persons and property damage in combined single limit amount not less than One Million and no/100 Dollars ($1,000,000.00) per occurrence, including non-owned and hired automobile liability; umbrella liability insurance coverage in an amount not less than Two Million and no/100 Dollars ($2,000,000.00); and other liability insurance as it may deem desirable, insuring the Association from liability in connection with the use of the Townhome Common Lots.  In addition, the Association shall be responsible for maintaining such policies of insurance for the Townhome Common Lots against loss or damage by fire and such other hazards contained in a customary "Special Form" policy provided that such policies shall (i) provide that such policies may not be cancelled or substantially modified without at least thirty (30) days' prior written notice to the Association and all mortgagees of record of the Townhome Lots and Townhome Units; (ii) provide that all mortgagees of record of the Townhome Lots and Townhome Units shall have the right to pay overdue insurance premiums and to obtain new coverage in the event the existing insurance policy lapses; (iii) provide for coverage in the amount of one hundred percent (100%) of current full replacement value; and (iv) contain standard mortgage clause endorsements in favor of the mortgagee(s) of the Townhome Lots and Townhome Units, as their respective interests may appear.  Replacement cost shall be determined annually by an independent appraiser or by a method acceptable to the insurance company providing such coverage.  The liability policy shall also name as insureds the Association's agents, officers, employees, and each Townhome Unit Owner.

(b)     The Association shall be responsible for procuring and maintaining a fidelity bond insuring the Association, the Board and the Townhome Unit Owners against loss of funds as a result of the fraudulent or dishonest acts of any employee of the Association or its management agent or of any other person handling the funds of the Association, the Board or the Townhome Unit Owners in such amounts as the Board shall deem necessary but not less than 150% of the annual operating expenses of the Association, including reserves.  Such bond shall contain waivers of any defense based on the exclusion of persons who serve without compensation from any definition of "employee" or similar expression.  Such bond shall provide that it may not be cancelled for non-payment of any premiums or otherwise substantially modified without thirty (30) days prior written notice to all holders of first mortgages of record.

(c)     The Association shall also obtain and maintain Directors and Officers Liability Insurance and, if any portion of the Property falls within the Flood Zone A category, flood risk insurance.  In addition, the Association may obtain such other kinds of insurance as the Association shall from time to time deem prudent in such amounts as the Association

shall deem desirable including, but not limited to, the following: Earthquake risk and Workman's Compensation and Employer Liability.

7.2    Each Townhome Unit Owner shall procure and maintain in full force at all times insurance covering his Townhome Unit consisting of, or providing all the protections afforded by, the insurance now generally described in an "Special Form" policy to one hundred percent (100%) of the full insurable value thereof, with loss payable on the basis of the cost of replacement without deduction for depreciation, less a deductible amount of no more than One Thousand and no/100 Dollars ($1,000.00) and naming the Association as an additional insured on each policy. Such insurance shall be written by companies reasonably acceptable to the Association. A certificate of insurance evidencing such coverage shall be furnished to the Association and new certificates evidencing the renewal of each expiring policy of insurance shall be furnished to the Association in each case at least ten (10) days prior to the expiration date of the expiring insurance. In the event a Townhome Unit or any portion thereof shall be damaged or destroyed by fire or other casualty and the Townhome Unit Owner thereof shall cause it to be repaired, restored or reconstructed, as the case may be, the repairs, restoration or reconstruction shall be in the same architectural style and design as was originally constructed and shall conform in all respects to all applicable laws or ordinances in force at the time of such repair, restoration or reconstruction. In the event of the total or substantial destruction of all of the Townhome Units, the architectural design of the Townhome Units to be rebuilt and the materials to be used in constructing the same shall be substantially similar in architectural design as the original Townhome Units and shall be constructed of comparable materials and quality of construction.

7.3    Upon the failure of any Townhome Unit Owner to procure and maintain the insurance required in Section 7.2 hereof or, in the event the Board, in its sole discretion, determines that the Townhome Unit is underinsured, the Board shall have the authority to procure such insurance and/or additional insurance, as the case may be, and the costs thereof shall become a lien upon said Townhome Lot in the same manner as provided in Article 6 hereof for nonpayment of maintenance assessments.

7.4    All repair, restoration or rebuilding pursuant to the provisions of this Article 7 shall be carried out under such supervision and direction as the Board shall deem appropriate in order to assure the expeditious and correct completion of the work concerned. The Townhome Unit Owner or Townhome Unit Owners of each Townhome Unit which shall have been damaged or destroyed shall fully cooperate with, and abide by all instructions and directions of, the Association in connection with all repair, restoration and rebuilding undertaken pursuant to this Article 7.

7.5    In the event of such damage or destruction of a Townhome Unit, the holder of the mortgage encumbering said Townhome Unit shall cause the proceeds of any insurance required pursuant to Section 7.2 hereof to be utilized in restoring the Townhome Unit pursuant to the terms of this Article.

7.6    In any case in which the Townhome Unit Owner or Townhome Unit Owners concerned shall fail to perform or cause to be performed the repair, restoration or rebuilding required by the provisions of this Article 7, the Association shall cause such repairs or rebuilding to be

furnished, provided and installed in the manner as set forth in Section 7.2 hereof; provided, however, that to the extent the insurance proceeds referred to in Section 7.2 are insufficient as to any Townhome Unit, the particular Townhome Unit Owner shall be responsible to the Association for such deficiency, and the Association shall have, and is hereby granted, a continuing lien on the Townhome Lot and Townhome Unit for which any such repairs or rebuilding are furnished by the Association in the aggregate amount of (a) the amount that cost thereof exceeds insurance proceeds, (b) interest at the Prime Rate (as defined below) plus two percent (2%) from the date of the Association's payment of such excess costs, and (c) reasonable attorneys' fees and any court or other costs incurred by the Association in connection therewith, which lien shall bind such Townhome Lot and Townhome Unit. (For purposes of this Declaration, the term **"Prime Rate"** shall mean a rate equal to the "corporate base rate" or similar rate of interest announced from time to time by the downtown Chicago branch of JPMorgan Chase Bank, N.A., or its successors-in-interest). In the event such Townhome Unit Owner does not forthwith fully repay the Association therefor, as aforesaid, such lien shall be foreclosed against the Townhome Lot and Townhome Unit by the Association in the same manner as hereinafter provided in connection with unpaid assessments. The Association's lien provided for in this Section 7.6 shall be subordinate to the lien of any first mortgage now or hereafter placed upon the Townhome Lot and Townhome Unit.

7.7     In the event of any damage or destruction to the exterior portion of a Townhome Unit and the loss is covered by policies of insurance, the Board shall have the authority to settle and adjust any claim under such policies without the consent of the respective Townhome Unit Owner.

## ARTICLE 8

## INTERIM PROCEDURE

8.1     Until each of the various Townhome Lots and Townhome Units shall have been conveyed by Declarant to the first Townhome Unit Owner thereof (or to such Townhome Unit Owner's nominee), Declarant, with respect to each such unsold Townhome Lot and Townhome Unit and as specified herein, shall have all the rights granted to and obligations imposed upon the Townhome Unit Owners.

8.2     Until the initial meeting of the Members, Declarant (or its designees) may appoint the Board which shall have the same powers and authority as given to the Board generally.

8.3     The powers granted to Declarant by Section 8.2 hereof shall include, without limitation, the power to assess upon and collect from the individual Townhome Unit Owners, their respective proportionate shares of the funds required for the carrying out of all the duties and obligations of the Association.

## ARTICLE 9

## RESTRICTIONS RELATING TO PROPERTY

9.1     **City Requirements**. All Townhome Units, accessory structures, additions thereto, and any other exterior aspect of a Townhome Lot, whether original or replacement, temporary or permanent, shall be constructed, altered, restored, added to, located, remodeled, placed or installed in compliance with all applicable City ordinances and codes.

9.2     **Improvements on a Townhome Lot**.

(a)     All Townhome Units and additions thereto, and all other exterior improvements, including, without limitation, play equipment, decks, patios and landscaping, whether original or replacement, temporary or permanent, shall be constructed, altered, restored, added to, located, remodeled on the exterior, placed or installed in a manner that: (i) shall preserve the architectural and aesthetic appearance of the Master Development; (ii) shall not impair the value of the property of all unit owners under the Master Development; (iii) shall be undertaken in a manner that is consistent with the use of the Master Development as a quality residential subdivision; and (iv) shall be of quality, design, workmanship and materials which are compatible and harmonious with the Master Development. The Master Association Board shall have the right to compel a Townhome Unit Owner to remove any improvements that are not of a harmonious nature with the remainder of the Master Development. Prior to constructing or altering improvements, Townhome Unit Owners shall have the right to seek preapproval by the Master Association Board of such improvements or alterations; provided, however, that the Master Association Board shall have the right to disapprove any such improvements in its sole and absolute discretion.

