# EXHIBIT C



Doc#: 0902316030 Fee: $354.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 01/23/2009 02:21 PM Pg: 0

*This space reserved for Recorder's use only.*

# AMENDED AND RESTATED DECLARATION OF CONDOMINIUM OWNERSHIP AND OF EASEMENTS, RESTRICTIONS, COVENANTS AND BY-LAWS FOR THE ENCLAVE AT GALEWOOD CROSSINGS MULTI-BUILDING CONDOMINIUM ASSOCIATION (F/K/A THE ENCLAVE AT GALEWOOD CROSSING LOT 6 CONDOMINIUM ASSOCIATION)

**THIS INSTRUMENT PREPARED BY AND AFTER RECORDING RETURN TO:**

Elizabeth H. Friedgut
DLA Piper LLP (US)
203 North LaSalle Street
Chicago, Illinois 60601

CENTRAL\31166692.2

**PERMANENT REAL ESTATE INDEX NUMBERS:**

a part of 13-33-300-024

**ADDRESS OF PROPERTY:**
1848 N Laramie Avenue
Chicago, Illinois 60639

RECO_____ 354
DATE _2-3-0_
OK _____

# TABLE OF CONTENTS

**ARTICLE**                                                                                          **Page**

1   DEFINITIONS..............................................................................................................2

2   UNITS........................................................................................................................5
    2.1   Description and Ownership..............................................................................5
    2.2   Certain Structures Not Constituting Part of a Unit .........................................6
    2.3   Real Estate Taxes............................................................................................6
    2.4   Ownership of Unit Parking Space....................................................................6

3   COMMON ELEMENTS .............................................................................................7
    3.1   Description .......................................................................................................7
    3.2   Ownership of Common Elements .....................................................................7
    3.3   Limited Common Elements ..............................................................................7
    3.4   Use of Limited Common Elements...................................................................8

4   GENERAL PROVISIONS AS TO UNITS AND COMMON ELEMENTS ...................8
    4.1   Original Declaration; Submission of Property to the Act.................................8
    4.2   No Severance of Ownership .............................................................................8
    4.3   Easements ........................................................................................................9
    4.4   Use of the Common Elements ........................................................................13
    4.5   Maintenance, Repairs and Replacements ......................................................13
    4.6   Negligence of Unit Owner ..............................................................................16
    4.7   Joint Facilities ................................................................................................16
    4.8   Additions, Alterations or Improvements.........................................................16
    4.9   Street and Utilities Dedication .......................................................................17
    4.10  Garage............................................................................................................17
    4.11  Unit B Storage Space .....................................................................................17

5   ADMINISTRATION AND BY-LAWS........................................................................18
    5.1   Administration of Property .............................................................................18
    5.2   Association......................................................................................................18
    5.3   Voting Rights ..................................................................................................19
    5.4   Meetings..........................................................................................................20
    5.5   Notices of Meetings ........................................................................................20
    5.6   Board of Directors..........................................................................................21
    5.7   General Powers of the Board .........................................................................24
    5.8   Insurance ........................................................................................................30
    5.9   Liability of the Board of Directors and Officers of the Association.................36
    5.10  Resale of Units ...............................................................................................37

6   COMMON EXPENSES ............................................................................................37
    6.1   Covenant for Assessments .............................................................................37
    6.2   Purpose and Use of Assessments..................................................................38
    6.3   Preparation of Annual Budget .......................................................................38

CENTRAL\31166692.2

# TABLE OF CONTENTS
### (continued)

**ARTICLE**                                                                                    **Page**

6.4     Capital Reserve; Supplemental Budget ................................................ 39
6.5     Initial Budget ...................................................................................... 40
6.6     Failure to Prepare Annual Budget........................................................ 40
6.7     Records of the Association ................................................................... 40
6.8     Status of Collected Funds .................................................................... 41
6.9     Start-Up Costs ...................................................................................... 41
6.10    User Charges........................................................................................ 42
6.11    Non-Use and Abandonment.................................................................. 42

7       COVENANTS AND RESTRICTIONS AS TO USE AND OCCUPANCY ................. 42
7.1     Use and Occupancy of the Property...................................................... 42

8       DAMAGE, DESTRUCTION, CONDEMNATION AND RESTORATION ............... 47
8.1     Sufficient Insurance ............................................................................. 47
8.2     Insufficient Insurance........................................................................... 48
8.3     Eminent Domain ................................................................................... 49
8.4     Repair, Restoration or Reconstruction of the Improvements................ 49

9       SALE OF THE PROPERTY ........................................................................ 50
9.1     Sale....................................................................................................... 50

10      REMEDIES............................................................................................. 50
10.1    Violations.............................................................................................. 50
10.2    Remedies............................................................................................... 51
10.3    Enforcement by Unit Owners ............................................................... 52

11      MISCELLANEOUS PROVISIONS RESPECTING MORTGAGES ........................ 53
11.1    Mortgages ............................................................................................ 53

12      TRANSFER OF A UNIT............................................................................. 56
12.1    Unrestricted Transfers.......................................................................... 56
12.2    Limits on Lease Terms.......................................................................... 56
12.3    Financing of Purchase by Association................................................... 56
12.4    Effect of Non-Compliance .................................................................... 57
12.5    Miscellaneous ...................................................................................... 57

13      GENERAL PROVISIONS ........................................................................... 57
13.1    Certain Rights of the Declarant and Developer..................................... 57
13.2    Manner of Giving Notices .................................................................... 58
13.3    Notice to Mortgagees ........................................................................... 58
13.4    Notices of Estate or Representatives..................................................... 58
13.5    Conveyance and Leases ........................................................................ 58
13.6    No Waivers ........................................................................................... 58
13.7    Change, Modification or Rescission...................................................... 58
13.8    Partial Invalidity................................................................................... 59

CENTRAL\31166692.2

## TABLE OF CONTENTS
### (continued)

**ARTICLE**                                                                                                          **Page**

13.9   Perpetuities and Other Invalidity ........................................................................ 59
13.10  Liberal Construction; References ......................................................................... 59
13.11  Ownership by Land Trustee ................................................................................. 59
13.12  Special Amendment ............................................................................................. 60
13.13  Assignments by Developer and Declarant ............................................................ 60

14   MASTER DECLARATION .............................................................................................. 60
14.1   Subject to Master Declaration .............................................................................. 60
14.2   Master Association Assessments .......................................................................... 61
14.3   Master Association Management Services ............................................................ 61

15   ANNEXING ADDITIONAL PROPERTY ......................................................................... 61
15.1   Additional Parcel ................................................................................................. 61
15.2   Annexation Amendments ..................................................................................... 62
15.3   Determination of Amendments to Percentages of Ownership Interest in
       Common Elements ............................................................................................... 63
15.4   Existing Mortgages ............................................................................................. 64
15.5   Binding Effect ..................................................................................................... 64

16   ORIGINAL DECLARATION ........................................................................................... 65

<u>EXHIBITS:</u>

| | | |
|---|---|---|
| Exhibit A | - | Legal description of the Initial Parcel and Survey of Units on the Initial Parcel |
| Exhibit B | - | Percentage of Ownership |
| Exhibit C | - | Legal Description of Future Expansion Parcels |

CENTRAL\31166692.2

THIS AMENDED AND RESTATED DECLARATION OF CONDOMINIUM OWNERSHIP AND OF EASEMENTS, RESTRICTIONS, COVENANTS AND BY-LAWS FOR THE ENCLAVE AT GALEWOOD CROSSINGS MULTI-BUILDING CONDOMINIUM ASSOCIATION (F/K/A THE ENCLAVE AT GALEWOOD CROSSINGS LOT 6 CONDOMINIUM ASSOCIATION) (this "Declaration") is made and entered into as of the _____ day of December, 2008 by and among RSD GALEWOOD, LLC, an Illinois limited liability company (hereinafter referred to as the "Declarant" or the "Developer" as applicable), YVONNE V. HERRERA, an individual ("Herrera"), and ROSA VAZQUEZ, an individual ("Vazquez"; Herrera and Vazquez are sometimes hereinafter collectively called the "Existing Owners").

## W I T N E S S E T H:

WHEREAS, Declarant, as declarant and developer, caused that certain Declaration of Condominium Ownership and of Easements, Restrictions, Covenants and By-Laws for The Enclave at Galewood Crossings Lot 6 Condominium Association to be recorded in Office of the Cook County Recorder of Deeds on August 8, 2008 and Document No. 0822510009 (hereinafter called the "Original Declaration") against title to the parcel of real estate (hereinafter called the "Initial Parcel") situated in the City of Chicago, Cook County, Illinois and legally described on Exhibit A attached to the Original Declaration and on Exhibit A attached hereto and by this reference made a part hereof; and

WHEREAS, Declarant has heretofore caused to be conveyed to the Existing Owners all of the Units created by the Original Declaration and thus, the Existing Owners now hold legal title to all Units established under the Original Declaration; and

WHEREAS, Declarant and the Existing Owners desire and intend by this Declaration to amend, restate and replace the Original Declaration in its entirety; Declarant and the Existing Owners desire and intend by this Declaration that the Initial Parcel will continue to be subject to the provisions of the Condominium Property Act of the State of Illinois, as amended from time to time (hereinafter called the "Act"), Declarant desires and intends by this Declaration to have the right, but not the obligation, to submit from time to time one or more Future Expansion Parcels, as hereinafter defined, to the provisions of the Act and Declarant and the Existing Owners are further desirous of establishing, for their own respective benefits and that of all future owners, or occupants of the Property, as hereinafter defined, and each part thereof, certain easements, restrictions and rights in, over and upon the Property and certain mutually beneficial restrictions and obligations with respect to the use and maintenance thereof; and

WHEREAS, the name of the condominium to be created pursuant to this Declaration (the "Condominium") shall be "The Enclave at Galewood Crossings Multi-Building Condominium" (f/k/a The Enclave at Galewood Crossings Lot 6 Condominium Association); and

WHEREAS, the Declarant and the Existing Owners desire and intend that the several owners, mortgagees, occupants, and other persons acquiring any interest in the Property shall at all times enjoy the benefits of, and shall at all times hold their interests subject to, the rights,

easements, privileges, and restrictions hereinafter set forth, all of which are declared to be in furtherance of a plan to promote and protect the cooperative aspect of ownership and to facilitate the proper administration of the Property and are established for the purpose of enhancing and perfecting the value, desirability and attractiveness of the Property.

NOW, THEREFORE, the Declarant, as declarant and developer under the Original Declaration, and the Existing Owners, as the legal title holders of the Initial Parcel, and for the purposes above set forth, DECLARE AS FOLLOWS:

**ARTICLE 1**
**DEFINITIONS**

For the purpose of brevity and clarity, certain words and terms used in this Declaration are defined as follows:

**Additional Parcel.** Each Future Expansion Parcel actually submitted to the provisions of the Act pursuant to the provisions of Article 15.

**Association**. The Enclave at Galewood Crossings Multi-Building Condominium Association, f/k/a The Enclave at Galewood Crossings Lot 6 Condominium Association.

**Board**. The persons determined pursuant to Article 5 who are vested with the authority and responsibility of administering the Property.

**Building**. The freestanding structure located on a Parcel, forming a part of the Property and containing the Residential Units, as shown by the survey depicting the floors of such structure.

**By-Laws**. The provisions for the administration of the Property including, but not limited to, assessment, maintenance, use, occupancy, sale, leasing and alienation, all as hereinafter set forth, or as may be from time to time duly amended. Articles 5 and 6 shall constitute the By-Laws of the Association.

**Common Elements**. All portions of the Property except the Units, more specifically described in Section 3.1.

**Common Expenses**. The proposed or actual expenses affecting the Property, including reserves, if any, lawfully assessed by the Board, including, without limitation, the expenses of maintenance, repair, administration and operation of the Common Elements.

**Declarant**. RSD Galewood, LLC, an Illinois limited liability company, and its successors and assigns.

**Declaration**. This instrument by which the Property is submitted to the provisions of the Act, including such amendments, if any, to this instrument as may from time to time be adopted pursuant to its terms.

