# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 7681 | **DATE** | 3/16/2011 |
| **CASE TITLE** | CHA, et al vs. Board of Directors of Enclave at Galewood, et al | | |

**DOCKET ENTRY TEXT**

Defendants' motion to dismiss [15] is granted in part and denied in part. Plaintiffs are ordered to file by March 24, 2011, an amended complaint substituting The Enclave at Galewood Crossings Master Association for the Board of Directors of the Enclave at Galewood Crossings Master Association as a defendant. Defendants have until April 7, 2011 to answer the amended complaint.

■[ For further details see text below.]

Mailed notice by judge's staff.

## STATEMENT

The Chicago Housing Authority (the "CHA") and RSD Galewood, LLC ("RSD") filed suit against the Board of Directors of the Enclave at Galewood Crossings Master Association (the "Board") and its individual members, Charles Catchings, Marie Lane, Tasharia Gardner, Bianca Alarcon, and Elida Cruz (collectively, "defendants"). The CHA and RSD seek to invalidate a restriction adopted by the Master Association that prohibits the leasing of units in the Enclave at Galewood Crossings ("Galewood Crossings") by those who were not owners of units on the date the restriction was adopted. Defendants have moved to dismiss, claiming that the CHA and RSD lack standing to bring the suit and that the Board is not a proper party defendant.[1]

RSD is the developer of Galewood Crossings, a residential planned development on Chicago's far west side consisting of single family homes, townhomes, and two-flat condominium buildings. RSD also owns a number of residential units in the development. In late 2009, the CHA began negotiations to purchase eight townhomes and one two-flat building at Galewood Crossings from RSD. The CHA then planned to lease these units as low- and moderate-income housing. On July 23, 2010, the CHA and RSD executed a purchase and sale agreement for these units, conditioned on the CHA's ability to lease the units.

Galewood Crossings has at least three governing bodies, including the Master Association, a townhome association, and one or more condominium associations. The Master Association is governed by the Master Declaration of Covenants, Restrictions, Easements and Rights for The Enclave At Galewood Crossings (the "Master Declaration"). As originally enacted, the Master Declaration allowed each unit owner to lease the unit as long as the lease was for at least one year, in writing, and made subject to the Master Declaration. Some time after learning of the negotiations between the CHA and RSD, a special homeowners meeting was called for July 24, 2010 to vote on an amendment that would restrict leasing in Galewood Crossings to no more than 48 of the 192 residential units at any given time. After the amendment did not pass, the CHA and RSD met with the Board to explain the CHA's plans. During one of these meetings, an unidentified individual defendant stated, "we don't need any more poor black people living

here." Compl. ¶ 33. The issue of additional leasing restrictions, however, was never raised. On September 21, 2010, RSD received notice that, after homeowner approval, the Board had recorded a leasing restriction amendment to the Master Declaration on September 20, 2010. The leasing restriction provides: "Except as otherwise provided herein, no Residential Units may be leased. All Residential Unit Owners who own a Residential Unit as of the effective date of this Amendment shall have the right to lease such Residential Unit Owner's Residential Unit." Compl. ¶ 38. The amendment effectively prevents the sale of RSD's units to the CHA, as the CHA would not be permitted to lease the units as planned. As a large number of the CHA's tenants are minorities, including African-Americans, the CHA and RSD contend that the amendment violates the Fair Housing Act (the "FHA"), 42 U.S.C. § 3604(a)–(c).

Standing under the FHA is "as broad as is permitted by Article III of the Constitution." *Gladstone, Realtors* v. *Village of Bellwood*, 441 U.S. 91, 109, 99 S. Ct. 1601, 60 L. Ed. 2d 66 (1979) (citation omitted) (internal quotation marks omitted). Prudential limitations on standing do not apply; "the sole requirement for standing to sue . . . is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'" *Havens Realty Corp.* v. *Coleman*, 455 U.S. 363, 372, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982). Plaintiffs need not allege that they themselves were victims of discrimination, as long as they can establish that they were harmed by a discriminatory housing practice. *San Pedro Hotel Co.* v. *City of Los Angeles*, 159 F.3d 470, 475 (9th Cir. 1998).

Defendants argue that the CHA cannot allege an injury, as it does not own any units in Galewood Crossings and so cannot be injured by the leasing restriction. Similarly, they argue that RSD is not injured because it is not prohibited from leasing the units it owns as the restriction does not apply to those owning property on the date of the amendment's enactment. These arguments, however, ignore the fact that the CHA and RSD have entered into a contract for the sale and purchase of certain units at Galewood Crossings expressly conditioned upon the CHA's ability to lease the units it was to purchase, that the leasing restriction effectively kills the deal, and that the CHA and RSD have alleged that the adoption of the leasing restriction was racially motivated. Such allegations of racially motivated interference in the sale of residential real estate have been found to establish an injury in fact to organizations similarly situated to the CHA and RSD. *See Vill. of Arlington Heights* v. *Metro. Housing Dev.*, 429 U.S. 252, 261–63, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977) (developer seeking to construct racially integrated low income housing had standing under the FHA where the city refused to approve rezoning plans for a parcel of land that the developer agreed to purchase subject to zoning approval); *San Pedro Hotel Co.*, 159 F.3d at 475–76 (sellers of property to a developer of housing for the disabled who experienced allegedly improper interference with the sale by the city had standing to assert a claim under the FHA); *Simovits* v. *Chanticleer Condo. Ass'n*, 933 F. Supp. 1394, 1399–1400 (N.D. Ill. 1996) (owners of condominium governed by a "no children" rule had standing where they alleged that prospective buyers did not buy the condominium because they had children under eighteen); *Oak Ridge Care Ctr., Inc.* v. *Racine County*, 896 F. Supp. 867, 873 (E.D. Wis. 1995) (owners of elder care facility seeking to sell property to be used as a residential drug and alcohol rehabilitation center had standing where the county denied the potential buyer a conditional use permit); *Baxter* v. *City of Belleville*, 720 F. Supp. 720, 730–31 (S.D. Ill. 1989) (developer seeking to open an AIDS hospice had standing to sue where the city refused to grant him a special use permit for the property). The injury the CHA and RSD have suffered has been caused by defendants' actions in enacting the leasing restriction, and their injury would be redressed by the invalidation of the leasing restriction, the CHA's and RSD's requested relief. Thus, the CHA and RSD have standing to pursue the action.

Defendants also argue that the Board is not a proper defendant as it is not an entity capable of being sued. While the CHA and RSD have cited to several cases where a board of a homeowners' association has been subject to suit, the appropriate defendant is the Master Association itself. *See Willmschen* v. *Trinity Lakes Improvement Ass'n*, 840 N.E.2d 1275, 1280, 362 Ill. App. 3d 546, 298 Ill. Dec. 840 (2005) ("[P]laintiffs fail to explain how the board of directors of a corporation, as distinct from the corporation itself, may be held collectively liable. Plaintiffs cite no Illinois authority to support their claim, nor do we know of

| **STATEMENT** |
|---|
| any."). Plaintiffs are ordered to substitute the Master Association for the Board as a defendant. |

    1. While the motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6), standing is an issue of the court's subject matter jurisdiction and so properly considered under Rule 12(b)(1).