(b)     Any Townhome Unit, accessory structure, additions thereto and any other exterior aspect of a Townhome Lot constructed and installed by Declarant in connection with the initial construction of improvements on each Residential Lot shall conclusively be deemed to comply with the standards contained in this Section 9.2.

9.3     Each Townhome Unit shall be used only for residential purposes, as a private residence, and for such professional, business or commercial use as is not otherwise prohibited under applicable ordinances and regulations governing the Property. Each Townhome Unit Owner shall have the right (a) to maintain his personal professional library therein; (b) to keep his personal, business or professional records or accounts therein; and (c) to handle his personal, business or professional telephone calls or correspondence therefrom. A Townhome Unit Owner's use of a Townhome Lot and Townhome Unit shall not endanger the health or disturb the reasonable enjoyment of any other Townhome Unit Owner or occupant, except that the foregoing restriction on disturbing reasonable enjoyment shall not be deemed to preclude or prohibit any of the rights or activities expressly reserved by or granted in this Declaration to Declarant.

9.4     No Townhome Unit Owner shall do or permit to be done on his Townhome Lot, in his Townhome Unit or anywhere else in the Property any act or thing which will impair any easement or hereditament granted to any other party, nor shall any Townhome Unit Owner create or permit to exist on his Townhome Lot, in his Townhome Unit or anywhere else in the Property any condition which will adversely affect the use or enjoyment of the Property or any part or portion thereof by any party entitled to such use or enjoyment.

9.5     No nuisance, noxious or offensive activity shall be or permitted to be carried on by any Townhome Unit Owner on or in his Townhome Lot or Townhome Unit or anywhere else in the Property nor shall anything be done therein or thereon, either willfully or negligently, which may be or become an unreasonable annoyance or nuisance to any other Townhome Unit Owner or Occupant.

9.6     No animals, livestock or poultry of any kind shall be raised, bred, or kept in any Townhome Unit or on any Townhome Lot or Townhome Common Lot, except dogs, cats or other common household pets (not to exceed a total of three (3) pets for each Townhome Lot) may be so kept; provided, that they are not kept, bred, or maintained for any commercial purposes and provided further that they are kept, bred and maintained solely on or in the Townhome Lot or Townhome Unit and in accordance with rules and regulations adopted by the Board.

9.7     All rubbish, trash, and garbage shall be kept on each Townhome Lot so as not to be seen from neighboring Townhome Units or streets generally within the Property, and shall be regularly removed from each Townhome Lot and shall not be allowed to accumulate thereon.  In addition to the foregoing, all rubbish, trash and garbage shall be stored and removed in accordance with the rules and regulations adopted by the Board.

9.8     Television and radio antennae and television satellite dishes having a diameter not exceeding one (1) meter shall be permitted on the exterior of any Townhome Unit, subject to all applicable laws, ordinances and regulations.

9.9     Parking areas and driveways shall be used for parking operable automobiles, pick-up trucks and trucks of similar size and nature, vans, campers, trailers, boats, snowmobiles and other vehicles, subject to all reasonable rules and regulations promulgated by the Association with respect thereto and to all applicable ordinances.  The Board may authorize vehicles parked in violation of the Association's rules and regulations with respect thereto to be towed away and any such towing charge shall become a lien upon the Townhome Lot and Townhome Unit of the Townhome Unit Owner who owns such vehicle or of whom the owner of such vehicle is the guest, in the same manner as provided in this Declaration for nonpayment of assessments.

9.10    Drying of clothes shall be confined to the interior of the Townhome Units.

9.11    No barbecues shall be permitted to be used on the Property, except for gas barbecues used exclusively on the patio or deck of each Townhome Unit.

9.12    There shall be no change in any exterior color of any Townhome Unit from the color scheme in place at the time of the initial conveyance of the Townhome Unit from Declarant without

obtaining any required prior written approval of the Association. In addition, no Townhome Unit Owner may install a storm door on the front door of his Townhome Unit without obtaining the prior written approval of the Association.

9.13    Except for those fences, patios, decks and other similar improvements and architectural elements constructed by Declarant on each Townhome Lot, there shall be no fences, patios, decks or similar improvements commenced, erected, or maintained upon any Townhome Lot, without the Townhome Unit Owner thereof first obtaining the prior written approval of the Association and thereafter (but only thereafter) seeking and obtaining issuance of any appropriate permit from the City. No such improvements shall encroach upon any portion of the Townhome Common Lots except for those improvements constructed by Declarant thereon.

9.14    Each Townhome Lot is hereby declared to be subject to an easement and right to and in favor of the Association and each and all of its employees, agents and instrumentalities to go upon such Townhome Lot for reasonable inspection thereof and the Townhome Unit thereon from time to time and for the purpose of carrying out any and all of the obligations and functions with respect to such Townhome Lot and the Townhome Unit located thereon as are herein imposed upon or permitted to the Association. Each Townhome Lot is further declared to be subject to an easement in favor of any adjoining Townhome Lot to the extent necessary to permit the maintenance, supply, repair, and servicing of utility services to the various Townhome Lots and Townhome Units located thereon.

9.15    Inasmuch as the gas and electricity service for each Building starts at one end and may run through some or all of the Townhome Units, each Townhome Lot and Townhome Unit is hereby expressly subject to an easement in favor of all other Townhome Units in the Building in which said servient Townhome Unit is located for the location, operation, maintenance, supply, repair, replacement, and servicing of electricity and gas service to all of the other Townhome Units in that Building. The Townhome Unit Owner of each Townhome Lot and Townhome Unit shall from time to time grant such additional easements and rights over, across, on, under and upon his Townhome Lot and Townhome Unit as may be reasonably necessary in connection with the supply of any of the utilities described herein to any part of the Property.

9.16    The Board may adopt such other rules and regulations from time to time governing the use and enjoyment of the Townhome Common Lots and the use and/or improvement of the Townhome Lots as the Board, in its sole discretion, deems appropriate or necessary.

9.17    Except for Declarant and its activities within the Property, no signage of any type or description (including "For Rent" and "For Sale" signs), billboards, unsightly objects, or nuisances shall be erected, placed or permitted on any portion of the Property.

9.18    Each Townhome Unit Owner shall have the right to lease such Townhome Unit Owner's Townhome Lot and Townhome Unit. No Townhome Unit Owner shall lease or rent his or her Townhome Lot and Townhome Unit for a term less than one (1) year. Every lease of a Townhome Lot and Townhome Unit shall be in writing and shall be made expressly subject to the requirements, rights, covenants, conditions, restrictions and easements of this Declaration, the By-

Laws and the Master Declaration. Until such time as title to any Townhome Lot and Townhome Unit is conveyed to a bona fide purchaser, Declarant reserves the right to lease such Townhome Lots and Townhome Unit upon such terms and conditions as Declarant may, in its sole discretion, approve.

9.19    Each Townhome Lot is hereby subjected to a permanent easement appurtenant to any adjoining Townhome Lot to permit the construction, existence, maintenance, repair and restoration of structures located on such servient adjoining Townhome Lot, including roof structures which overhang and encroach upon the servient Townhome Lot and entry stairs or stoop, mechanical equipment, patio, deck and other similar improvements or architectural elements serving or part of one Townhome Unit and located on the Townhome Lot adjoining said Townhome Unit; provided that the construction of such structure is expressly permitted or approved as elsewhere herein provided. The owner of the dominant tenement shall have the right, at all reasonable times, to enter the easement area in order to maintain, repair and restore any improvements located on the servient tenement provided, however, that such entry shall be allowed only during daylight hours and with the prior knowledge of the owner of the servient tenement. In case of emergency, such right of entry shall be immediate, not restricted as to time and not be conditioned upon prior knowledge of the owner of the servient tenement.   The owner of the servient tenement shall not place any improvement, material or obstacle in or over the easement area on the servient tenement which would unreasonably interfere with the rights of the owner of the dominant tenement granted by this Section 9.19. Any such improvement, material or obstacle shall be promptly removed by the owner of the servient tenement at that owner's expense when requested by the owner of the dominant tenement or Declarant notwithstanding any lapse of time since such improvements, material or other obstacle was placed in or over the easement area.

9.20    Each Townhome Unit Owner (and its tenants, guests, Occupants, agents and invitees) and the Association shall be prohibited from installing any potable water well anywhere within the Property and from taking any action that may violate the terms of the NFR Letter, including any action which disturbs or breaches any engineered barriers on the Property as specified in the NFR Letter or which in any way interferes with or is inconsistent with the institutional controls specified in the NFR Letter.