**Developer**. RSD Galewood, LLC, an Illinois limited liability company, and its successors and assigns.

**Existing Owners**. Herrera and Vazquez.

**Garage**. The freestanding structure located on a Parcel, forming a part of the Property and containing the Unit Parking Spaces, as shown on the Plat.

**Herrera**. Yvonne V. Herrera, an individual.

**"Initial Parcel"**. The tract of real estate described in the first Recital of this Declaration, originally submitted to the provisions of the Act pursuant to the Original Declaration and legally described on Exhibit A attached hereto.

**Limited Common Elements**. A portion of the Common Elements so designated in this Declaration or on the Plat, as hereinafter defined, as being reserved for the use of a certain Unit or Units to the exclusion of other Units. Any portion of the Common Elements which by the terms of this Declaration or by its nature or location is clearly intended to serve exclusively a certain Unit or Units (but less than all of the Units) or the owner or owners thereof shall be deemed a Limited Common Element.

**Majority of the Unit Owners**. Those Unit Owners, without regard to their number, who own more than fifty percent (50%) in the aggregate of the entire undivided ownership interest in the Common Elements. Any specified percentage of the Unit Owners shall mean those Unit Owners who, in the aggregate, own such specified percentage of the entire undivided ownership interest in the Common Elements.

**Master Association**. The association under the Master Declaration.

**Master Association Assessments**. The assessments owed by the Unit Owners to the Master Association pursuant to the Master Declaration.

**Master Declaration**. The Master Declaration of Covenants, Conditions, Restrictions and Easements for The Enclave at Galewood Crossings, as amended from time to time.

**NFR Letters**. Those certain No Further Remediation Letters issued by the Illinois Environmental Protection Agency and recorded against title to the Property (or against title to a portion of the Future Expansion Parcels) in the Office of the Recorder of Deeds of Cook County, Illinois as follows: (i) No Further Remediation Letter (Remediation Site #1) dated December 21, 2007 and recorded December 28, 2007 as Document No. 0736233089; (ii) No Further Remediation Letter (Remediation Site #2) dated December 20, 2007 and recorded December 28, 2007 as Document No. 0736233090; (iii) No Further Remediation Letter (Remediation Site #4) dated January 30, 2008 and recorded February 13, 2008 as Document No. 0804434152; (iv) No Further Remediation Letter (Remediation Site #8) dated February 22, 2008 and recorded February 27, 2008 as Document No. 0805834016; and (v) No Further Remediation Letter (Remediation Site #9) dated March 13, 2008 and recorded April 25, 2008 as Document No. 0811609000.

**Occupant**. Person or persons, other than a Unit Owner, in possession of a Residential Unit.

**Original Declaration**. The Declaration of Condominium Ownership and of Easements, Restrictions, Covenants and By-Laws for The Enclave at Galewood Crossings Lot 6 Condominium Association recorded in the Office of the Cook County Recorder of Deeds on August 8, 2008 as Document No. 0822510009.

**Parcel**. The Initial Parcel and each Future Expansion Parcel submitted to the provisions of the Act pursuant to Article 15 of this Declaration.

**Person**. A natural individual, corporation, partnership, limited liability company, trustee or other legal entity capable of holding title to real property.

**Plat**. The plat of survey of each Parcel and all of the Units in the Property submitted to the provisions of the Act, which Plat was originally attached as Exhibit A to the Original Declaration and an amended and restated version of which is attached hereto as Exhibit A and made a part hereof and recorded with the recording of this Declaration.

**Project**. That certain residential project located generally at 1840 North Laramie in the City of Chicago, Illinois; commonly known as The Enclave at Galewood Crossing and of which the Property is a part.

**Property**. All the land, property and space comprising a Parcel, all improvements and structures erected, constructed or contained therein or thereon including the Building, the Garage, and all easements, rights and appurtenances thereunto belonging thereto, and all fixtures and equipment intended for the mutual use, benefit or enjoyment of the Unit Owners, as hereinafter defined, submitted to the provisions of the Act. The Property shall also include each Future Expansion Parcel and all improvements and structures erected, constructed or contained therein or thereon, including each Garage and all easements, rights and appurtenances thereunto belonging, and all fixtures and equipment intended for the mutual use, benefit or enjoyment of the Unit Owners as may from time to time be submitted to the provisions of the Act in accordance with the provisions of this Declaration, but only upon such submission.

**Residential Unit**. A Unit designed and intended for a single-family dwelling, or such other uses permitted by this Declaration, as more specifically described in Article 2, but specifically excluding the Unit Parking Spaces.

**Sewer Covenant**. That certain Covenant dated March 1, 2007 and recorded 3/8/07 as document number 0706739002 in the Office of the Recorder of Deeds of Cook County, Illinois.

**Unit**. A part of the Property more specifically described hereafter in Article 2. Except as otherwise provided herein, the term "Unit" shall be deemed to include the Residential Units and the Unit Parking Spaces.

**Unit B Storage Space**. A part of the Property located in the basement of each Building, which is intended for storage and designated as a Limited Common Element appurtenant to the Residential Unit known as Unit B in such Building.

**Unit Owner**. The person or persons whose estates or interests, individually or collectively, aggregate fee simple absolute ownership of a Unit Ownership.

**Unit Ownership**. A part of the Property consisting of one Unit and its undivided interest in the Common Elements appurtenant thereto.

**Unit Parking Space**. A Unit designed and intended for the parking of a single automobile.

**Vazquez**. Rosa Vazquez, an individual.

**Voting Member**. One person with respect to each Unit Ownership who shall be entitled to vote at any meeting of the Unit Owners designated pursuant to Section 5.3.

## ARTICLE 2
## UNITS

2.1 **Description and Ownership**.

(a) All Units are delineated on the Plat and listed on Exhibit B.

(b) Each Unit consists of the space enclosed and bounded by the horizontal and vertical planes set forth in the delineation thereof on Exhibit A including, without limitation, any pipes, ducts, chutes, conduits, wires, and other utility, heating, cooling or ventilation systems or equipment to the extent and only to the extent serving only such Unit; and (notwithstanding anything to the contrary contained in this Declaration) excluding all structural components of the Building and the Garage, the term "structural components" being deemed to include all structural columns and pipes, wires, conduits, ducts, shafts, and public utility lines running through the Unit and forming a part of any system serving more than the Unit, or any components of communication or master antenna or cable television systems, if any, located in the Unit and serving more than the Unit, whether or not any such items shall be located in the floors, ceilings or perimeter or interior walls of the Unit. The legal description of each Unit shall consist of the identifying number or symbol of such Unit as shown on Exhibit A. Every deed, lease, mortgage or other instrument may legally describe a Unit by its identifying number or symbol as shown on Exhibit A, and every such description shall be deemed good and sufficient for all purposes.

(c) Except as provided by the Act or as provided elsewhere herein, no Unit Owner shall, by deed, plat, court decree or otherwise, subdivide or in any other manner cause such Unit Owner's Unit to be separated into any tracts or parcels different from the whole Unit as shown on Exhibit A.

(d)     To the extent such data is available to the Declarant at the time this Declaration is recorded, the Plat shall set forth the measurements, elevations, locations and other data, as required by the Act, with respect to (1) the Initial Parcel and its exterior boundaries; (2) the Building thereon and each floor thereof; (3) the Garage thereon; and (4) each Unit in said Building and Garage and such Unit's horizontal and vertical dimensions. However, the Declarant hereby reserves unto itself and the Developer, the right, from time to time, as further data becomes available, to amend the Plat so as to set forth the measurements, elevations, locations and other data required by the Act, with respect to the Building, the Garage and the Units now or hereafter constructed on the Initial Parcel, including the Building, the Garage and the Units on any Future Expansion Parcel submitted to the Act pursuant to the provisions of Article 15 of this Declaration.

In furtherance of the foregoing, a power coupled with an interest is hereby granted to the Declarant, acting by or through its duly authorized officers, its successors, or its designee, and to the Developer, acting by or through its duly authorized officers, its successors, or its designee, and their respective agents, and each of them singly, as attorney-in-fact, to amend the Plat, as described above, without notice to any Unit Owner. Each deed, mortgage or other instrument with respect to a Unit, and the acceptance thereof, shall be deemed a grant of such power to each of these attorneys-in-fact, and acknowledgment of and consent to such power, and shall be deemed to reserve to each of these attorneys-in-fact the power to amend the Plat, as described above.

2.2     **Certain Structures Not Constituting Part of a Unit**. Except as a tenant in common with all other Unit Owners, no Unit Owner shall own any structural components of any Building or any Garage, including structural columns or pipes, wires, conduits, ducts, shafts, or public utility lines or any components of communication systems, if any, running through that Unit Owner's Unit and forming a part of any system serving more than that Unit Owner's Unit, whether or not any such items shall be located in the floors, ceilings or perimeter or interior walls of the Unit.

2.3     **Real Estate Taxes**. It is understood that real estate taxes are to be separately taxed to each Unit Owner for that Unit Owner's Unit and its corresponding percentage of ownership in the Common Elements as provided in the Act; provided, however, until such time as separate real estate tax bills are issued with respect to each Unit, the real estate taxes imposed on the Property or imposed on those portions of the Property for which separate real estate tax bills have not or will not be issued shall be included in the Common Expenses assessed pursuant to this Declaration only against those Units for which a separate real estate tax bill has not yet been issued, each such Unit's share of the total "undivided" real estate taxes to be calculated based on the ratio that such Unit's percentage ownership interest in the Common Elements bears to the total aggregate percentage ownership interests in the Common Elements of all Units for which there is no separate real estate tax bill.

2.4     **Ownership of Unit Parking Space**. No Unit Parking Space shall be sold, given, devised or otherwise transferred to any party other than a Unit Owner of a Residential Unit located on the same Parcel as such Unit Parking Space, nor shall any Unit Parking Space be leased to any party other than a Unit Owner or Occupant.

## ARTICLE 3
## COMMON ELEMENTS

3.1    **Description**. The Common Elements shall consist of all portions of the Property, except the Units, and including the Limited Common Elements, unless otherwise expressly specified herein. The Common Elements include, without limitation and if applicable, any of the following items located at the Property: the exterior walls, interior walls separating Units or Unit(s) and Common Elements, roofs, entrances and exits, entry stairways, lobby areas, hallways and corridors, decks or patios identified on the Plat as Limited Common Elements, the portions of a Garage other than the Unit Parking Spaces therein, the Unit B Storage Space, mechanical equipment and mechanical equipment areas, mail boxes, master television or cable antenna system (whether leased or owned), if any, fire escapes, pipes, ducts, shafts, electrical wiring and conduits (except pipes, ducts, shafts, electrical wiring and conduits situated entirely within a Unit and serving only such Unit), central heating, cooling and ventilating systems servicing the Common Elements (but excluding those individual heating, cooling and ventilation systems or equipment situated entirely within a Unit and serving only such Unit), public utility lines, structural parts of a Building and of a Garage, sidewalks and walkways, driveway areas, landscaped and grass areas and all other portions of the Property except the individual Units. Structural columns located within the boundaries of a Unit shall be part of the Common Elements. Any references to "Common Elements" appearing on the Plat (except references to Limited Common Elements, Limited Common Element decks or patios and the Unit B Storage Space) shall be deemed solely for purposes of general information and shall not be limiting in any way, nor shall any such reference define the Common Elements in any way.

3.2    **Ownership of Common Elements**. Each Unit Owner shall be entitled to the percentage of ownership in the Common Elements allocated to the respective Unit owned by such Unit Owner, as set forth in Exhibit B attached hereto. The percentages of ownership interests set forth in Exhibit B have been computed and determined in accordance with the Act, and shall remain constant and except as specifically permitted under the Act or this Declaration (including in connection with the submission of any Future Expansion Parcel to the Act pursuant to Article 15), shall not be changed, without unanimous written consent of all Unit Owners and all First Mortgagees (as hereinafter defined in Section 11.1). The ownership interest in the Common Elements shall be an undivided interest, and the Common Elements shall be owned by the Unit Owners as tenants in common in accordance with their respective percentages of ownership. The ownership of each Unit shall not be conveyed separate from the percentage of ownership in the Common Elements corresponding to such Unit. The undivided percentage of ownership in the Common Elements corresponding to any Unit shall always be deemed conveyed or encumbered with any conveyance or encumbrance of that Unit, even though the legal description in the instrument conveying or encumbering such Unit may refer only to that Unit.