## ARTICLE 10

## PARTY WALLS

10.1    All dividing walls which straddle the boundary line between Townhome Lots and which stand partly upon one Townhome Lot and partly upon another, and all walls which serve two or more Townhome Units (including, without limitation, the vertical fence/wall/railing of any decks which serve two or more Townhome Units), shall at all times be considered party walls, and each of the Townhome Unit Owners of Townhome Lots upon which any such party wall shall stand shall have the right to use said party wall below and above the surface of the ground and along the whole length or any part of the length thereof for the support of said Townhome Units, for the support of any building constructed to replace the same and/or for the purposes of dividing, or creating a boundary between, adjoining Townhome Units, and shall have the right to maintain in or on said

wall any pipes, ducts or conduits originally located therein or thereon, subject to the restrictions hereinafter contained.

10.2    No Townhome Unit Owner of any Townhome Lot and Townhome Unit nor any successor in interest to any such Townhome Unit Owner shall have the right to extend said party wall in any manner, either in length, height or thickness, to alter structurally said party wall (except as described in Section 10.1 above), or to the extent said party wall is visible from outside of the Townhome Unit, to alter it aesthetically.

10.3    In the event of damage to or destruction by fire or other casualty of any party wall, including the foundation thereof, the Townhome Unit Owner of any Townhome Lot upon which such party wall may rest shall have the obligation to repair or rebuild such wall and the Townhome Unit Owner of each Townhome Lot upon which such wall shall rest, be served or benefitted by shall pay his portion of the cost of such repair or rebuilding, as determined by the Board in its reasonable discretion. All such repair or rebuilding shall be done within a reasonable time, in a good and workmanlike manner with materials comparable to those used in the original wall and shall conform in all respects to the laws or ordinances regulating the construction of buildings in force at the time of such repair or reconstruction. Whenever any such wall or any portion thereof shall be rebuilt, it shall be erected in the same location and on the same line and be of the same size as the original wall.

10.4    The foregoing provisions of this Article 10 notwithstanding, the Townhome Unit Owner of any Townhome Lot and Townhome Unit, or other interested party, shall retain the right to receive a larger contribution from another or others under any rule or law regarding liability for negligent or willful acts or omissions. The right of any Townhome Unit Owner, or other interested party, to contribution from any other Townhome Unit Owner under this Article 10 shall be appurtenant to the land and shall pass to such Townhome Unit Owner's or other applicable person's successors in title.

10.5    The title of each Townhome Unit Owner to the portion of each party wall within such Townhome Unit is subject to a cross easement in favor of the adjoining Townhome Unit Owner for joint use of said wall.

10.6    In the event that any part of any Townhome Unit, including any roof overhangs or soffits, downspouts, scuppers and gutters, selected stone and brick masonry coursing and tile parapet copings, wood bays, window wells, roof canopies and brackets, ornamental metal railings, plumbing appurtenances (hose bibs, etc.), electrical appurtenances (electrical meters, etc.), mechanical appurtenances and equipment (gas meters, condensers, etc.), service walk, driveway, entry walkway, entry stairs or stoops, patio, deck or other similar improvement or architectural element appurtenant thereto, encroaches or shall hereafter encroach upon any part of any other Townhome Lot or upon one of the Townhome Common Lots, valid easements for the maintenance of such encroachments are hereby established and shall exist so long as all or any part of the same shall remain standing; provided, however, that in no event shall a valid easement for any encroachment be created in favor of any Townhome Unit Owner if such encroachment or use is detrimental to, or interferes with, the reasonable use and enjoyment of the Townhome Unit of another Townhome Unit Owner or if such

encroachment occurred due to the intentional or willful conduct or gross negligence of any Townhome Unit Owner. It is expressly understood that any such encroachment resulting from any act or omission of Declarant shall in no event be deemed to be detrimental or to interfere, or to constitute intentional or willful conduct or gross negligence.

## ARTICLE 11

## MISCELLANEOUS

11.1    The Association, the City (with respect to its express rights hereunder) or any Townhome Unit Owner, their successors or assigns, shall have the right to enforce, by any proceeding at law or in equity, all restrictions, easements, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration. Any Townhome Unit Owner found to be in violation by a court of competent jurisdiction of any of the foregoing shall also be liable for reasonable attorneys' fees incurred by the Association or the City in prosecuting such action. The amount of such attorneys' fees together with court costs, if unpaid, shall constitute an additional lien against the defaulting Townhome Unit Owner's Townhome Lot and Townhome Unit, enforceable as other liens herein established. Failure by the Association, the City or any Townhome Unit Owner to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter. The Association shall use its best efforts to assist the City in connection with the enforcement of any provisions hereunder, the violation of which shall also be considered a violation of any applicable ordinance.

11.2    Invalidation of any of these covenants or restrictions by judgment or order shall in no way affect any other provisions which shall remain in full force and effect.

11.3    The covenants, conditions, easements, rights restrictions of this Declaration shall run with and bind the land and shall inure to the benefit of and be enforceable by the Association, the City, the Townhome Unit Owner of any Townhome Lot and Townhome Unit subject to this Declaration and their respective legal representatives, heirs, successors, and assigns, for a term of fifty (50) years from the date this Declaration is recorded, after which time said covenants shall be automatically extended for successive periods of ten (10) years, subject to amendment as hereinafter set forth. The covenants, conditions, easements, rights and restrictions of this Declaration may be amended during the first fifty (50) year period or within any successive ten (10) year period by an instrument signed by those Members (Class A and Class B) entitled to cast seventy-five percent (75%) of the total votes as provided in Section 3.1 hereof and then properly recorded, provided, however, that, except as set forth in Section 11.13(a)(iv) below, no Material Amendment to this Declaration, the By-Laws or the Association's articles of incorporation shall be effective unless approval thereof is obtained from Eligible Mortgage Holders representing at least fifty-one percent (51%) of the Townhome Lots and Townhome Units that are subject to mortgages held by Eligible Mortgage Holders. These covenants and restrictions may also be cancelled or amended by an instrument signed by those Members entitled to cast at least seventy-five percent (75%) of the total votes of the Members as provided in Section 3.1, which instrument shall be executed and recorded within ninety (90) days of the expiration of the initial fifty (50) year period or any successive ten (10) year period, such cancellation or amendment to be effective on the day following the date of

expiration of the preceding fifty (50) or ten (10) year period in question, provided, however, that no termination or alteration of the legal status of the Association or the Property for reasons other than substantial destruction or condemnation of the Property shall be effective unless approval thereof is obtained from Eligible Mortgage Holders representing at least fifty-one percent (51%) of the Townhome Lots and Townhome Units that are subject to mortgages held by Eligible Mortgage Holders. Any instrument executed pursuant to the provisions contained in this Section 11.3 shall be filed for record in the Recorder's Office and a true, complete copy of such instrument promptly shall be transmitted to each Townhome Unit Owner.

11.4    If and to the extent that any of the covenants, options or rights provided for in this Declaration would otherwise be unlawful or void for violation of (a) the rule against perpetuities, (b) the rule restricting restraints on alienation, or (c) any other applicable statute or common law rule analogous thereto or otherwise imposing limitations upon the time for which such covenants, options or rights may be valid, then the provision in question shall continue and endure only after the expiration of a period of twenty-one (21) years after the death of the last to survive of the class of persons consisting of all of the lawful descendants of Rod Blagojevich, Governor of the State of Illinois, living at the date of this Declaration.

11.5    Any notices required under the provisions of this Declaration to be sent to any Member, to any Townhome Unit Owner, or to any holder, insurer or guarantor of a first mortgage secured by any portion of the Property shall be deemed to have been properly sent when mailed, postage prepaid, to the last known address of such Member, Townhome Unit Owner or holder, insurer or guarantor as it appears on the records of the Association at the time of such mailing.

11.6    If at any time or times the Board shall deem it necessary or advisable to rerecord this Declaration or any part hereof in the Office of the Recorder of Cook County, Illinois, in order to avoid the expiration hereof or of any of the covenants, conditions, restrictions, rights, reservations, easements, agreements or other provisions herein contained under any statute or act relating to or governing marketable title, the Board shall submit the matter to a meeting of the Members called upon not less than ten (10) days' prior written notice, and unless at such meeting Members entitled to cast at least seventy-five percent (75%) of the total votes of the Association as provided in Section 3.1 above shall vote against such rerecording, the Association shall have, and is hereby granted, the power to so rerecord this Declaration or such part thereof, and such rerecording shall be binding upon all Townhome Unit Owners in every way and with the full force and effect as though such action were taken by each of said Owners and the rerecorded document executed and acknowledged by each of them.