3.3    **Limited Common Elements**. The Limited Common Elements are such parts of the Common Elements serving exclusively a single Unit or adjoining Units as an inseparable appurtenance thereto, as designated as such in this Declaration, included in the Plat, or which by the nature or location thereof, or by the terms of this Declaration, are clearly intended to be reserved for or for the use of one or more Units to the exclusion of other Units. The Limited

Common Elements appertaining to, or designated or reserved for or for the use of, or serving any Unit (alone or in conjunction with other Units) are hereinafter from time to time referred to as the Limited Common Elements of such Unit. The Limited Common Elements shall include, but shall not be limited to, the following: (a) the interior surface of the perimeter walls, ceilings and floors which define the boundary planes of a Unit; (b) perimeter doors and windows, including skylights, if any, and window wells which serve exclusively a single Unit; (c) any system or component part thereof (including, without limitation, furnaces, fittings, housings, ducts, shafts, electrical wiring and conduits) which serves a Unit exclusively, to the extent that such system or component part is located outside the boundaries of a Unit; (d) decks or patios identified on the Plat as Limited Common Elements serving one or more Residential Units exclusively; (e) ceilings and floors separating different levels in a multi-level Residential Unit, to the extent that such ceilings and floors contain either (i) any pipes, ducts, chutes, conduits, electrical wiring, and other utility or ventilation systems or equipment (except if such pipes, ducts, chutes, conduits, electrical wiring, and other utility or ventilation systems or equipment serve only such multi-level Residential Unit, in which case such ceilings and floors shall be part of such multi-level Residential Unit), or (ii) any structural component contributing, in any way, to the structural support of any Residential Unit in a Building other than a multi-level Residential Unit; (f) any air conditioner condenser unit and related facilities located on the ground level outside a Building serving exclusively a single Residential Unit in that Building; (g) the Unit B Storage Space in each Building; and (h) any entry stairway or landing serving exclusively a single Residential Unit.

    3.4   **Use of Limited Common Elements**. Each Unit Owner and Occupant shall have the right to (a) the exclusive use and possession of the Limited Common Elements serving exclusively the Unit of such Unit Owner or Occupant, which right shall be appurtenant to and shall run with title to such Unit, and shall not be separated from such Unit, and (b) the use and possession of the Limited Common Elements serving the Unit of such Unit Owner or Occupant in common with one or more (but not all) other Units, which use and possession shall be to the exclusion of all other persons except the Unit Owner or Occupant of any such other Unit to which such Limited Common Elements shall respectively appertain. The use of Limited Common Elements may be transferred between Unit Owners at their expense in accordance with the Act or as expressly provided in this Declaration.

**ARTICLE 4**
**GENERAL PROVISIONS AS**
**TO UNITS AND COMMON ELEMENTS**

    4.1   **Original Declaration; Submission of Property to the Act**. Inasmuch as the Original Declaration is hereby amended, restated and replaced in its entirety by this Declaration, the Property continues to be submitted to the provisions of the Condominium Property Act of the State of Illinois.

    4.2   **No Severance of Ownership.** No Unit Owner shall execute any deed, mortgage, lease or other instrument affecting title to such Unit Owner's Unit Ownership without including therein both such Unit Owner's interest in the Unit and its corresponding percentage of ownership in the Common Elements, it being the intention to prevent any severance of such

combined ownership. Any such deed, mortgage, lease or other instrument purporting to affect the one without including also the other shall be deemed and taken to include the interest so omitted even though the latter is not expressly mentioned or described therein.

4.3    **Easements**.

(a)    **Encroachments**.  In the event that (i) by reason of the construction, repair, settlement or shifting of any Building, Garage, or other improvement, any part of the Common Elements encroaches or shall hereafter encroach upon any part of any Unit, or any part of any Unit encroaches or shall hereafter encroach upon any part of the Common Elements, or any other Unit; or (ii) by reason of the design or construction of any Unit, it shall be necessary or advantageous to  the Unit Owner of that Unit to use or occupy any portion of the Common Elements for any reasonable use appurtenant to such Unit, which will not unreasonably interfere with the use or enjoyment of the Common Elements by any other Unit Owner; or (iii) by reason of the design or construction of utility and ventilation systems, any mains, pipes, ducts or conduits serving more than one Unit encroach or shall hereafter encroach upon any part of any Unit; then in any such case, valid easements for maintenance of such encroachment and for such use of the Common Elements are hereby established and shall exist for the benefit of such Unit, or the Common Elements, as the case may be, so long as such reason for use exists and as all or any part of the applicable Building and/or Garage, as the case may be, shall remain standing; provided, however, that in no event shall a valid easement for any encroachment or use of the Common Elements be created in favor of any Unit Owner if such encroachment or use is detrimental to or interferes with the reasonable use and enjoyment of the Property by any other Unit Owner or has been created by the Unit Owner or such Unit Owner's agent through intentional, willful or negligent conduct.  In addition, the easements for the maintenance of encroachments and use of the Common Elements hereby created are subject to the requirement that any construction or repair undertaken in connection therewith must be in substantial accord with the description of the boundaries of the affected Units and/or Common Elements, as applicable, that appear in this Declaration.

(b)    **Easements for Utilities and Commercial Entertainment**.  AT&T, ComEd, Peoples Gas, Comcast and all other suppliers of utilities and quasi-utilities serving the Property and any persons providing cable television or other similar entertainment to any Unit Owners or to the Property, are hereby granted the right to install, lay, construct, operate, maintain, renew, repair and/or replace, conduits, cables, pipes and wires and other equipment into, over, under, along and on any portion of the Common Elements for the purpose of providing the Property with utility and entertainment services, together with the reasonable right of ingress to and egress from the Property for such purpose; and the Declarant, Board or Association may hereafter grant other or additional easements for utility or entertainment purposes and for other purposes including such easements as the Developer may from time to time request including, but not limited to, such easements as may be required to construct, keep and/or maintain improvements upon the Common Elements for the benefit of the Property over, under, along and on any portion of the Common Elements, and each Unit Owner hereby

grants the Board or Association an irrevocable power of attorney to execute, acknowledge and record for and in the name of such Unit Owner, such instruments as may be necessary to effectuate the foregoing (provided that with respect to all easements granted hereby or pursuant hereto, no Unit Owner shall be deprived of, or be subjected to material interference with, the use of such Unit Owner's Unit or any Limited Common Element serving such Unit Owner's Unit, other than reasonably and temporarily). Each mortgagee of a Unit shall be deemed to consent to and be subordinate to any easement hereafter granted and also grants such power of attorney to the Board or Association to effectuate the foregoing. Easements are also hereby declared and granted to the Board and Association and to the suppliers of utilities and cable television and entertainment lines described above in this Section 4.3(b) to install, lay, operate, maintain, repair and/or replace any pipes, wire, ducts, conduits, public utility lines, entertainment lines, components of the communications systems, if any, or structural components, which may run through the walls of a Unit and which constitute or will constitute Common Elements, whether or not such walls lie in whole or in part within the Unit boundaries.

The Declarant hereby reserves to itself and the Association, and their respective successors and assigns, the right, without notice to, or the consent of, any Unit Owner or mortgagee of a Unit Ownership: (i) to record a supplement to the Plat showing the location of any or all of such utility or commercial entertainment conduits, cables, pipes, electrical wiring, transformers and switching apparatus and other equipment "as built", and (ii) to record, from time to time, additional supplements, showing additions, modifications and deletions to any or all of such conduits, cables, pipes, electrical wiring, transformers and switching apparatus and other equipment. Once the location of the easement to any such utility or other entity is shown by any supplement or additional supplement to the Plat as aforesaid, the easement granted by this Section 4.3(b) to such utility or other entity shall be limited to the area or areas located within ten feet on either side of the equipment of such utility or other entity as shown on such supplement or additional supplement and such other area designated in the supplement by the Declarant or Association. A power coupled with an interest is hereby granted to the Declarant and the Association, acting by and through their respective duly authorized officers, their respective successors, assigns, agents and designees, and each of them singly without the other's concurrence, as attorney-in-fact to do or cause the foregoing to be done. The acceptance of each deed, mortgage, trust deed or other instrument with respect to a Unit Ownership shall be deemed a grant of such power to each of such attorneys-in-fact, an acknowledgment of a consent to such power, and a reservation to each of such attorneys-in-fact of the power to record any and all such supplements.

(c)    **Blanket Easement in Favor of Developer and Other Parties**. The right of the Unit Owners to use and possess the Common Elements as set forth in Section 4.4(a) shall be subject to a blanket easement (the **"Developer Easement"**) over the Common Elements in favor of the Declarant and the Developer, and their respective representatives, agents, associates, employees, contractors, subcontractors, tenants, successors and assigns, for the purpose of (i) access and ingress to and egress from the Property or any part thereof, (ii) construction, installation, repair, replacement and restoration of utilities, buildings, landscaping and any other improvements on any Parcel

or any part thereof, including the right to restrict and regulate access to the Common Elements for the purposes of completing construction of each Building, each Garage, the Common Elements or the Units in each Building or in each Garage, and (iii) the installation and maintenance of signs advertising the residences on the Parcels or elsewhere in the Project, and signs directing potential purchasers to the sales office and models erected in connection with such residences and for such purposes as described in Section 7.1(r). The foregoing Developer Easement shall continue until completion by or at the direction of the Developer and/or the Declarant of all construction, service and warranty related activities in all Buildings and Garages located or to be located on the Parcels and on all other portions of the Property (including any Future Expansion Parcels to be submitted to the Act pursuant to the provisions of Article 15 of this Declaration), and neither the Declarant nor the Developer holds legal title to, or the beneficial interest in any trust holding legal title to, any Unit Ownerships, at which time such Developer Easement shall cease and be of no further force and effect without the necessity of any further action.

(d) **Easement in Favor of Association**. A blanket easement over the Property is hereby granted in favor of the Association for the purpose of exercising its rights and performing its duties under this Declaration. The authorized representatives of the Association or the Board, or of the management agent for the Property, and any suppliers of water or utility services to the Property, shall be entitled to reasonable access to, over and through the individual Units as may be required to perform any emergency repairs or otherwise in connection with the operation, maintenance, repairs, or replacements of or to the Common Elements or any equipment, facilities or fixtures affecting or serving other Units or the Common Elements, or to service and take readings of any utility meters located within a Unit.

(e) **Easements to Run with Land**. All easements and rights described in this Declaration are easements appurtenant running with the land and, so long as the Property is subject to the provisions of this Declaration, shall remain in full force and effect (except where early termination is otherwise provided in this Declaration) and shall inure to the benefit of and be binding on Declarant, its successors and assigns, and any Unit Owner, purchaser, mortgagee and other person having an interest in the Property, or any part or portion thereof. Reference in the respective deeds of conveyance, or in any mortgage or trust deed or other evidence of obligation, to the easements and rights described in this Article, or described in any other part of this Declaration, shall be sufficient to create and reserve such easements and rights to respective grantees, mortgagees and trustees of such Unit Ownerships as fully and completely as though such easements and rights were recited fully and set forth in their entirety in such documents. However, the aforementioned easements and rights shall be deemed to be created and reserved whether or not reference to such easements or rights is mentioned in the deeds or other instruments.

(f) **Easements Under Master Declaration**. Easements contained in the Master Declaration are hereby incorporated into this Declaration by reference as though set forth in their entirety herein. The easements contained in the Master Declaration in

some cases burden the Property and in some cases benefit the Property. All easements and rights described in the Master Declaration are easements appurtenant running with the land and, so long as the Property is subject to the provisions of the Master Declaration, shall remain in full force and effect and shall inure to the benefit of and be binding on Declarant, its successors and assigns, and any Unit Owner, purchaser, mortgagee and other person having an interest in the Property, or any part or portion thereof.