11.7    All the easements, rights, covenants, agreements, reservations, restrictions and conditions herein contained shall run with the land and shall inure to the benefit of and be binding upon Declarant and each subsequent holder of any interest in any portion of the Property and their grantees, heirs, successors, personal representatives and assigns with the same full force and effect for all purposes as though set forth at length in each and every conveyance of the Property or any part thereof. Reference in the respective deeds of conveyance, or in any mortgage or trust deed or other evidence of obligation, to the easements and covenants herein described shall be sufficient to create and reserve such easements and covenants to the respective grantees, mortgagees or trustees of such

parcels as fully and completely as though said easements and covenants were fully recited and set forth in their entirety in such documents. Easements contained in the Master Declaration are hereby incorporated into this Declaration by reference as though set forth in their entirety herein. The easements contained in the Master Declaration in some cases burden the Property and in some cases benefit the Property. All easements and rights described in the Master Declaration are easements appurtenant running with the land and, so long as the Property is subject to the provisions of the Master Declaration, shall remain in full force and effect and shall inure to the benefit of and be binding on Declarant, its successors and assigns, and any Townhome Unit Owner, purchaser, mortgagee or other person having an interest in the Property, or any part or portion thereof.

11.8    In amplification of and in addition to the provisions contained in the other sections and articles of this Declaration, in the event of any default by any Townhome Unit Owner, the Association, all other Townhome Unit Owners and the City may and shall have all rights and remedies as shall otherwise be provided or permitted by law or in equity.

11.9    Any aggrieved Townhome Unit Owner may enforce the provisions of this Declaration, the By-Laws, or any rules and regulations promulgated by the Board, by an action at law or in equity against the defaulting Townhome Unit Owner (or Occupant of his Townhome Lot and Townhome Unit).

11.10   The following provisions are intended for the benefit of each Eligible Mortgage Holder and to the extent if at all, that any other provisions of this Declaration conflicts with the following provisions, the provisions of this Section 11.10 shall control:

(a)    Upon request in writing to the Association identifying the name and address of the Eligible Mortgage Holder or the insurer or guarantor of a recorded first mortgage or trust deed on a Townhome Lot or Townhome Unit (**"Insurer or Guarantor"**), the Association shall furnish each Eligible Mortgage Holder, Insurer or Guarantor a written notice of any default in any of the obligations of the applicable Townhome Unit Owner under this Declaration which is not cured within thirty (30) days. Any Eligible Mortgage Holder of a Townhome Lot or Townhome Unit who comes into possession of the said Townhome Lot or Townhome Unit pursuant to the remedies provided in the mortgage, foreclosure of the mortgage, or deed (or assignment) in lieu of foreclosure shall, to the extent permitted by law, take such property free of any claims for unpaid assessments or charges in favor of the Association against the mortgaged Townhome Lot or Townhome Unit which become due prior to (i) the date of the transfer of title, (ii) the date on which said Holder comes into possession of the Townhome Lot or Townhome Unit, or (iii) the date on which a receiver is appointed in a suit to foreclose its lien, whichever occurs first.

(b)    Upon request in writing, each Eligible Mortgage Holder, Insurer or Guarantor shall have the right:

(i)    to examine current copies of this Declaration, the By-Laws, rules and regulations and the books and records of the Association during normal business hours;

(ii)     to receive, without charge and within a reasonable time after such request, copies of such financial statements as are prepared by the Association at the end of each of its respective fiscal years;

(iii)    to receive written notices of all meetings of the Association and to designate a representative to attend all such meetings;

(iv)     to receive written notice of any decision by the Association or Townhome Unit Owners to make a Material Amendment to this Declaration, the By-Laws or the articles of incorporation of the Association;

(v)      to receive written notice of any lapse, cancellation or material modification of any insurance policy or fidelity bond maintained by the Association; and

(vi)     to receive written notice of any proposed action which would require the consent of a specified percentage of Eligible Mortgage Holders.

(c)      No provision of this Declaration, the By-Laws or the articles of incorporation of the Association or any similar instrument pertaining to the Property or the Townhome Lots or Townhome Units thereon shall be deemed to give a Townhome Unit Owner or any other party priority over the rights of the Eligible Mortgage Holders pursuant to their mortgages in the case of distribution to Townhome Unit Owners of insurance proceeds or condemnation awards for losses to or a taking of the Townhome Lots or Townhome Units, and/or the Townhome Common Lots, or any portion thereof or interest therein. In such event, the Eligible Mortgage Holders, Insurers or Guarantors of the Townhome Lots or Townhome Units affected shall be entitled, upon specific written request, to timely written notice of any such loss.

(d)      Upon specific written request to the Association, each Eligible Mortgage Holder, Insurer or Guarantor of a Townhome Lot or Townhome Unit shall be furnished notice in writing by the Association (i) of any damage to or destruction or taking of the Townhome Common Lots if such damage or destruction or taking exceeds Ten Thousand and no/100 Dollars ($10,000.00), or (ii) of any damage to a Townhome Lot or Townhome Unit if such damage exceeds One Thousand and no/100 Dollars ($1,000.00).

(e)      If any Townhome Lot or Townhome Unit or portion thereof is made the subject matter of any condemnation or eminent domain proceeding or is otherwise sought to be acquired by a condemning authority, then the Eligible Mortgage Holder, Insurer or Guarantor of said Townhome Lot or Townhome Unit will be entitled to timely written notice, upon specific written request, of any such proceeding or proposed acquisition and no provisions of any document will entitle the owner of a Townhome Lot or Townhome Unit or other party to priority over such Eligible Mortgage Holder with respect to the distribution of the proceeds of any award or settlement in respect of such Townhome Lot or Townhome Unit.

11.11 If all or any part of the Townhome Common Lots only shall be taken through condemnation by any governmental authority having power so to do, the net proceeds of such taking shall be paid to and retained by the then owner of the Townhome Common Lots. If the effect of such condemnation shall be to isolate any part of the Property from the remainder of the Property, and if no residential structures shall then have been constructed or be situated within the portion of the Property so isolated, then all the Townhome Units lying wholly or partly within the portion of the Property so isolated shall be deemed to have been and shall be removed from and released from all of the terms and provisions of this Declaration and this Declaration shall be of no further force or effect with respect thereto. For purposes of this Section 11.11, the term "**condemnation**" shall include also any sale under threat of condemnation to any governmental authority having condemnation power.

11.12 Upon any dissolution of the Association, its assets shall be transferred to another homeowner's association having similar purposes.

11.13 (a) Declarant reserves the right and power, to be exercised without the consent of any Townhome Unit Owner or his Eligible Mortgage Holder, to record a special amendment ("**Special Amendment**") to this Declaration and to the Plat of Subdivision at any time and from time to time which causes this Declaration or the Plat of Subdivision (i) to comply with requirements of the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Federal Housing Association, the Veteran's Administration, or any other governmental agency or any other public, quasi-public, or private entity which performs (or may in the future perform) functions similar to those currently performed by such entities, (ii) to induce any of such agencies or entities to make, purchase, sell, insure, or guarantee first mortgages covering Townhome Lots and Townhome Units, (iii) to correct clerical or typographical errors in this Declaration or any Exhibit hereto or any supplement or amendment thereto, or (iv) notwithstanding that such change or modification could otherwise be considered a Material Amendment, to change or modify any of the terms or conditions of this Declaration and the Plat of Subdivision based upon Declarant's determination, made in good faith, that such change or modification is in the best interests of the Property and is consistent with the intent and purposes of this Declaration and the Plat of Subdivision; provided, however, that no such change or modification which could reasonably be inferred to affect any of the rights of the City hereunder shall be made without the written consent of the City. In furtherance of the foregoing, a power coupled with an interest is hereby reserved and granted to Declarant to vote in favor of, make, or consent to a Special Amendment on behalf of each Townhome Unit Owner as proxy or attorney-in-fact, as the case may be. Each deed, mortgage, trust deed, other evidence of obligation, or other instrument affecting a Townhome Lot or Townhome Unit, and the acceptance thereof shall be deemed to be a grant and acknowledgment of, and a consent to the reservation of, the power of Declarant to vote in favor of, make, execute and record Special Amendments. The right of Declarant to act pursuant to rights reserved or granted under this Section 11.13(a) shall terminate at such time as Declarant no longer holds or controls title to any Townhome Lot.