(g)     **City Easement.** An irrevocable license and non-exclusive easement is hereby granted to the City of Chicago, Illinois (the "**City**") and, as applicable, its police, fire, water, public works, engineering, development, health and other authorized officials, employees and vehicles, to go upon the Property, including the Common Elements, at any time and from time to time for the purpose of performance of official duties and emergency services and for the purpose of enforcing this Declaration and all applicable ordinances, rules and regulations, and the statutes of the City of Chicago, County of Cook, State of Illinois and the United States and any easements and/or rights granted to the City hereunder in the Sewer Covenant or on the Plat of Subdivision. In addition to those rights granted under the Sewer Covenant, duly designated officials and employees of the City are hereby also granted a non-exclusive easement to enter upon, on and over the Property, including the Common Elements, for the purposes of maintaining and repairing, except as otherwise provided hereunder, stormwater drainage and retention areas, storm and sanitary sewers, water mains, and any other utility or public service located or which may be located in the Common Elements or elsewhere on the Property and to correct or eliminate nuisances or violations resulting from the failure to exercise maintenance responsibilities by Declarant, the Master Association or its successors and assigns, any Unit Owner or the Association. Said easement rights shall be exercised only to the extent and for such period of time as is required to accomplish said maintenance or repair. Except in the event of emergency situations, the City shall serve written notice upon the Association setting forth the manner in which Declarant, the Master Association, a Unit Owner or the Association has failed to comply with its obligations under this Declaration or the Plat of Subdivision. Said notice shall include a demand that such deficiency be cured within ten (10) days from the date such notice is received. If such deficiency has not been cured within said ten (10) days or any extension thereof granted by the City, the City may (but shall not be obligated to) exercise its easement rights under this Declaration by entering the Common Elements and the rest of the Property and performing such maintenance or repair that, in the sole and absolute opinion of the City, Declarant, the Master Association, a Unit Owner or the Association has failed to perform on all or any portion of the Common Elements or elsewhere on the Property. The Association shall reimburse the City for all expenses, including all administrative costs and attorneys' fees, incurred by it in performing such maintenance or repair that, in the City's sole and absolute opinion, Declarant, the Master Association, a Unit Owner or the Association has failed to perform on all or any portion of the Common Elements or elsewhere on the Property. If the Association has not reimbursed the City in full for all such expenses incurred within thirty (30) days after receipt of a bill detailing such expenses, then the portion of the cost of such maintenance or repair not so reimbursed shall be assessed in equal shares against all of the Units, and

shall become a lien upon such Units, which lien shall be in all respects subject and subordinate and junior to any prior mortgage recorded against all or any portion of such Units. Such lien may be enforced by all methods generally available for the enforcement of liens, including all methods available to the Association for enforcement of its lien rights hereunder, as well as by foreclosure through an action brought in a manner similar to the type of action instituted to foreclose the lien of a mortgage or deed of trust. The City shall be under no obligation to exercise the rights herein granted except as it shall determine to be in its best interest. No failure to exercise any right herein granted to the City shall be construed as a waiver of that or any other rights.

### 4.4    Use of the Common Elements.

(a)    **General**. Subject to the provisions of this Declaration, each Unit Owner shall have the nonexclusive right to use the Common Elements (except the Limited Common Elements and portions of the Property subject to leases, easements or licenses made by the Board or assigned to the Association) in common with the other Unit Owners, as may be required for the purpose of ingress and egress to, and use, occupancy and enjoyment of, the respective Unit Ownership owned by such Unit Owner, and such other incidental uses as are permitted by this Declaration. Use of Limited Common Elements shall be governed by Section 3.4 of this Declaration. Such rights to use and possess the Common Elements, including the Limited Common Elements, shall be subject to and be governed by the provisions of the Act, this Declaration, and rules and regulations of the Association. In addition, the Association shall have the authority to lease, grant licenses or concessions, or grant easements with respect to parts of the Common Elements, subject to the provisions of this Declaration and the By-Laws. All income derived by the Association from leases, licenses, concessions or other sources shall be held and used for the benefit of the members of the Association, pursuant to such rules, resolutions or regulations as the Board may adopt or prescribe.

(b)    **Guest Privileges**. The aforedescribed rights shall extend to the Unit Owner and Occupants and members of the immediate family, guests, visitors, agents, servants, invitees, customers and licensees of the Unit Owner, subject to reasonable rules and regulations adopted or prescribed by the Association with respect thereto.

(c)    **Disclaimer of Bailee Liability**. Notwithstanding anything to the contrary contained in this Declaration, neither the Board, the Association, any Unit Owner, the Declarant, nor the Developer nor any of their respective members, managers, officers, directors, agents, employees or representatives shall be considered a bailee of any personal property stored in the Common Elements and shall not be responsible for the security of such personal property or for any loss or damage thereto, whether or not due to negligence.

### 4.5    Maintenance, Repairs and Replacements.

(a)    **By the Association**. The Association, at its expense, shall be responsible for the maintenance, repair, and replacement of those portions, if any, of each Unit which

contribute to the support of the Building or Garage in which such Unit is located, but excluding, however, all windows and window frames, all exterior Unit doors and the interior surfaces of walls, ceilings and floors. In addition, the Association shall maintain, repair, and replace all pipes, wires, conduits, ducts, shafts, and other facilities for the furnishing of utility services which may be located within the Unit boundaries and forming part of any system servicing more than one Unit, as specified in Section 2.2, exclusive of any portions of the foregoing which may be located at or beyond the wall outlets, or which may be the responsibility of an individual Unit Owner under Section 4.5(b), or under any other provision of this Declaration. Maintenance, repairs, and replacements of the Common Elements (but not Limited Common Elements except as provided in Section 4.5(b)(iii)), including the portions of the Garage other than the Unit Parking Spaces and all garage doors, shall be furnished by the Association acting by and through the Board as part of the Common Expenses, subject to the By-Laws or rules and regulations of the Association. Unless the Board determines otherwise (as it relates to snow and ice removal), the Association also shall be responsible for the snow and ice removal from, and general maintenance and repair of, the service walks serving each Building.

(b) **By the Unit Owner.** Except as otherwise provided in either subsection (a) or (c) of this Section 4.5, each Unit Owner shall furnish and be responsible for, at such Unit Owner's own expense:

(i) All of the maintenance, repairs and replacements within such Unit Owner's own Unit, including without limitation, (A) all windows and window frames appurtenant thereto, (B) all interior and exterior doors appurtenant thereto, (C) all screens, (D) all internal installations of such Unit such as refrigerators, ranges, and other kitchen appliances, fireplaces, lighting fixtures and other electrical fixtures and plumbing, (E) any portion of any other utility service facilities located within the Unit and (F) all pipes, wires, conduits, shafts, and other facilities for the furnishing of utility services solely to such Unit Owner's Unit and to no other Unit.

(ii) All of the decorating within such Unit Owner's own Unit (initially and thereafter from time to time), including painting, wall papering, washing, cleaning, paneling, floor covering, draperies, window shades, curtains, lamps and other furnishings and interior decorating. Each Unit Owner shall be entitled to the exclusive use of the interior surfaces of the common walls and the interior surfaces of the vertical perimeter walls, floors and ceiling of that Unit Owner's Unit, and such Unit Owner shall maintain such portions in good condition at such Unit Owner's sole expense as may be required from time to time. The interior surfaces of all windows forming part of a perimeter wall of a Unit shall be cleaned or washed by and at the expense of each respective Unit Owner. The use of and the covering of the interior surfaces of such windows, whether by draperies, shades, or other items visible on the exterior of a Building, shall be subject to such rules and regulations of the Board as may be imposed from time to time, which shall, at least, provide for notice to the Board or the management

company prior to any such installation and the approval of the Board, or the management company, acting in accordance with the Board's direction, of the method of installation prior to any such installation.

(iii)     All of the maintenance, repair, and replacements of the Limited Common Elements benefitting that Unit Owner's Unit, in whole or in part (including, without limitation, the air conditioner condenser units and related facilities serving exclusively such Unit Owner's Unit and the deck or patio serving such Unit), except for maintenance, repair and replacements of the Limited Common Elements that are part of a Garage which shall be performed by the Association, and except to the extent as otherwise directed by the Board or as is otherwise provided in this Declaration.  In addition, each Unit Owner shall be individually responsible for the repair, maintenance and replacement of all door and window locks and hardware with respect to which each Unit Owner is entitled to the exclusive use.  At the discretion of the Board, the Board may perform, or cause to be performed, such maintenance, repairs, and replacements of those Limited Common Elements for which one or more Unit Owners has such responsibility under the terms of this Declaration and the cost thereof shall be assessed in whole or in part to the Unit Owner(s) benefitted thereby, and further, at the discretion of the Board, the Board may direct such Unit Owners, in the name and for the account of such Unit Owners, to arrange for such maintenance, repairs, and replacements, to pay the cost thereof with the funds of the Unit Owner, and to procure and deliver to the Board such lien waivers and contractor's or subcontractor's sworn statements as may be required to protect the Property from all mechanics' or materialmen's lien claims that may arise therefrom.

(c)     **Insurance Proceeds**.  In the event that any repair or replacement to the Common Elements (including the Limited Common Elements) is made necessary by reason of any act or occurrence for which insurance is maintained by the Board pursuant to Section 5.8 and for which insurance proceeds are available as provided in Section 8.1, the Association, at its expense to the extent of such proceeds, and subject to Section 4.6, shall be responsible for the repair or replacement of such Common Elements.

(d)     **Nature of Obligation**.  Nothing contained in this Declaration shall be construed to impose a contractual liability upon the Association for maintenance, repair and replacement of the Common Elements or the Units or any portion or parts thereof, but the Association's liability shall be limited to damages resulting from negligence.  The respective obligations of the Association and Unit Owners set forth in this Declaration shall not be limited, discharged or postponed by reason of the fact that any such maintenance, repair or replacement is required to cure a latent or patent defect in material or workmanship in the construction of any Building or any Garage, nor because they may become entitled to proceeds under policies of insurance.  In addition, and notwithstanding anything to the contrary contained in this Declaration, no Unit Owner shall have a claim against the Board or the Association (or against the Declarant or Developer) for any work ordinarily the responsibility of the Board or the Association, but

which the Unit Owner has performed or paid for, unless such an arrangement shall have been agreed to in advance by the Board, the Association or the Declarant.

4.6    **Negligence of Unit Owner**.  If, due to the willful misconduct or negligent act or omission of a Unit Owner, or of a member of such Unit Owner's family or of a household pet or a guest or other authorized occupant or visitor of such Unit Owner, damage shall be caused to the Common Elements or to a Unit owned by others, or maintenance, repairs or replacements shall be required which would otherwise be charged as a Common Expense, then such Unit Owner shall pay for such damage or such maintenance, repairs and replacements as may be determined by the Board.

4.7    **Joint Facilities**.  To the extent that equipment, facilities and fixtures within any Unit or Units shall be connected to similar equipment, facilities or fixtures affecting or serving other Units or the Common Elements, then the use thereof by the individual Unit Owner shall be in all respects reasonable as it affects the other Unit Owners.

4.8    **Additions, Alterations or Improvements**.

(a)    The Board may authorize and charge as a Common Expense (or in the case of Limited Common Elements may charge the Unit Owners benefitted thereby) the cost of the additions, alterations, or improvements to the Common Elements.  The cost of any such work to the Common Elements may be paid out of a special assessment.