(b) Inasmuch as the lot lines for the Townhome Lots as set forth on the Plat of Subdivision have been established based upon Declarant's assumption that a certain type and size of

Townhome Unit will be located on each Townhome Lot and Declarant expects that in the sale of Townhome Units a configuration of Townhome Lots may result which is different than the configuration contemplated by the Plat of Subdivision, Declarant hereby expressly reserves to itself the right and power, to be exercised without the consent of any Townhome Unit Owner or his Eligible Mortgage Holder, to change, amend or modify the Plat of Subdivision by the recording of a plat of resubdivision (or other appropriate instrument) with respect to the portion or portions of the Property affected for purposes of changing, modifying or adjusting those lot lines dividing two or more immediately adjacent Townhome Lots then owned by Declarant; provided, however, that (i) no such lot line change, modification or adjustment shall occur where two Townhome Lots are separated by any portion of the Townhome Common Lots without the approval of the City and (ii) the City shall approve any plat of resubdivision (or other appropriate instrument) prior to its being recorded.

11.14   Each Townhome Unit Owner shall notify the Association of the name and address of the Eligible Mortgage Holder relating to his respective Townhome Lot and Townhome Unit.

## ARTICLE 12

## MASTER DECLARATION

12.1   **Subject to Master Declaration.**  The Master Declaration provides for certain easements to the Common Area Lots (as defined in the Master Declaration) and certain Master Association maintenance obligations, as well as certain Master Association rights (including, without limitation, the right to levy and collect assessments and the right to administer, control, maintain and restrict the use of the Common Area Lots) and certain other rights, powers, easements, covenants, conditions and restrictions, all as more particularly described in the Master Declaration.  The provisions of this Declaration shall be subject to the provisions of the Master Declaration, and in the event of any conflict between the provisions of this Declaration and the provisions of the Master Declaration, the provisions of the Master Declaration shall prevail.  Each Townhome Unit Owner further agrees to be bound by, and to perform, as the case may be, any obligation imposed on Residential Unit Owners (as such term is used in the Master Declaration) or occupants of the Master Development.

*[Signature Page Follows]*

**IN WITNESS WHEREOF**, Declarant has caused this Declaration of Party Wall Rights, Covenants, Conditions, Restrictions and Easements for The Enclave at Galewood Crossings Townhomes to be executed as of the date first above written.

DECLARANT:

**RSD GALEWOOD, LLC**, an Illinois limited liability company

By: Red Seal Development Corp., an Illinois corporation, its Manager

By: _____

Its: _____ Pres/CEO _____

**STATE OF ILLINOIS** )
) SS.
**COUNTY OF COOK** )

I, _Kathleen M. Mahon-Ortiz_____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY THAT _Todd Fishbein_____, the _President & CEO_____ of **Red Seal Development Corp.,** an Illinois corporation, sole manager of RSD Galewood, LLC, an Illinois limited liability company, personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _President & CEO_____ appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act, and as the free and voluntary act of said corporation in its capacity as the Manager of **RSD GALEWOOD, LLC,** for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this _4th_ day of _January_____, 200_8_.

_____
Notary Public

My Commission Expires:_____

"OFFICIAL SEAL"
Kathleen McMahon-Ortiz
Notary Public, State of Illinois
My Commission Exp. 12/29/2009

Final - 1-3-08

## CONSENT OF MORTGAGEE

JPMorgan Chase Bank, N.A. a national banking association, holder of two Mortgages on the Property 1) a Construction Mortgage dated October 5, 2006 and recorded 10/13/2006 as Document No. 0628610084 and 2) a Mortgage dated January 31, 2007 and recorded 3/7/2007 as Document No. 0706642010 hereby consents to the execution and recording of the within Declaration of Party Wall Rights, Covenants, Conditions, Restrictions and Easements for the Enclave at Galewood Crossings Townhomes and agrees that said Mortgages are subject thereto

**IN WITNESS WHEREOF,** JPMorgan Chase Bank, N.A. a national banking association, has caused this Consent of Mortgagee to be signed by its duly authorized officers on its behalf; all done at Chicago, Illinois on this 7ᵗʰ day of January , 2008.

                                    **JPMorgan Chase Bank, N.A., a national
                                    banking association.**

ATTEST:

Maria I. Olliges

Its: Vice President

By: Jennifer S. Kelley

Its: Sr. Vice President

STATE OF ILLINOIS      )
                       ) SS
COUNTY OF COOK         )

I, Ronald S. Girard , a Notary Public in and for said County and State, do hereby certify that Maria I. Olliges and Jennifer S. Kelley , the Vice President and Sr. Vice President , respectively of JP Morgan Chase Bank, a national banking association as such officers appeared before me this day in person and acknowledged that they signed, sealed and delivered said instrument as their free and voluntary act, and as the free and voluntary act of said corporation, for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal this 7th day of January , 2008.

                                    Ronald S. Girard

                                    **NOTARY PUBLIC**

OFFICIAL SEAL
RONALD S GIRARD
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/30/10

Final -- 1-3-08

## EXHIBIT A

## THE PROPERTY

Lots 16 to 28, inclusive, Lots 65 to 83 inclusive, Lots 97 to 140, inclusive, Lots 163 to 165, inclusive, and Lot 168 in the Galewood Residential Subdivision being a subdivision of the Southwest Quarter of Section 33, Township 40 North, Range 13 East of the Third Principal Meridian according to the Plat thereof recorded March 29, 2007 as document number 0708815072 in Cook County, Illinois.

PINs:
13-33-300-018
A part of: 13-33-300-019
13-33-300-023
13-33-300-024
A part of: 13-33-300-030
A part of: 13-33-300-032
13-33-310-001
13-33-310-002

## EXHIBIT B

## BY-LAWS OF
## THE ENCLAVE AT GALEWOOD CROSSINGS TOWNHOME ASSOCIATION

## ARTICLE 1

## PURPOSES AND POWERS

The Association shall be responsible for the general management and supervision of the Property, the ownership, management and maintenance of the Townhome Common Lots thereof and the maintenance of the exterior of the Townhome Units (unless otherwise provided in the Declaration) and shall have all of the powers to perform, and shall be responsible to perform, all of the obligations provided in the Declaration. Further, the Association shall have all powers now or hereafter granted by the General Not For Profit Corporation Act of the State of Illinois which shall be consistent with the purposes specified herein and in the Declaration.

## ARTICLE 2

## OFFICES

2.1     **Registered Office**. The Association shall have and continuously maintain in this State a Registered Office and a Registered Agent whose office shall be identical with such Registered Office. The Association may have other offices within or without the State of Illinois as the Board of Directors may from time to time determine.

2.2     **Principal Office**. The principal office of the Association shall be maintained in Chicago, Illinois or such other place as reasonably determined by the Association.

## ARTICLE 3

## MEMBERSHIP

3.1     **Voting Members**. Every Townhome Unit Owner, including Declarant for each Townhome Lot or Townhome Lot and Townhome Unit that it owns, shall be a Member of the Association. The foregoing is not intended to include persons or entities who hold an interest merely as security for the performance of an obligation. Membership shall be appurtenant to and may not be separated from ownership of each Townhome Lot or Townhome Lot and Townhome Unit. If the record owner of title to a Townhome Lot and Townhome Unit shall be more than one person, all such persons shall be Members, but the voting rights in the Association attributable to that Townhome Lot and Townhome Unit shall be exercised in the manner hereinafter provided. If the record owner of title to a Townhome Lot and Townhome Unit shall be a trust, corporation, partnership, limited liability company, limited liability partnership, or other legal entity, then the one individual who shall be entitled to exercise the rights and privileges (such as, to vote and to be a

B-1

director on the Board), and who shall be responsible to bear the obligations associated with membership in the Association with respect to that Townhome Lot and Townhome Unit shall be designated by the Townhome Unit Owner thereof in writing to the Association. Such designation may be changed from time to time thereafter by notice in writing from the Townhome Unit Owner to the Association. No Townhome Unit Owner shall have any right or power to disclaim, terminate or withdraw from such Townhome Unit Owner's membership in the Association or any of the obligations as such Member, and no purported disclaimer, termination or withdrawal thereof or therefrom on the part of any such Townhome Unit Owner shall be of any force or effect for any purpose. Nothing herein contained shall be interpreted to exclude Declarant from membership while it or its successors in interest, if any, owns one or more Townhome Lots or Townhome Lots and Townhome Units. Voting rights with regard to each Member are set forth in Section 3.2 hereof.