(b)    Except as otherwise provided in Section 7.1(a), no additions, alterations or improvements shall be made by a Unit Owner to any part of the Common Elements and no additions, alterations or improvements shall be made by a Unit Owner to such Unit Owner's Unit where such work alters a party wall or load bearing wall, perimeter doors or windows or otherwise affects the structure of Common Elements or increases the cost of insurance required to be carried by the Board hereunder without the prior written consent of the Board, which may be withheld by the Board in its sole and absolute discretion. Any addition, alteration or improvement of a Unit by the Unit Owner which shall affect the structure of the Unit or the Common Elements shall, further, conform with structural or engineering drawings prepared or reviewed and approved by an architectural or engineering firm selected by the Developer or the Board.  The cost of such drawings or review and approval shall be paid by the Unit Owner.  The Board may (but shall not be required to) condition its consent to the making of an addition, alteration or improvement by a Unit Owner under this Section 4.8(b) upon the Unit Owner's agreement either (i) to be solely responsible for the maintenance of such addition, alteration or improvement, subject to such standards as the Board may from time to time set, or (ii) to pay to the Association from time to time the additional costs of maintenance or insurance as a result of the addition, alteration or improvement.  If an addition, alteration or improvement is made by a Unit Owner without the prior written consent of the Board, then the Board may, in its discretion, take any of the following actions, which actions shall not be exclusive of the remedies available to the Board under Section 10.2:

(x)     Require the Unit Owner to remove the addition, alteration or improvement and restore the Property to its original condition, all at the Unit Owner's expense; or

(y)     If the Unit Owner refuses or fails to properly perform the work required under (1), the Board may cause such work to be done and may charge the Unit Owner for the cost thereof as determined by the Board; or

(z)     Ratify the action taken by the Unit Owner, and the Board may (but shall not be required to) condition such ratification upon the same conditions which it may impose upon the giving of its prior consent under this Section.

The provisions of this subsection 4.8(b) shall not apply to the Declarant or the Developer.

(c)     The decks and patios located adjacent to and serving exclusively the Units within the Condominium are expressly declared Limited Common Elements, as shown on the Plat, reserved for the exclusive use of the Unit lying directly adjacent to such deck or patio. Each Unit Owner shall be responsible for maintaining, repairing and replacing his or her deck or patio. If any Unit Owner fails to so maintain such deck or patio in a manner satisfactory to the Board, the Board, through its agents and employees, is hereby granted the right to enter upon such Residential Unit and deck or patio and make such reasonable repairs, maintenance and replacements to the deck or patio as may be necessary, and the Board may charge the Unit Owner for the cost thereof as determined by the Board. A Unit Owner shall not alter or improve his or her deck or patio without complying with Section 4.8(b) above.

4.9     **Street and Utilities Dedication**.  At a meeting called for such purpose, two-thirds (2/3) or more of the Unit Owners may elect to dedicate a portion of the Common Elements to a public body for use as, or in connection with, a street or utility.

4.10     **Garage**.  Each Garage on a Parcel contains two (2) Unit Parking Spaces. The Declarant sold the two (2) Unit Parking Spaces located on the Initial Parcel to the Existing Owners. The Declarant (or Developer) intends to convey to each purchaser of a Residential Unit on an Additional Parcel in connection with the initial sale of each such Residential Unit by Declarant (or Developer) one (1) of the two (2) Unit Parking Spaces located in the Garage on that Additional Parcel. Further, the Declarant (or Developer), the Board or the Association may prescribe such rules and regulations with respect to each Garage as it may deem fit, all subject to the terms hereof and in compliance with the Act. Subject to compliance with the terms and conditions established for use of a Unit Parking Space, the Unit Owner of each Unit Parking Space shall have the right to use that Unit Parking Space for the parking of a single operable passenger vehicle or motorcycle. The Unit Parking Spaces shall not be used to park any vehicle other than the foregoing, nor for any other purpose, including, without limitation, any repair work on, or exterior cleaning of, such vehicle.

4.11     **Unit B Storage Space**.  The Unit B Storage Space in a particular Building is a Limited Common Element appurtenant to, and serving exclusively the Residential Unit in that

Building known as Unit B. The Declarant, the Board or the Association may prescribe such rules and regulations with respect to the use of the Unit B Storage Space as it may deem fit. Notwithstanding anything to the contrary contained in this Declaration, only the Unit Owner of the Residential Unit in a Building known as Unit B may purchase or own the Unit B Storage Space in that Building.

## ARTICLE 5
## ADMINISTRATION AND BY-LAWS

5.1 **Administration of Property**. The direction and administration of the Property shall be vested in the Board of Directors (herein sometimes referred to as the "**Board**"), which shall consist of three (3) persons who shall be elected in the manner hereinafter set forth; provided, however, that, irrespective of anything else contained in this Declaration, for a period commencing on the date this Declaration is executed and ending upon the qualification of the directors elected at the initial meeting of Unit Owners, the Declarant or Developer shall have the right to designate and select the persons who shall serve as members of the Board or to exercise the powers of the Board as provided in the Act. Except for directors so designated by the Declarant or Developer, each member of the Board shall be one of the Unit Owners; provided, however, that in the event a Unit Owner is a corporation, limited liability company, partnership, trust or other legal entity other than a natural person or persons, then any designated agent of such corporation, partnership, limited liability company, or other legal entity, or beneficiary of such trust, shall be eligible to serve as a member of the Board. If a Unit Owner owns more than one Unit Ownership and is a corporation, partnership, limited liability company, trust or other legal entity, other than a natural person, then any number of agents or beneficiaries of such Unit Owner may be directors, provided that the number of such Unit Owner's agents or beneficiaries who become directors shall not exceed the number of Unit Ownerships owned by such Unit Owner. If a director fails to meet such qualifications during his or her term, he or she shall thereupon cease to be a director, and his or her place on the Board shall be deemed vacant.

5.2 **Association**. In connection with the Original Declaration and the sale of the Units located on the Initial Parcel, the Association was formed as a not for profit corporation under the General Not for Profit Corporation Act of 1986 of the State of Illinois and for the purposes and having the powers prescribed in the Act, and having the name "THE ENCLAVE AT GALEWOOD CROSSINGS LOT 6 CONDOMINIUM ASSOCIATION", which name has now been or will be changed to "THE ENCLAVE AT GALEWOOD CROSSINGS MULTI-BUILDING CONDOMINIUM ASSOCIATION". The Association shall be the governing body for all of the Unit Owners for the maintenance, repair, replacement, administration and operation of the Property. The Board shall be deemed to be the "Board of Managers" for the Unit Owners referred to in the Act. The Association shall not be deemed to be conducting a business of any kind, and all funds received by the Association shall be held and applied by it for the use and benefit of Unit Owners in accordance with the provisions contained herein. Each Unit Owner shall be a member of the Association so long as he or she shall be a Unit Owner, and such membership shall automatically terminate when he or she ceases to be a Unit Owner, and upon the transfer of his or her ownership interest the transferee thereof shall likewise succeed to such membership in the Association. The Association shall have one class of membership.

5.3     **Voting Rights**.

(a)     There shall be one Voting Member for each Unit Ownership. Such Voting Member may be the Unit Owner or one of the group composed of all the owners of a Unit Ownership, or a person designated by such Unit Owner or Unit Owners or the duly authorized attorney-in-fact of such Unit Owner or Unit Owners to act as proxy on his, her or their behalf and who must be a Unit Owner. Such designation (i) shall be made in writing to the Board, (ii) shall be revocable at any time by actual notice to the Board of the death or judicially declared incompetence of any designator, or by written notice to the Board by the Unit Owner or such Unit Owner's duly authorized attorney-in-fact, (iii) shall bear the date of its execution and (iv) shall be invalid after eleven (11) months from date of execution unless otherwise provided in such designation. Any or all such Unit Owners may be present at any meeting and, furthermore, may vote or take any other action as a Voting Member to the extent provided in Section 5.3(b). The person(s) designated by the Declarant with respect to any Unit Ownership owned by the Declarant shall also have the right to vote at any meetings of the Board for so long as the Declarant shall retain the right to so designate a Board member. If a Unit Owner is a trust, then the voting rights of such Unit Owner may be exercised by a beneficiary of such trust, and if a Unit Owner or such a beneficiary is a corporation, limited liability company or partnership, then the voting rights of such Unit Owner or beneficiary may be exercised by an officer, member, manager, partner or employee of such Unit Owner or beneficiary. The total number of votes of all Voting Members shall be one hundred (100), and each Unit Owner or group of Unit Owners shall be entitled to the number of votes equal to the total of the percentage of ownership in the Common Elements applicable to the Unit Ownership of such Unit Owner or group of Unit Owners as set forth in Exhibit B; provided that when thirty (30%) percent or fewer of the Units, by number, possess over fifty (50%) percent in the aggregate of the votes in the Association, any percentage vote of Unit Owners specified in this Declaration shall require the specified percentage by number of Units rather than by percentage of interest in the Common Elements allocated to Units that would otherwise be applicable.

(b)     In the event the Voting Member is other than the Unit Owner, is not present at a meeting of the Association and has not voted by proxy, then if the Unit Owner is present, such Unit Owner shall be entitled to cast all of the votes allocated to the Unit. In the event the ownership of a Unit is composed of multiple owners and the Voting Member is not present and has not voted by proxy, then if only one of the multiple owners of a Unit is present, such owner shall be entitled to cast all of the votes allocated to that Unit Ownership. In the event more than one owner of a Unit Ownership is present and the Voting Member is not present and has not voted by proxy, the votes allocated to that Unit Ownership may be cast only in accordance with the agreement of a majority in interest of the group of owners comprising the Unit Owner who are present. Majority agreement shall be deemed to have occurred if any one of the multiple owners casts the votes allocated to that Unit Ownership without protest being made promptly to the person presiding over the meeting by any of the other owners of the Unit Ownership.

(c)    In the event of a tie vote by the Board or the Association, the parties shall decide the vote by a coin flip.

5.4    **Meetings.**

(a)    **Quorum.** Meetings of the Unit Owners shall be held at the Property or at such other place in the City of Chicago, Illinois, as may be designated in any notice of a meeting.  The presence in person or by proxy at any Unit Owners' meeting of Voting Members or other Unit Owners representing at least seventy five (75%) percent of the Unit Ownerships shall constitute a quorum unless the Unit Owners, in accordance with the Act, provide otherwise.  Unless otherwise expressly provided herein, any action may be taken at any meeting of the Unit Owners at which a quorum is present upon the affirmative vote of the Voting Members (or Unit Owners pursuant to Section 5.3(b)) having a majority of the total votes present at such meeting.

(b)    **Initial and Annual Meeting.** The initial meeting of the Unit Owners shall be held not less than twenty-one (21) days after written notice given by the Declarant or Developer.  The initial meeting shall be held no later than the first to happen of (i) sixty (60) days after the date the Declarant has sold and delivered its deed for at least seventy-five (75%) percent of the Unit Ownerships and (ii) three (3) years from the date of the recording of this Declaration.  Thereafter, there shall be an annual meeting of the Unit Owners on the second Tuesday of December following such initial meeting, and on the second Tuesday of December of each succeeding year thereafter at 7:30 P.M., or at such other reasonable time or date as may be designated by written notice of the Board delivered to the Unit Owners in accordance with Section 13.2 hereof.

(c)    **Special Meetings.** Special meetings of the Unit Owners may be called at any time after the initial meeting provided for in Section 5.4(b) for the purpose of considering matters which, by the terms of this Declaration, require the approval of all or some of the Voting Members, or for any other reasonable purpose provided, however, that the following matters shall require the approval of Voting Members (or Unit Owners pursuant to Section 5.3(b)) having not less than two-thirds (2/3) of the total votes: (i) the merger or consolidation of the Association; (ii) the sale, lease, exchange or other disposition (excluding the mortgage or pledge) of all, or substantially all of the property and assets of the Association; and (iii) the purchase or sale or lease of Units or other real estate by the Association on behalf of all Unit Owners.  Special meetings may be called by written notice authorized by a majority of the Board, the President of the Board, or by twenty percent (20%) of the Unit Owners, and delivered not less than ten (10) days and no more than thirty (30) days prior to the date fixed for such meeting.  The notices shall specify the date, time and place of the meeting and the matters to be considered.  Matters to be submitted to the Unit Owners at special membership meetings shall be submitted by the Board.