3.2 **Classes of Membership**. The Association shall have two classes of voting membership:

Class A. Class A Members shall be all those Townhome Unit Owners as defined in Article 2 of the Declaration, provided that Declarant shall not be a Class A Member until the Transfer Date. Class A Members shall be entitled to one vote for each Townhome Lot and Townhome Unit in which they hold the interest required for membership by Section 3.1. When more than one person holds such interest in any Townhome Lot and Townhome Unit, all such persons shall be Members. The vote for such Townhome Lot and Townhome Unit shall be exercised as they among themselves determine, but in no event shall more than one vote be cast with respect to any Townhome Lot and Townhome Unit. All Members holding any interest in a single Townhome Lot and Townhome Unit shall together be entitled to cast only one vote for the Townhome Lot and Townhome Unit.

Class B. The Class B Member shall be Declarant. The Class B Member shall be entitled to three (3) votes for each Townhome Lot or Townhome Lot and Townhome Unit in which it holds the interest required for membership by Article 2 of the Declaration; provided that the Class B membership shall cease and be converted to Class A membership on the Transfer Date.

3.3 **Meetings**.

(a) **Quorum: Procedure**. Meetings of the Members shall be held at the principal office of the Association or at such other place in Cook County, Illinois as may be designated in any notice of a meeting. The presence at any meeting, in person or by proxy, of a majority of the total votes determined pursuant to Section 3.2 above shall constitute a quorum. Unless otherwise expressly provided herein or in the Declaration, any action may be taken at any meeting of the Members at which a quorum is present upon the affirmative vote of the Members having a majority of the total votes present (whether in person or by proxy) at such meeting. Any Member in writing may waive notice of a meeting, or consent to any action of the Association without a meeting.

(b) **Initial and Annual Meeting**. The initial meeting of the Members shall be

B-2

held at such time as may be designated upon not less than twenty-one (21) days' written notice given by the Declarant, provided that such initial meeting shall be held no later than one hundred and twenty (120) days after the Transfer Date. Thereafter, there shall be an annual meeting of the Members on the first Tuesday of May of each succeeding year, at 7:30 P.M., or at such other reasonable time or date as may be designated by the Board in a written notice delivered to the Townhome Unit Owners in accordance with Section 3.4. If the date for the annual meeting of Members is a legal holiday, the meeting will be held at the same hour on the first day succeeding such date which is not a legal holiday.

(c)     **Special Meetings**. Special meetings of the Members may be called at any time for the purpose of considering matters which, by the terms of the Declaration or these By-Laws, require the approval of all or some of the Members, or for any other reasonable purposes. Said meetings shall be called by written notice, authorized by a majority of the Board or by the Members having twenty percent (20%) of the total votes entitled to be cast by the Members as provided in Section 3.2 above, and delivered not less than twenty-one (21) days prior to the date fixed for said meeting. The notices shall specify the date, time and place of the meeting and the matters to be considered.

3.4     **Notices of Meetings**. Notices of meetings required to be given herein may be delivered either personally or by mail to the persons entitled to vote thereat, addressed to each such person at the address given by him to the Board for the purpose of service of such notice, or addressed to the Townhome Unit of the Townhome Unit Owner with respect to which such voting right appertains, if no address has been given to the Board. The notices required herein shall be delivered or mailed not less than twenty-one (21) days prior to the meeting date and shall state the specific purpose and the nature of the business for which the meeting is called. At any meeting, no business may be transacted other than that specified in the notice.

3.5     **Proxies**. At any meeting of Members, a Member entitled to vote may either vote in person or by proxy executed in writing by the Member or by his duly authorized attorney-in-fact. No proxy shall be valid after eleven (11) months from the date of its execution unless otherwise provided in the proxy.

## ARTICLE 4

## BOARD OF DIRECTORS AND OFFICERS

4.1     **Board of Directors**. The direction and administration of the Property in accordance with the provisions of the Declaration shall be vested in the Board of Directors, consisting of five (5) persons who shall be elected in the manner hereinafter provided, except for the first Board of Directors appointed by Declarant. The Members having at least two-thirds (2/3) of the total votes may from time to time increase or decrease the term of the office of the Board members at any annual meeting, provided the terms of at least one of the persons on the Board shall expire annually. Each member of the Board, with the exception of the Board members appointed by Declarant shall be one of the Townhome Unit Owners (including Declarant); provided, however, that in the event a Townhome Unit Owner is a corporation, partnership, trust, limited liability company, or other legal

B-3

entity other than a natural person or persons, then any director or officer of such corporation, partner of such partnership, individual trustee or beneficiary of such trust, manager, officer or member of such limited liability company, or manager or principal of such legal entity, shall be eligible to serve as a member of the Board and provided further that in the event a member of the Board has entered into a contract to sell his Townhome Unit and vacates the Townhome Unit prior to the consummation of that transaction, such member shall thereafter no longer be eligible to serve on the Board and his term of office shall be deemed terminated.

4.2 **Determination of Board to be Binding**. All matters of dispute or disagreement between Townhome Unit Owners with respect to interpretation or application of the provisions of the Declaration or these By-Laws shall be determined by the Board as hereinafter provided, which determination shall be final and binding on the Association and on all Townhome Unit Owners subject, however, to the jurisdiction of any applicable court of law.

4.3 **Election of Board Members**. The initial Board of Directors designated by Declarant pursuant to Section 4.1 hereof shall serve for a period commencing on the date the Declaration is executed and ending upon the qualification of the directors elected at the initial meeting of Members held as provided in Section 3.3(b) hereof. At the initial meeting of the Members and at all subsequent annual meetings of the Members there shall be elected a Board of Directors. In all elections for members of the Board of Directors, each Member shall be entitled to vote on a non-cumulative basis and the candidates receiving the highest number of votes with respect to the number of offices to be filled shall be deemed to be elected. Five (5) Board Members shall be elected at the initial meeting. The three (3) persons receiving the highest number of votes at the initial meeting shall be elected to the Board for a term of *approximately* two (2) years, in that said term shall run from the date of the initial meeting until the date of the second annual meeting; and the two (2) persons receiving the next highest number of votes shall be elected to the Board for a term of *approximately* one (1) year in that said term shall run from the date of the initial meeting until the date of the first annual meeting. In the event of a tie vote, the members of the Board shall determine which members shall have the two (2) year term and which members shall have the one (1) year terms. Upon the expiration of the terms of office of the Board members so elected at the initial meeting and thereafter, successors shall be elected for a term of two (2) years each.

4.4 **Compensation**. Members of the Board shall receive no compensation for their services, unless expressly allowed by the Board at the direction of the Members having two-thirds (2/3) of the total votes. However, any director may be reimbursed for reasonable expenses incurred in the performance of his duties.

4.5 **Vacancies in Board**. Vacancies in the Board, other than as a result of removal pursuant to Paragraph 4.7 hereof, including vacancies due to any increase in the number of persons on the Board, shall be filled by the remaining members of the Board until the next annual meeting or by the Members present at the next annual meeting or at a special meeting of the Members called for such purpose. The Declarant may fill any vacancies in the Board during the time prior to the initial meeting.

B-4

Final - 1-3-08

4.6     **Election of Officers**. The Board shall elect from among its members a President who shall preside over both its meetings and those of the Members, and who shall be the chief executive officer of the Board and Association; a Secretary who will keep the minutes of all meetings of the Members and of the Board and who shall, in general, perform all the duties incident to the office of Secretary; a Treasurer to keep the financial records and books of account, and such additional officers as the Board shall see fit to elect. All officers shall be elected at each annual meeting of the Board and shall hold office at the pleasure of the Board.

4.7     **Removal of Board Members**. Any Board member may be removed from office by affirmative vote of the Members having at least two-thirds (2/3) of the total votes, at any special meeting called for the purpose in the manner aforesaid. A successor to fill the unexpired term of a Board member removed may be elected by the Members at the same meeting or any subsequent meeting called for that purpose. The Declarant may remove a Board Member during the time prior to the initial meeting.

4.8     **Meeting of Board**. The initial meeting of the Board shall be held immediately following the initial meeting of the Members and at the same place. At such meeting the Board shall elect its officers to serve until the first annual meeting of the Board which shall be held immediately following the first annual meeting of the Members and at the same place. All subsequent annual meetings of the Board shall be held without notice immediately after, and at the same place as, the annual meeting of Members. Special meetings of the Board shall be held upon call by the President or by a majority of the Board on not less than forty-eight (48) hours' notice in writing to each member, delivered personally or by mail or telegram. Any member may in writing waive notice of a meeting, or consent to the holding of a meeting without notice, or consent to any action of the Board without a meeting. A majority of the number of Board members shall constitute a quorum for the transaction of business. Unless otherwise expressly provided herein, any action may be taken by the Board upon the affirmative vote of a majority of those present at its meetings when a quorum is present.