5.5    **Notices of Meetings.** Notices of meetings of the Unit Owners required to be given by this Declaration may be delivered either personally or by mail to the designated Voting Member, addressed to each such person at the address given by the Unit Owner to the Board for

the purpose of service of such notice, or to the Unit of the Unit Owner with respect to which such voting right appertains, if no address has been given to the Board by the Voting Members, provided that any such notice shall be delivered no less than ten (10) and no more than thirty (30) days prior to the date fixed for such meeting and shall state the time, place and purpose of such meeting. The Association (or the Declarant or the Developer, in the exercise of the powers set forth in Section 13.1) shall furnish any Unit Owner, within ten (10) days of receipt by it of a request therefor, the names, addresses and the number of votes of each Unit Owner entitled to vote at each meeting to elect members of the Board. For purposes of this Section 5.5, a notice shall be deemed "delivered" upon compliance with the notice provisions set forth in Section 13.2.

5.6   **Board of Directors**.

(a)   The initial Board of Directors designated by the Declarant or Developer pursuant to Section 5.1 shall consist of three (3) directors who shall serve without compensation. Such initial Board shall serve for a period commencing on the date this Declaration is executed and ending upon the qualification of the directors elected at the initial meeting held as provided in Section 5.4(b). The initial Board may, on behalf of the Declarant or Developer, exercise the rights reserved in Section 13.1. At the initial meeting held as provided in Section 5.4(b), the Voting Members shall elect the Board. In all elections for members of the Board, each Voting Member shall be entitled to vote on a non-cumulative voting basis and the candidates receiving the highest number of votes with respect to the number of Board offices to be filled shall be deemed to be elected. At the initial meeting three (3) Board members shall be elected. The two (2) persons receiving the highest number of votes shall be elected to a term ending on the date of the second (2nd) annual meeting, and the one (1) person receiving the next highest number of votes shall be elected for a term ending on the date of the first annual meeting. The election as between candidates receiving the same number of votes shall be determined by lot. Any candidate for election to the Board, and such candidate's representative, shall have the right to be present at the counting of ballots at such election. Upon the adoption of appropriate rules by the Board (including rules to verify the status of the Unit Owner issuing a proxy or casting a ballot), elections may be conducted by secret ballot, whereby the voting ballot is marked only with the percentage interest for the Unit and the vote itself. All members of the Board shall be elected at large. Upon the expiration of the terms of office of the Board members so elected at the initial meeting and thereafter, all successors shall be elected for a term of two (2) years each. The Unit Owners owning at least two-thirds (2/3) of the Unit Ownerships may from time to time at any annual or special meeting increase or decrease the term of office of Board members, provided that the terms of at least one-third (1/3) of the persons on the Board shall expire annually. Members of the Board shall receive no compensation for their services. Vacancies in the Board, including vacancies due to any increase in the number of persons on the Board, shall be filled by a vote of the Voting Members at the meeting at which the vacancy occurs, the next annual meeting or a special meeting of the Unit Owners called for such purpose. Vacancies may also be filled by the Board by a vote of not less than two-thirds (2/3) of the remaining members thereof at a meeting of the Board which vacancy shall be filled until the next annual meeting of the Unit Owners or for a period

terminating no later than thirty (30) days following the filing of a petition signed by Voting Members holding at least twenty (20%) percent of the votes of the Association requesting a meeting of the Unit Owners to fill the vacancy for the balance of the term. A meeting of the Unit Owners shall be called for purposes of filling a vacancy on the Board no later than thirty (30) days following the filing of a petition signed by Voting Members with at least twenty (20%) percent of the votes of the Association requesting such a meeting. Except as otherwise provided in this Declaration, the Property shall be managed by the Board and the Board shall act by majority vote of those present at its meetings when a quorum exists. Meetings of the Board may be called, held and conducted in accordance with such regulations as the Board may adopt; provided, however, that (i) each Unit Owner shall be entitled to notice, in the same manner as provided in Section 5.5, of any meeting of the Board called for the purpose of considering the adoption of the proposed annual budget or any increase or establishment of an assessment; and (ii) the Board shall meet no less than four (4) times each year. Two-thirds (2/3) of the total number of members on the Board shall constitute a quorum. Any member of the Board may succeed himself or herself.

(b)     Except as otherwise provided in Section 6.2, in the event the Board adopts an annual budget or a supplemental budget or a separate or special assessment which would result in the sum of all regular, separate and special assessments against the Unit Owners in any fiscal or calendar year exceeding one hundred fifteen percent (115%) of the sum of all regular, separate and special assessments for the preceding year, the Board shall, upon written petition delivered to the Board within fourteen (14) days of the Board action, which petition is submitted by Voting Members with at least twenty percent (20%) of the votes of the Association, call a meeting of the Unit Owners which meeting shall be held within thirty (30) days of the date of delivery of the petition to consider the budget or assessment. Unless a majority of the votes of the Voting Members present at the meeting are cast to reject the budget or assessment, the budget or assessment, as the case may be, shall be deemed to be ratified, regardless of whether or not a quorum is present.

(c)     The Board shall elect from among its members (i) a President who shall preside over both its meetings and those of the Unit Owners, and who shall be the chief executive officer of the Board and the Association and who shall be designated to mail and receive all notices and execute all amendments to this Declaration as provided in this Declaration and in the Act; (ii) a Secretary who shall keep the minutes of all meetings of the Board and of the Unit Owners and who shall, in general, perform all the duties incident to the office of the Secretary; (iii) a Treasurer to keep the financial records and books of account; and (iv) such additional officers as the Board shall see fit to elect. The term of office for each officer shall be until the next succeeding annual meeting of the Board, and until his or her successor shall be duly elected or appointed and qualified pursuant hereto. Vacancies in any office shall be filled by the Board by a majority vote of the remaining members thereof at a meeting of the Board. Any director elected to fill a vacancy in any office shall hold that office for a term equal to the unexpired term of the officer he or she succeeds. Any officer may be removed for cause at any time by a vote

of at least two-thirds (2/3) of the total membership of the Board at a meeting of the Board. Any officer may succeed himself or herself.

(d)     Written notice stating the place, date and hour of any meeting of the Board shall be delivered to each member of the Board not less than five (5) days prior to the date of such meeting. The purpose for which the meeting is called shall be stated in the notice.

(e)     All meetings of the Board, except as otherwise provided by the Act, shall be open to attendance by any Unit Owner, and notice thereof, except as otherwise provided herein, shall be mailed or delivered to each Unit Owner not less than forty-eight (48) hours prior thereto unless a written waiver of such notice is signed by such Unit Owner before the meeting is convened. A copy of such notice of meeting required to be given hereunder shall be posted in a conspicuous place in each Building at least forty-eight (48) hours prior to the time fixed for such meeting. Any vote on matters which may, under the Act, be discussed in a meeting not open to attendance by any Unit Owners, shall be taken at a meeting or portion thereof open to any Unit Owners. Any Unit Owner may record the proceedings at meetings or portions thereof required to be open under the Act by tape, film, or other means provided, however, that the Board may prescribe reasonable rules and regulations to be given the right to make such recordings.

(f)     Within sixty (60) days following the election of a majority of members of the Board other than those members designated by the Declarant or Developer, the Developer shall deliver to the Board the following:

(i)     All original documents as recorded or filed pertaining to the Property, its administration, and the Association, such as this Declaration, Articles of Incorporation for the Association, other condominium instruments, annual reports, a minute book containing the minutes of any meetings held by the Association and any rules and regulations governing the Property and contracts, leases, or other agreements entered into by the Association. If any original documents are unavailable, copies may be provided if certified by affidavit of the Developer, or an officer or agent of the Developer, as being a complete copy of the actual document recorded as filed;

(ii)     A detailed accounting by the Developer, setting forth the source and nature of receipts and expenditures in connection with the management, maintenance and operation of the Property and copies of all insurance policies and a list of any loans or advances to the Association which are outstanding;

(iii)     Any Association funds on hand which shall have been at all times segregated from any other funds of the Developer;

(iv)     A schedule of all real or personal property, equipment and fixtures owned by the Association, including documents such as invoices or bills of sale, if available, evidencing transfer of title to such property, warranties, if any, for all

real and personal property and equipment, deeds, title insurance policies, and all tax bills; and

(v)     A list of all litigation, administrative actions and arbitrations involving the Association; any notices of governmental bodies involving actions taken or which may be taken by the Association; engineering and architectural drawings and specifications as approved by any governmental authority; all other documents filed with any other governmental authority; all governmental certificates; correspondence involving enforcement of any Association requirements; copies of any documents relating to disputes involving Unit Owners and originals of all documents relating to everything listed in this Section 5.6(f)(5).

(g)     Except for directors designated by Declarant or Developer pursuant to Section 5.1, any Board member may be removed from office, at any time after the election of directors at the initial meeting of Unit Owners pursuant to Section 5.6(a), by affirmative vote of the Voting Members representing at least two-thirds (2/3) of the Unit Ownerships, at any special meeting called for the purpose.  A successor to fill the unexpired term of a Board member removed may be elected by the Voting Members at the same meeting or any subsequent meeting called for that purpose.

5.7     **General Powers of the Board**.  The Board shall have the following general powers:

(a)     Subject to the rights reserved by the Declarant or Developer pursuant to Section 13.1, the Board may engage the services of an agent or management company to manage the Property for which the Board is responsible pursuant to this Declaration (which management agent may be an affiliate of Declarant or Developer), to the extent deemed advisable by the Board; provided, however, that any agreement for professional management, except as hereinafter provided, shall provide for termination by the Board without cause upon ninety (90) days written notice without payment of a termination fee, and shall provide for termination by the Board with cause on thirty (30) days written notice without payment of a termination fee.  The management agreement shall require the management agent to furnish a fidelity bond in such amounts and with such provisions as are specified in Section 5.8(a)(iii) hereof.  Subject to the provisions of the Act, the initial agreement for professional management entered into prior to the initial meeting of the Unit Owners may be with the Developer or an affiliate of the Developer or an agent selected by the Developer, subject to termination by the Board without cause at any time after the initial meeting of the Unit Owners without payment of a termination fee.  Any management company holding reserve funds of the Association and other associations shall at all times maintain a separate account for each association provided, however, that for investment purposes, the Board may authorize the management company to maintain the Association's reserve funds in a single interest bearing account with similar funds of other associations.  The management company shall at all times maintain records identifying all monies of each association in such investment accounts. The Board may also authorize the management company to hold all operating funds of

the Association and other associations in a single operating account but such management company shall at all times maintain records identifying all monies of each association in such operating account. Any operating and reserve funds held by the management company for the Association shall not be subject to attachment by any creditors of the management company.

(b)     The Board or its agents, upon reasonable notice, and subject to the terms and conditions of any applicable leases, may enter any Unit when necessary in connection with any maintenance, repair or replacement or construction for which the Board is responsible or to make emergency repairs as may be necessary to prevent damage to the Common Elements or to any other Unit or Units.

(c)     Except as otherwise provided in the budget, the Board's powers hereinafter enumerated shall be limited in that the Board shall have no authority to acquire and pay for from the maintenance fund any structural alterations to, capital additions to, or capital improvements of, the Common Elements (other than for purposes of replacing or restoring portions of the Common Elements, subject to all the provisions of this Declaration or unless required for emergency repair, protection or operation of the Common Elements) requiring an expenditure in excess of Twenty-Five Thousand and no/100 Dollars ($25,000.00) without in each case the prior written approval of Voting Members representing at least two-thirds (2/3) of the Unit Ownerships. Notwithstanding the foregoing or anything to the contrary contained in this Declaration, the foregoing limitations of this Section 5.7(c) shall not be applicable to expenditures for repair, replacement, or restoration of existing portions of the Common Elements. For the purposes of this Section 5.7(c) only, the phrase "repair, replacement, or restoration" means expenditures to deteriorated or damaged portions of the Property related to the existing decorating, facilities, or structural or mechanical components, interior or exterior surfaces, or energy systems and equipment with the functional equivalent of the original portions of such area. Replacement of the Common Elements may result in an improvement over the original quality of such Common Elements or facilities; provided that, if the improvement results in a proposed expenditure exceeding five percent (5%) of the annual budget, the Board, upon written petition submitted by Voting Members with at least twenty percent (20%) of the votes of the Association which petition is delivered to the Board within fourteen (14) days of the Board action to approve such expenditure, shall call a meeting of the Unit Owners to consider such expenditure which meeting shall take place within thirty (30) days of the date of delivery of the petition. Unless a majority of the votes of the Voting Members present at the meeting are cast to reject the expenditure, the expenditure shall be deemed to be ratified, regardless of whether or not a quorum is present.