4.9     **Execution of Instruments**. All agreements, contracts, deeds, leases, vouchers for payment of expenditures, and other instruments shall be signed by such officer or officers, agent or agents of the Board and in such manner as from time to time shall be determined by written resolution of the Board. In the absence of such determination by the Board, such documents shall be signed by the President and countersigned by the Secretary.

## ARTICLE 5

## POWERS OF THE BOARD

5.1     **General Powers of the Board**. Without limiting the general powers which may be provided by law, the Declaration or these By-Laws, the Board shall have the following general powers and duties:

    (a)  to elect the officers of the Association as hereinabove provided;

Final   1-3-08

(b)  to administer the affairs of the Association and the Property;

(c)  subject to Section 5.3(b) below, to engage the services of a manager or managing agent who shall manage and operate the Property, the Townhome Common Lots and other areas for which the Association is responsible pursuant to the Declaration or the Master Declaration;

(d)  to formulate policies for the administration, management and operation of the Property, the Townhome Common Lots and other areas for which the Association is responsible pursuant to the Declaration or the Master Declaration;

(e)  to adopt administrative rules and regulations governing the administration, management, operation and use of the Property and the Townhome Common Lots, and to amend such rules and regulations from time to time;

(f)  to provide for the maintenance, repair and replacement of the Townhome Common Lots, and those exterior portions of the Townhome Units and other areas for which the Association is responsible pursuant to the Declaration or the Master Declaration, and payments therefor, and to approve payment vouchers or to delegate such approval to the officers or the manager or managing agent;

(g)  after notice and an opportunity to be heard, to levy and collect reasonable fines from members for violations of the Declaration, By-laws, or rules and regulations;

(h)  to provide for the designation, hiring and removal of employees and other personnel, including accountants and legal counsel, and to engage or contract for the services of others, and to make purchases for the maintenance, repair, replacement, administration, management and operation of the Townhome Common Lots and those exterior portions of the Townhome Units and other areas for which the Association is responsible pursuant to the Declaration or the Master Declaration and to delegate any such powers to the manager or managing agent (and any such employees or other personnel as may be the employees of the managing agent);

(i)  to estimate the amount of the annual budget, and to provide the manner of assessing and collecting from the Townhome Unit Owners of such Townhome Lots and Townhome Units as have been occupied for residential purposes, their respective shares of such estimated expenses, as hereinafter provided;

(j)  to the extent the same may then be owned by the Association, to dedicate or transfer all or any part of the Townhome Common Lots to any public agency, authority or utility or to mortgage the Townhome Common Lots or any portion thereof for such purposes and subject to such conditions as may be agreed to by the Members. No such dedication, transfer or mortgage shall be effective unless an instrument signed by the Class B Member has been recorded, agreeing to such mortgage, dedication or transfer. In the event Class B membership has ceased, then three-fourths (3/4) of the votes of the Class A membership

shall be the required to make such action effective; and

(k)    to exercise all other powers and duties vested in or delegated to the Association, and not specifically reserved to the Townhome Unit Owners by the Articles of Incorporation, the Declaration or these By-Laws.

5.2    **Tax Relief**. In connection with the Townhome Common Lots, and to the extent the Association may be the legal titleholder thereof, the Board shall have the power to seek relief from or in connection with the assessment or levy of any real property taxes, special assessments or any other special taxes or charges of the State of Illinois or any political subdivision thereof, or any other lawful taxing or assessing body, which are authorized by law to be assessed and levied on real property and to charge all expenses incurred in connection therewith to the assessments.

5.3    **Rules and Regulations; Management**.

(a)    **Rules**. The Board may adopt such reasonable rules and regulations as it may deem advisable for the maintenance, conservation and beautification of the Property, and for the health, comfort, safety and general welfare of the Townhome Unit Owners and Occupants. Written notice of such rules and regulations shall be given to all Townhome Unit Owners and Occupants, and the entire Property shall at all times be maintained subject to such rules and regulations.

(b)    **Management**. Declarant or the Board shall engage the initial management organization under contracts expiring not later than ninety (90) days after the date the initial meeting of Members is held. Thereafter, the Board may engage the services of an agent to manage the Property to the extent deemed advisable by the Board; provided, however, that if the Association, Declarant or Board shall enter into an agreement or agreements for the professional management of the Property before the Transfer Date, each such agreement shall be terminable by the Association without cause at any time after the Transfer Date; shall not require the payment of any penalty by the Association; and shall not require advance notice of termination of more than ninety (90) days. Any management fees incurred pursuant to this Section 5.3(b) shall be paid from the assessments collected pursuant to Article 6 hereof.

(c)    Nothing hereinabove contained shall be construed to give the Board authority to conduct an active business for profit on behalf of all of the Townhome Unit Owners or any of them.

5.4    **Liability of the Directors and Officers of the Association**. Neither the Directors nor the officers of the Association shall be liable to the Townhome Unit Owners for any mistake of judgment or for any other acts or omissions of any nature whatsoever made by such individuals as such Directors and officers, except for any acts or omissions finally adjudged by a court of competent jurisdiction to constitute gross negligence or fraud. The Townhome Unit Owners (including the Directors and the officers of the Association in their capacity as Townhome Unit Owners) shall indemnify and hold harmless each of the Directors and each of the officers of the Association against all contractual and other liabilities to others arising out of contracts made by or other acts of the

B-7

Board and officers of the Association on behalf of the Townhome Unit Owners or arising out of their status as Directors or officers of the Association, unless any such contract or act shall have been finally adjudged by a court of competent jurisdiction to have been made fraudulently or with gross negligence. It is intended that the foregoing indemnification shall include indemnification against all costs and expenses (including, but not limited to, attorneys' fees, amounts of judgments paid and amounts paid or received in settlement) reasonably incurred in connection with the defense of any claim, action, suit or proceeding, whether civil, criminal, administrative, or other, in which any Director or officer of the Association may be involved by virtue of such persons being or having been such Director or officer; provided, however, that such indemnity shall not be operative with respect to (a) any matter as to which such person shall have been finally adjudged in such action, suit or proceeding to be liable for gross negligence or fraud in the performance of such person's duties as such Director or officer, or (b) any matter settled or compromised, unless, in the opinion of independent counsel selected by or in a manner determined by the Board, there is not reasonable ground for such person being adjudged liable for gross negligence or fraud in the performance of such person's duties as such Director or officer. It is also intended that the liability of each Townhome Unit Owner arising out of any contract made by, or other acts of, the Board or officers of the Association, or out of the aforesaid indemnity in favor of the Directors or officers of the Association, shall be limited to an amount equal to the total liability thereunder divided by the number of Townhome Lots. Every agreement made by the Board on behalf of the Townhome Unit Owners shall be deemed to provide that the Directors are acting only as agents for the Townhome Unit Owners, and shall have no personal liability thereunder (except as Townhome Unit Owners) and that each Townhome Unit Owner's liability thereunder shall be limited to an amount equal to the total liability thereunder divided by the number of Townhome Lots.

## ARTICLE 6

## ASSESSMENTS - MAINTENANCE FUND

6.1 **Preparation of Estimated Budget**. Each year on or before December 15, the Board will approve a budget with an estimate of the total amount necessary to pay the cost of wages, materials, taxes, insurance, services and supplies which will be required during the ensuing calendar year for the rendering of all services authorized by the Board, together with a reasonable amount considered by the Board to be necessary for a reserve for contingencies and replacements. Each Townhome Unit Owner shall receive, at least 30 days prior to the adoption thereof by the Board, a copy of the proposed budget. The Association assessment shall be assessed equally among all of the Townhome Unit Owners other than Declarant as provided in Article 6 of the Declaration. On or before January 1 of the ensuing calendar year, and the first of each and every month of said year, each Townhome Unit Owner, other than Declarant, shall be obligated to pay to the Board, or as it may direct, one-twelfth (1/12th) of the assessment made pursuant to this Section 6.1.

6.2 **Year End Reconciliation**. Within 120 days of the end of the fiscal year, the Board shall supply to all Townhome Unit Owners an itemized accounting of the expenses for the preceding fiscal year actually incurred and paid, together with a tabulation of the amounts collected from the Townhome Unit Owners pursuant to assessments made during such year (including amounts

B-8

collected from Declarant) and showing the net amount over or short of the actual expenditures, plus reserves.

6.3 **Paid Assessment Letter**. The Board shall upon demand at any time furnish a certificate in writing signed by an officer or agent of the Association, setting forth whether the assessments on a specified Townhome Lot and Townhome Unit have been paid. Such certificates shall be conclusive evidence of payment of any assessment therein. In addition, the Association will provide such information as may be required by law. The Board may levy a reasonable fee for the preparation of such certificate and the copying of any documents requested by the Townhome Unit Owner.