(d)     All agreements, contracts, deeds, leases, vouchers for payment of expenditures and other instruments shall be signed by such officer or officers, agent or agents of the Board and in such manner as from time to time shall be determined by written resolution of the Board. In the absence of such determination by the Board, such documents shall be signed by the President of the Board and countersigned by the Treasurer or Secretary.

(e) The Board shall have the power and duty (i) to provide for the designation, hiring, and removal of employees and other personnel, including lawyers, accountants, engineers and architects, (ii) to engage or contract for the services of others, (iii) to make purchases for the maintenance, repair, replacement, administration, management, and operation of the Property, and (iv) to delegate any such powers to the management agent (and any such employees or other personnel as may be employees of the management agent).

(f) The Board shall have the power to exercise all other powers and duties of the Board of Directors or Unit Owners as a group referred to in this Declaration or the Act. More specifically, the Board shall exercise for the Association all powers, duties and authority vested in it by law or this Declaration except for such powers, duties and authority reserved by law or this Declaration to the members of the Association. The powers and duties of the Board shall include, but shall not be limited to, the following matters:

(i) Operation, care, upkeep, maintenance, replacement and improvement of the Common Elements in a neat and orderly manner;

(ii) Preparation, adoption and distribution of the annual budget for the Property;

(iii) Levying of assessments and collection thereof from Unit Owners and expenditure of amounts collected;

(iv) Borrowing funds;

(v) Employment and dismissal of the personnel necessary or advisable for the maintenance and operation of the Common Elements;

(vi) Obtaining adequate and appropriate kinds of insurance;

(vii) Purchasing and receiving conveyances of Unit Ownerships and owning, conveying, mortgaging, encumbering, leasing and otherwise dealing with Unit Ownerships conveyed to or purchased by it;

(viii) Adoption and amendment of rules and regulations covering the details of the operation and use of the Property (including, but not limited to, rules authorizing elections of Board members by secret ballot, whereby the voting ballot is marked only with the percentage interest for the Unit and the vote itself and rules to verify the status of the Unit Owner issuing a proxy or casting a ballot), but no rule or regulation shall be adopted or amended unless a meeting of the Unit Owners called for the specific purpose of discussing the proposed rules and regulations and/or amendment(s) is held, notice of which meeting contains the full text of the proposed rules and regulations and/or amendment(s); however, no rules or regulations may impair any rights guaranteed by the First Amendment

to the Constitution of the United States or Section 4 of Article I to the Illinois Constitution;

(ix)   Keeping of detailed, accurate records of the receipts and expenditures affecting the use and operation of the Property;

(x)   To have access to each Unit from time to time as may be necessary for the maintenance, repair or replacement of any Common Elements (to the extent the Association is responsible for such maintenance, repair or replacement) therein or accessible therefrom, or for making repairs therein necessary to prevent damage to the Common Elements or to other Unit or Units;

(xi)   Pay real property taxes, special assessments, and any other special taxes or charges of the State of Illinois or of any political subdivision thereof, or other lawful taxing or assessing body, which are authorized by law to be assessed and levied upon the real property of the Condominium and are not payable by Unit Owners directly;

(xii)   Impose charges for late payments of a Unit Owner's proportionate share of the Common Expenses, or any other expenses lawfully agreed upon, and after notice and an opportunity to be heard, levy reasonable fines for violation of this Declaration and rules and regulations of the Association;

(xiii)   By a majority vote of the entire Board, assign the Association's right to future income from Common Expenses, assessments or other sources, and mortgage or pledge substantially all of the remaining assets of the Association;

(xiv)   Record the dedication of a portion of the Common Elements to a public body for use as or in connection with a street or utility where authorized by the Unit Owners under the provisions of Section 4.9 hereof;

(xv)   Record the granting of an easement pursuant to the provisions of Section 4.3 and any instruments required under Sections 5.7(f)(vii) or (xiii) or elsewhere in this Declaration;

(xvi)   Except to the extent limited by this Declaration and the Act, the Board shall have the power and duty to exercise the rights of, and perform all of the covenants and obligations imposed upon, the Association or the Unit Owners, including, without limitation, obligations imposed on the Property under the Master Declaration or by the Master Association, and to execute any and all instruments required pursuant thereto;

(xvii)   Adoption and amendment of rules and regulations or a schedule for the purpose of coordinating and regulating construction and move-in by other Unit Owners and Occupants and other purposes permitted hereunder and under the Act; and

(xviii) To reasonably accommodate the needs of a handicapped Unit Owner as required by the federal Civil Rights Act of 1968, the Illinois Human Rights Act and any applicable local ordinances in the exercise of its powers with respect to the use of the Common Elements or approval of modifications in an individual Unit.

(g)  Subject to the provisions of Sections 4.6 and 6.8, the Board for the benefit of all the Unit Owners shall acquire and shall pay as Common Expenses, the following:

(i)  Operating expenses of the Common Elements, including water, electricity, gas and telephone and other necessary utility service for the Common Elements and (if not separately metered or charged) for the Units.

(ii)  Services of any person or firm to act on behalf of the Unit Owners in connection with real estate taxes and special assessments on the Unit Ownerships, and in connection with any other matter where the respective interests of the Unit Owners are deemed by the Board to be similar and nonadverse to each other.

(iii)  Painting, cleaning, outside window washing, tuckpointing, maintenance, decorating, striping, snow and ice removal, repair, and replacement of the Common Elements (but not including the interior surfaces of the Units and of the perimeter doors appurtenant thereto, and repair of windows which the Unit Owners shall paint, clean, decorate, maintain, and repair) and such furnishings and equipment for the Common Elements as the Board shall determine are necessary and proper.

(iv)  Painting, maintenance, repair and replacement of each Garage, including the Unit Parking Spaces therein.

(v)  Any other materials, supplies, utilities, furniture, equipment, labor, services, maintenance, repairs or structural alterations which the Board is required to secure or pay for pursuant to the terms of this Declaration and By-Laws (including without limitation, the obligations to monitor, maintain and repair the engineered barriers on the Property and to preserve the NFR Letters all as described in Section 5.7(k) below), or which in its opinion shall be necessary or proper for the maintenance and operation of the Property as a first-class residential condominium development or for the enforcement of the restrictions contained herein.

(vi)  Any amount necessary to discharge any mechanics' lien or other encumbrance levied against the entire Property or any part thereof which may in the opinion of the Board constitute a lien against the Property or against the Common Elements, rather than merely against the interests therein of particular Unit Owners. Where one or more Unit Owners are responsible for the existence of such lien, they shall be jointly and severally liable for the cost of discharging it

and any costs incurred by the Board by reason of such lien or liens shall be specifically assessed to such Unit Owners.

(vii)   Maintenance and repair of any Unit if such maintenance or repair is necessary, in the discretion of the Board, to protect the Common Elements or any other portion of a Building, or if a Unit Owner of any Unit has failed or refused to perform such maintenance or repair within a reasonable time after written notice of the necessity of such maintenance or repair delivered by the Board to such Unit Owner, provided that the Board shall levy a special assessment against such Unit Owner for the cost of such maintenance or repair.

(viii)   All fees, costs and expenses imposed, assessed or levied against the Condominium or the Property under the Master Declaration or by the Master Association.

(h)   Prior to the initial meeting of Unit Owners, the Declarant or Developer shall, subject to the terms of this Declaration, the Master Declaration and the Act, have the authority to lease or to grant licenses, concessions, easements, leases or contracts with respect to any part of the Common Elements, all upon such terms as the Declarant or Developer deems appropriate. Upon election of the first Board, and thereafter, the Board by a vote of at least two-thirds (2/3) of the persons on the Board shall have the same authority as aforesaid.

(i)   The Board shall have the power to bid for and purchase any Unit Ownership at a sale pursuant to a mortgage foreclosure, or a foreclosure of the lien for Common Expenses under the Act, or at a sale pursuant to an order of direction of a court, or other involuntary sale, upon the consent or approval of Voting Members representing not less than two-thirds (2/3) of the total votes.

(j)   The Association shall have no authority to forebear the payment of assessments by any Unit Owner.

(k)   The Association shall monitor, maintain and repair all of the engineered barriers on the Property described in the NFR Letters and preserve the validity of the NFR Letters, which obligations include, without limitation, engaging environmental consultants or contractors to assist in such monitoring, maintenance, repair or other actions and insuring that all contractors (including utility companies) working in subsurface areas located beneath such engineered barriers described in the NFR Letters comply with all requirements of the NFR Letters (including health and safety requirements) and that all replacement of, and other work undertaken with respect to, such engineered barriers is performed in a manner consistent with the NFR Letters and satisfactory to the Illinois Environmental Protection Agency and all other governmental agencies having jurisdiction over the Property.

5.8    **Insurance**.

(a)    The Board shall have the authority to and shall obtain and maintain insurance for the Property as follows:

(i)    Physical damage insurance on the Property (including the Common Elements and the Units, as well as the Limited Common Elements, and except as otherwise determined by the Board, the bare walls, floors, and ceilings of the Unit), subject to the following conditions:

(A)    Such insurance shall be exclusive of additions, alterations, improvements and betterments made by a Unit Owner to such Unit Owner's Unit or any Common Element in accordance with the provisions of this Declaration. For purposes of this Section 5.8(a)(i), Common Elements are deemed (1) to include fixtures located within the unfinished interior surfaces of the perimeter walls, floors, and ceilings of the individual Units initially installed by the Developer as well as fixtures, building service equipment and common personal property and supplies belonging to the Association, and (2) to exclude floor, wall, and ceiling coverings. "Additions, alterations, improvements and betterments" means all decorating, fixtures, and furnishings installed or added to and located within the boundaries of the Unit, including electrical fixtures, appliances, air conditioning and heating equipment, water heaters, or built-in cabinets installed by Unit Owners.

(B)    The Property shall be insured for an amount not less than one hundred percent (100%) of its full insurable replacement cost on a blanket basis less deductibles but including coverage for the increased cost of construction due to building code requirements, at the time the insurance is purchased and at each renewal date.

(C)    Replacement cost values are to be reviewed annually, and the insurance policy or policies shall be endorsed with an agreed amount clause. The cost of any and all appraisals for insurance purposes shall be Common Expenses.

(D)    Such policies shall provide coverage for special form causes of loss and shall be no less than "all risk" on real property and "broad form" named perils on personal property, and such other perils as may be deemed appropriate by the Board. The policies for such insurance shall contain an inflation guard endorsement, a building ordinance or law endorsement, a construction code endorsement, and a special condominium endorsement, if required.

(E)    Any fixtures, equipment or other property within the Units which are to be financed by a mortgage to be purchased by Fannie Mae or Freddie Mac (regardless of whether or not such property is a part of the Common Elements) must be covered in and by such property insurance policy.

(ii)    Commercial General Liability insurance insuring against claims and liabilities arising in connection with the ownership, existence, use or management of the Property, hazards of premises/operation, products and completed operations, contractual liability, personal injury liability (with exclusions (a) and (c) deleted), independent contractors and other extensions as deemed necessary by the Board.  Such insurance shall provide limits of liability as deemed desirable by the Board, but in no event for less than One Million Dollars ($1,000,000.00) with respect to each occurrence.  Such policy shall be endorsed to cover cross-liability claims of one insured against the other, and shall contain a "severability of interest" endorsement which shall preclude the insurer from denying the claim of a Unit Owner on account of the negligent acts of the Association or another Unit Owner.  Such insurance coverage shall insure the Board, the Association, the management agent, and their respective employees and agents and all persons acting as agents.  The Developer must be included as an additional insured in its capacity as a Unit Owner, manager, Board member or officer.  The Unit Owners must be included as additional insured parties but only for claims and liabilities arising in connection with the ownership, existence, use or management of the Common Elements, commercial space owned and leased by the Association, if any, and public ways of the Condominium.  The insurance must cover claims of one or more insured parties against other insured parties.