6.4 **Budget for First Year**. When the first Board elected hereunder (or appointed by Declarant) takes office, it shall determine the budget for the period commencing on the day of the conveyance of the first Townhome Lot and Townhome Unit and ending on December 31 of the calendar year following said conveyance. The initial budget shall be divided among the remaining monthly installments of such calendar year and assessed equally to all Townhome Unit Owners, other than Declarant.

6.5 **Failure to Prepare Annual Budget**. The failure or delay of the Board to prepare or serve the annual or adjusted estimate on a Townhome Unit Owner shall not constitute a waiver or release in any manner of such Townhome Unit Owner's obligation to pay the assessments, including necessary reserves, as herein provided, whenever the same shall be determined, and, in the absence of any annual estimate or adjusted estimate, the Townhome Unit Owner shall continue to pay the monthly assessment charge at the then existing monthly rate established for the previous period until the monthly assessment payment which is due more than ten (10) days after such new annual or adjusted estimate shall have been mailed or delivered.

6.6 **Books and Records**. The Board shall keep full and correct books of account in chronological order of the receipts and expenditures affecting the Property, specifying and itemizing the maintenance and repair expenses and any other expenses incurred. Such records and the vouchers authorizing the payments shall be available for inspection by any Townhome Unit Owner or any representative of a Townhome Unit Owner duly authorized in writing or any holder, insurer or guarantor of a first mortgage secured by any portion of the Property at such reasonable time or times during normal business hours as may be requested by such Townhome Unit Owner or his representative or such holder, insurer or guarantor. Upon not less than ten (10) days' prior notice to the Board, any Townhome Unit Owner shall be furnished a statement of his account, setting forth the amount of any unpaid assessment or other charges due and owing from such Townhome Unit Owner. In addition, the Board shall provide for the preceding fiscal year, upon the written request of any holder, insurer or guarantor of a first mortgage secured by any portion of the Property, any annual audited or unaudited financial statements which are prepared and distributed by the Association to the Townhome Unit Owners at the end of each of its respective fiscal years, provided, however, that in the event an audited financial statement is not available, 51% or more of the Eligible Mortgage Holders (by number) shall upon request, be entitled to have such an audited statement prepared at their expense.

B-9

6.7 **Status of Collected Funds**. All funds collected hereunder shall be held and expended for the purposes designated herein, and (except for such special assessments as may be levied hereunder against less than all the Townhome Unit Owners and for such adjustments as may be required to reflect delinquent or prepaid assessments) shall be deemed to be held in trust for the benefit, use and account of all the Townhome Unit Owners, other than Declarant. All funds not otherwise employed shall be deposited from time to time to the credit of the Association in such banks, trust companies or other depositories as the Board may select.

6.8 **Remedies for Failure to Pay Assessments**. Any assessments which are not paid when due shall be delinquent. Such assessments, interest and all costs of collection shall be a continuing lien upon the Townhome Lot and Townhome Unit against which each such assessment was made. If the assessment is not paid within thirty (30) days after the due date, then (i) the amount of the assessment shall bear interest from the date of delinquency at the rate per annum which is the lesser of (a) eighteen percent (18%) and (b) the maximum rate allowed by law, and (ii) in addition to said interest, the Association shall have the right, to be exercised in a non-discriminatory manner, to charge a delinquent Townhome Unit Owner a late fee of Twenty-Five and no/100 Dollars ($25.00) for each month or portion thereof that said amount remains delinquent, said late fee to cover the Association's administrative costs in monitoring and collecting such amount. The Association may bring an action at law or in equity against the Townhome Unit Owner personally obligated to pay the same, or foreclose the lien against the respective Townhome Lot and Townhome Unit and interest, late fees, costs and reasonable attorneys' fees of any such action shall be added to the amount of such assessment. Each Townhome Unit Owner, by his acceptance of a deed to a Townhome Lot and Townhome Unit, hereby expressly vests in the Association, or its agents, the right and power to bring all actions against such Townhome Unit Owner personally for the collection of such charges as a debt, and to enforce the aforesaid lien by all methods available for the enforcement of such liens, including foreclosure by an action brought in the name of the Association in a like manner as a mortgage or deed of trust lien on real property.

6.9 **Exempt Townhome Lots**. With regard to all Townhome Lots which are vacant or upon which Townhome Units are being constructed or have been completed and to which title has not been conveyed by Declarant (the "**Declarant Owned Lots**"), the total aggregate assessment due with respect to all Declarant Owned Lots shall be limited to the amount by which (a) the aggregate amount of actual operating expenses from time to time required to be paid with respect to the Property exceed (b) the amounts required to be paid by the Townhome Unit Owners other than Declarant for said actual operating expenses. For purposes of the foregoing calculation, in the event Declarant enters into a lease or installment contract for any Townhome Lot and Townhome Unit, then Declarant shall, as of the first day of occupancy under each such lease or contract, be responsible for the payment of all assessments on that Townhome Lot and Townhome Unit on the same basis as any other Townhome Unit Owner as provided in this Article and, consequently, said Lot shall no longer be deemed to be a Declarant Owned Lot hereunder. Actual operating expenses shall mean those ordinary expenses attributable only to the period in question covering the maintenance and operation of the Property and shall not include capital expenditures, amounts set aside as a reserve for contingencies or replacements, prepaid items or inventory items to the extent attributable to subsequent periods. The foregoing amounts owed by Declarant for the Declarant

B-10

Owned Lots may be paid by Declarant on a monthly basis or, at Declarant's option, paid to the Association at the close of each calendar year without interest. It is expressly understood and agreed that in no event shall Declarant's total obligation under this Section 6.9 with respect to the Declarant Owned Lots ever exceed the amount of assessment due from each of the Townhome Unit Owners other than Declarant multiplied by the number of Declarant Owned Lots from time to time.

6.10 **Fiscal Year**. The fiscal year of the Association shall be a calendar year from January 1 to December 31.

## ARTICLE 7

### COVENANTS AND RESTRICTIONS AS TO USE AND OCCUPANCY

All Townhome Unit Owners shall maintain, occupy and use their Townhome Lots and Townhome Units and the Townhome Common Lot only in accordance with the terms of the Declaration and any additional rules and regulations adopted by the Board or by the Members.

The Board shall have full authority to enforce all such rules and regulations by taking all action as may be necessary.

## ARTICLE 8

### COMMITTEES

8.1 **Board Committees**. The Board, by resolution adopted by a majority of the directors in office, may designate one (1) or more committees, each of which shall consist of one (1) or more directors; said committees, to the extent consistent with law and as provided in said resolution, shall have and exercise the authority of the Board in the management of the Association; but the designation of such committees and the delegation to such committee of authority shall not operate to relieve the Board, or any individual director, of any responsibility imposed upon it or him by law.

8.2 **Special Committees**. Other committees not having and exercising the authority of the Board in the management of the Association may be designated by a resolution adopted by a majority of the directors present at a meeting at which a quorum is present. Except as otherwise provided in such resolution, members of each such committee shall be Members, and the President of the Association shall appoint the members thereof. Any member thereof may be removed whenever in the Board's judgment the best interests of the Association shall be served by such removal.

8.3 **Term**. Each member of the committee shall continue as such until the next annual meeting of the Board and until his successor is appointed and shall have qualified, unless the committee shall be sooner terminated, or unless such member shall cease to qualify as a member thereof.

8.4 **Chairman**. One (1) member of each committee shall be appointed chairman.

B-11

8.5 __Vacancies__. Vacancies in the membership of any committee may be filled by appointment made in the same manner as provided in the case of the original appointments.

8.6 __Quorum__. Unless otherwise provided in the resolution of the Board designating a committee, a majority of the whole committee shall constitute a quorum and the act of a majority of the members present at a meeting at which a quorum is present shall be the act of the committee.

8.7 __Rules__. Each committee may adopt rules for its own government not inconsistent with these By-Laws or with rules adopted by the Board.

## ARTICLE 9

## AMENDMENTS

These By-Laws may be amended or modified from time to time in accordance and in the same manner as provided by the provisions of Section 11.3 of the Declaration. Such amendments shall be recorded in the Office of the Recorder of Deeds of Cook County, Illinois.

## ARTICLE 10

## DEFINITION OF TERMS AND CONSTRUCTION

The terms used in these By-Laws shall have the same definition as set forth in the Declaration to which these By-Laws are attached to the extent such terms are defined therein. To the extent of any conflict, ambiguity or contradiction between the terms and provisions contained in these By-Laws and those contained in the Declaration, those contained in the Declaration shall, in all instances, control and prevail.

Final 1-3-08