(iii)    One (1) or more fidelity bonds insuring the Association, the Board, the Unit Owners and the management agent, if any, who control or disburse funds of the Association, against loss of funds as a result of the fraudulent or dishonest acts of any persons handling the funds of the Association, the Board or the Unit Owners.  The amount of such fidelity bonds, to the extent available, shall not be less than the estimated maximum amount of funds, including reserve funds, held in the name, or on behalf of, the Association at any given time during the term of any such fidelity bond; provided, however, in no event may the aggregate amount of such fidelity bonds be less than a sum equal to three (3) months aggregate assessments on all Units plus reserves.  Any fidelity bond procured by the management agent shall make the Association an obligee thereunder. All fidelity bonds must also comply with all applicable requirements of Fannie Mae, the Federal Housing Administration, Freddie Mac and the Department of Veterans' Affairs.  All fidelity bonds required hereunder shall contain waivers of any defense based on the exclusion of persons who serve without compensation from any definition of "employee" or similar expression. Each fidelity bond shall provide that it may not be cancelled for non-payment of any premiums or otherwise substantially modified without at least ten (10) days' prior written notice to the Board and to all First Mortgagees.  The premiums on all fidelity

bonds hereinabove required, except those to be maintained by the management agent of the Condominium, shall be paid by the Association as a Common Expense.

(iv)     Worker's Compensation and Employer Liability (minimum amount $500,000) as necessary to comply with applicable laws, including Voluntary Compensation to cover employees not covered under the Illinois statute for benefits.

(v)     Such other insurance, which may include, without limitation, any or all of the following, in such amounts as the Board shall deem desirable; umbrella liability, employer liability, directors and officers liability insurance, boiler and machinery coverage, plate glass insurance; Errors and Omissions coverage for the directors of the Board; employment practices; environmental hazards; equipment breakdown; and Medical Payments coverage for members of the public (excluding Unit Owners and Occupants) injured on the Property, without regard to liability of the Board or the Association.

(vi)     If any improvements on the Property are within a Special Flood Hazard Area as shown on the applicable Flood Insurance Rate Map prepared by the Federal Emergency Management Agency, Flood insurance on the Common Elements, including all contents which are Common Elements, for an amount not less than one hundred percent (100%) of the full replacement cost thereof on a blanket basis, or the maximum coverage available through the National Flood Insurance Program, if less than full replacement cost. All of the requirements of Subsections (b) through (j) of this Section 5.8 applicable to the policy of insurance described in Section 5.8(a)(i) shall be applicable to the policy of insurance described in this Section 5.8(a)(iv).

The premiums for this insurance, except as otherwise provided in this Section 5.8, shall be Common Expenses. The Board may, in the case of a claim for damage to a Unit or the Common Elements, (x) pay the deductible amount as a Common Expense, (y) after notice and an opportunity for a hearing, assess the deductible amount against the Unit Owner(s) who caused the damage or from whose Unit(s) the damage or cause of loss originated, or (z) require the Unit Owner(s) of the Unit(s) affected to pay the deductible amount.

(b)     All insurance provided for in this Section 5.8 shall be effected under valid and enforceable policies issued by insurance companies authorized and licensed to transact business in the State of Illinois and holding a current Policyholder's Alphabetic and Financial Size Category Rating of not less than A/VIII according to Best's Insurance Reports - International Edition or a substantially equivalent rating from a nationally-recognized insurance rating service, or such lower rating as may be prudent given the cost and availability of insurance coverages at a given time. All such policies relating to real property shall contain the standard mortgagee clause or equivalent endorsement which is commonly accepted by private institutional mortgage investors in the State of Illinois and shall provide a minimum of ten (10) days advance written notice

to the Board (on behalf of the Association) and all First Mortgagees if such policy is to be canceled or substantially modified.

(c)     All policies of insurance of the character described in Section 5.8(a)(i): (i) shall name as an insured (in addition to all other required insured parties as provided in this Section 5.8) the Insurance Trustee described in Section 5.8(f)(ii), as the interest of such insured party may appear; (ii) shall be without contribution as respects other such policies of insurance carried individually by the Unit Owners, whether such other insurance covers their respective Units or the additions and improvements made by such Unit Owners to their respective Unit; (iii) shall provide that notwithstanding any provision thereof which gives the insurer an election to restore damage in lieu of making a cash settlement therefor, such option shall not be exercisable in the event the Unit Owners elect to sell the Property or remove the Property from the provisions of the Act; and (iv) shall contain an endorsement to the effect that such policy shall not be terminated for nonpayment of premiums or substantially changed without at least ten (10) days' prior written notice to the Board and the First Mortgagee of each Unit Ownership. Policies of insurance of the character described in Section 5.8(a)(i) may contain an endorsement extending coverage so as to include the payment of Common Expenses with respect to damaged Units during the period of reconstruction thereof. Notwithstanding the issuance of standard mortgage clause endorsements under the policies of insurance of the character described in Section 5.8(a)(i), any losses under such policies shall be payable, and all insurance proceeds recovered thereunder shall be applied and disbursed, in accordance with the provisions of this Declaration.

(d)     All policies of insurance of the character described in Section 5.8(a)(i) shall name as insureds the Association, the Board, its management company, and the other agents (not including contractors and subcontractors) and employees of such Association, Board and management company and the Declarant and Developer in its capacity as a Unit Owner and Board member and shall also provide coverage for each Unit Owner. Insurance Policies carried pursuant to this Section 5.8 shall include each of the following provisions:  (i) each Unit Owner and secured party (including, without limitation, any First Mortgagee) is an insured person under the policy with respect to liability arising out of the Unit Owner's interest in the Common Elements or membership in the Association; (ii) the insurer waives its right to subrogation under the policy against any Unit Owner or members of the Unit Owner's household or other Occupants, the Association, members of the Board, the Declarant, the Developer, the management company and their respective employees and agents; (iii) the Unit Owner waives his or her right to subrogation under the Association policy against the Association and the Board; and (iv) the insurance provided shall not be prejudiced by any act or neglect of individual Unit Owners which is not in the control of all such Unit Owners collectively.

(e)     The Association, for the benefit of the Unit Owners and the First Mortgagee of each Unit Ownership, shall pay the premiums and obtain a binder on the policies of insurance described in Section 5.8(a) at least thirty (30) days prior to the expiration date of the respective policies, and upon written request therefor, shall notify

the First Mortgagee of each Unit Ownership of such payment within ten (10) days after the date on which payment is made.

(f)     Loss, if any, under any policies of insurance of the character described in Section 5.8(a)(i) shall be adjusted by and with the Board, which is hereby appointed as attorney-in-fact for each Unit Owner to represent the Unit Owners in any proceedings, negotiations, settlements and agreements relating to such loss, and the insurance proceeds on account of any such loss shall be paid and applied as follows:

(i)     To the Board, as trustee for each of the Unit Owners in their respective percentages of ownership in the Common Elements as established in this Declaration and each of the First Mortgagees, in the case of any one loss, of Fifty Thousand and No/100 Dollars ($50,000.00) or less in the aggregate; or

(ii)     In the case of any one loss exceeding Fifty Thousand and No/100 Dollars ($50,000.00) in the aggregate, then the insurance proceeds shall be paid to a financial institution or other entity to be designated by the Developer to act as trustee (the **"Insurance Trustee"**) for the Board, each Unit Owner and each of the First Mortgagees pursuant to the Act for the purpose of collecting and disbursing the insurance proceeds described in this subsection (ii).  If such entity (or its successor appointed pursuant hereto) shall fail or cease for any reason to act as the Insurance Trustee, or if the Board decides at any time to appoint a different entity as Insurance Trustee, then the Board shall, pursuant to the Act, appoint as successor Insurance Trustee a corporation qualified to accept and execute trusts in the State of Illinois and having a capital of not less than Five Million and No/100 Dollars ($5,000,000.00).  Such proceeds shall be paid by the Insurance Trustee to or for the account of the Association, from time to time as work progresses, in such manner as shall be required to facilitate the restoration of the Property in accordance with the provisions of the Act.  The Association and the Insurance Trustee may, prior or subsequent to any such loss, enter into an insurance trust agreement further implementing the provisions of the Act and this Declaration with respect to the collection and disbursement of proceeds of insurance by the Insurance Trustee.

The Insurance Trustee or the Association, as the case may be, must hold any insurance proceeds in trust for Unit Owners and secured parties (including, without limitation, any First Mortgagee) as their interests may appear.  The proceeds must be disbursed first for the repair, or restoration of the damaged Common Elements, the bare walls, ceilings, and floors of the Units, and then to any additions, alterations, improvements and betterments the Association may insure.  All insurance proceeds, less the actual cost, fees and expenses, if any, incurred by the Board in connection with the adjustment of the loss, and the fees of the Insurance Trustee, if applicable, shall be applied to the payment of the cost of restoring the Property to substantially the same condition as it existed immediately prior to such damage or destruction, with each Unit and the Common Elements having the same vertical and horizontal boundaries as before, free from

vendor's, mechanics', materialman's, and other similar liens. Unit Owners are not entitled to receive any portion of the proceeds unless there is a surplus of proceeds after the Common Elements and Units have been completely repaired and restored and the Association has been terminated as trustee.

(g)     Each Unit Owner shall be responsible for (i) physical damage insurance on the personal property in such Unit Owner's Unit and elsewhere on the Property, and any additions, alterations, improvements and betterments to such Unit Owner's Unit (whether installed by such Unit Owner or any prior Unit Owner or whether originally in such Unit); (ii) such Unit Owner's personal liability to the extent not covered by the policies of liability insurance obtained by the Board for the benefit of all of the Unit Owners as above provided; and (iii) such Unit Owner's additional living expense. All policies of casualty insurance carried by each Unit Owner shall be without contribution with respect to the policies of casualty insurance obtained by the Board for the benefit of all of the Unit Owners as above provided. For the purposes of Sections 5.8(g) and 5.8(h), "additions, alterations, improvements and betterments" shall mean any property (excluding personal property readily removable without damage to the Unit) attached to the Unit, including without limitation, carpeting, flooring, wall covering, paint, paneling, toilets, fixtures, and cabinetry and all other items identified as "additions, alterations, improvements and betterments" in Section 5.8(a)(i)(A) above.

(h)     The Board shall not be responsible for obtaining physical damage insurance on any additions, alterations, improvements and betterments to a Unit or any personal property of a Unit Owner or any other insurance for which a Unit Owner is responsible pursuant to Section 5.8(g). In the event the Board does carry such insurance, and the premium therefor is increased due to additions, alterations, improvements and betterments of a Unit Owner, then the Board may assess against such Unit Owner such increased premium.

(i)     The Board may, by rule, require Unit Owners to obtain insurance covering their personal liability and compensatory (but not consequential) damages to another Unit caused by the negligence of the Unit Owner or his or her guests, residents, or invitees, or regardless of any negligence originating from his Unit. The personal liability of a Unit Owner or Association member must include the deductible of the Unit Owner whose Unit was damaged, any damage not covered by insurance required by this subsection, as well as the decorating, painting, wall and floor coverings, trim, appliances, equipment, and other furnishings. If the Unit Owner does not purchase or produce evidence of insurance requested by the Board, the Directors may purchase the insurance coverage and charge the premium cost back to the Unit Owner. In no event shall the Board be liable to any person either with regard to its decision not to purchase the insurance, or with regard to the timing of its purchase of the insurance or the amounts or types of coverages obtained.

(j)     Each Unit Owner hereby waives and releases any and all claims which such Unit Owner may have against any other Unit Owner, the Association, its officers, members of the Board, Declarant, Developer, the management agent for the Property, if any, and their respective employees and agents, for any damage to the Common