1       *TRANSCRIBED FROM DIGITAL RECORDING*

2       IN THE UNITED STATES DISTRICT COURT
        NORTHERN DISTRICT OF ILLINOIS
3            EASTERN DIVISION

4   CHICAGO HOUSING AUTHORITY AND          ) No. 10 C 7681
    RSD GALEWOOD, LLC,                     )
5                                          )
                    Plaintiff,             )
6                                          )
           v.                              )
7                                          )
    BOARD OF DIRECTORS OF THE ENCLAVE AT   ) July 23, 2012
8   GALEWOOD CROSSINGS MASTER ASSOCIATION, ) Chicago, Illinois
    CHARLES CATCHINGS, MARIE LANE, TASHARIA) 5:08 p.m.
9   GARDNER, BIANCA ALARCON, AND ELIDA CRUZ,)
                                           )
10                  Defendants.            ) Settlement

11          TRANSCRIPT OF PROCEEDINGS
     BEFORE THE HONORABLE MAGISTRATE JUDGE SUSAN E. COX
12

13  APPEARANCES:

14  For the Plaintiff       CHICAGO HOUSING AUTHORITY
    CHA:                    200 West Adams Street
15                          Suite 2100
                            Chicago, Illinois  60606
16                          BY:  MR. GEORGE J. BROWN

17
    For the Plaintiff       LEVENFELD PEARLSTEIN
18  RSD Galewood LLC:       2 North LaSalle Street
                            13th Floor
19                          Chicago, Illinois  60602
                            BY:  MR. CHRISTOPHER H. HEINTSKILL
20

21         TRACEY DANA McCULLOUGH, CSR, RPR
              Official Court Reporter
22            219 South Dearborn Street
                  Room 1426
23            Chicago, Illinois  60604
                  (312) 922-3716
24
    NOTE:  **Please notify of correct speaker identification.**
25  ***FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES***
    ***PORTIONS UNINTELLIGIBLE.***

```
 1   APPEARANCES CONTINUED:

 2   For all Defendants:      KOVITZ SHIFRIN NESBIT
                              750 West Lake Cook Road
 3                            Suite 350
                              Buffalo Grove, Illinois   60089
 4                            BY:   MR. CHRISTOPHER E. RALPH

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1     THE CLERK:  10 Civil 7681, CHA versus Board of
2  Directors of the Enclave at Galewood Crossings.
3     THE COURT:  Okay.  I want all of my attorneys and my
4  parties to come on up.  Everybody come on up.  And I want
5  everybody to line up and then speak your name and who you
6  represent if you're a lawyer into the microphone, please.
7     MR. HEINTSKILL:  Christopher Heintskill, attorney on
8  behalf of the plaintiff RSD Galewood.
9     THE COURT:  Okay.  And you guys identify yourselves
10 too.
11    MR. FISHBEIN:  Todd Fishbein, principal of Red Seal
12 Development .
13    MR. HOFFMAN:  Brian Hoffman, principal of Red Seal
14 Development.
15    THE COURT:  Thank you.
16    MR. BROWN:  George Brown, attorney on behalf of the
17 Chicago Housing Authority.
18    MR. AMARAL:  Scott Amaral, Acting Chief Housing
19 Officer for the Chicago Housing Authority.
20    MR. RALPH:  Chris Ralph on behalf of all defendants.
21    MR. CATCHINGS:  Charles Catchings, Board president
22 for the Enclave at Galewood Crossings Master Association.
23    MS. CRUZ:  Elida Cruz, Master Association Board
24 member.
25    MS. GARDNER:  Tasharia Gardener, Treasurer for the

1  Enclave at Galewood Crossings.
2  　　　　　THE COURT: Okay. We have spent the last little over
3  four hours negotiating a settlement in this case, and I am
4  going to do my best to put the terms of the settlement into the
5  record. I'd like everyone to listen very carefully, because at
6  the end of my recitation I'm going to ask you to either add or
7  and subtract from my record if I've gotten it incorrectly. And
8  then I'm going to ask everyone to indicate verbally that they
9  agree that these are the terms that we negotiated subject to
10 HUD approval, and obviously we have to draft -- you have to
11 draft a formal consent decree, but these are the essential
12 terms for that decree. And these are a little out of order,
13 but bear with me.
14 　　　　　The first thing is that CHA will install and pay for
15 24-hour surveillance cameras for the first year following -- 60
16 days after the closing of the sale of certain units to CHA by
17 the developer. After 60 -- I'm sorry, after six months CHA
18 will evaluate what has been recorded by those cameras. And
19 then if after an assessment is made, the cameras will revert to
20 essentially what's their normal operation.
21 　　　　　The CHA will engage in best efforts for screening the
22 qualifications of those individuals who intend to rent the
23 properties in question for the purpose of owning the units.
24 They will use the tenant selection plan, which as I understand
25 it -- as I understand it, screens for felony convictions as

1  well as ensuring that the individual works at least 20 hours a
2  week.  CHA will purchase seven units in total from the
3  developer.
4       CHA agrees that the units that it owns will not be
5  permitted to have placards indicating CHA ownership
6  information, and there will be no for rent or sale signs
7  displayed in said units, subject to the declarations that are
8  already in place in the community.  And that they will consult
9  with the Board of the Association on the selection of the
10 management company for the seven units.
11      The developer will complete the lift within 60 days
12 of the closing of the CHA units.  Weather and seasonal
13 permitting.  But upon closing will escrow an amount of $60,000
14 to ensure the completion of that work.  The application to draw
15 on that escrow fund will be made to this Court.  The developer
16 will grant nine vacant lots title free and clear to the Board
17 of Directors.  And in exchange for those -- in exchange for the
18 grant of the property that I've just described and the
19 completion of the lift, the Board of Directors is releasing the
20 developer from any liability on the completion of the park, the
21 lift slash road, and any landscaping.
22      The developer will create an escrow account with the
23 following provisions:  $25,000 will be set aside.  And again,
24 this would be on closing, for the payment of the costs of any
25 defense of claims brought against the Board of Directors

PDF created with pdfFactory trial version www.pdffactory.com

1  relating to alleged violations of duties in conjunction with
2  the settlement of the case along the terms of the consent
3  decree to the extent that insurance held by the Board does not
4  already cover those claims.  That escrow again would be --
5  application for funds to be dispersed out of that escrow
6  account would be made to the Court.
7         No Board members or previous Board members can bring
8  such a claim.  And the Board would have the right to pick its
9  own attorney.  And if it made an application for a claim to be
10 paid out of the escrow to the Court, that cost of making that
11 application will be paid out of that escrow.  And again, the
12 intent of this escrow would be to kick in to the extent any
13 insurance would not cover the claim.  And the claims would
14 again be limited to the -- specifically to claims against the
15 Board for breach of duties in conjunction with the settlement
16 of this case.
17        The consent decree will provide in sum and substance
18 that the leasing agreement entered into by the Board in
19 September of 2010 is unenforceable against the units that are
20 going to be purchased from the developer by the CHA, those
21 seven units that I previously identified.  Anything else?
22        MR. HEINTSKILL:  Judge, just for point of
23 clarification on the escrow.
24        THE COURT:  Yes.
25        MR. HEINTSKILL:  The 25,000 for closing -- or cost of

1   defense.  I wasn't sure and I apologize if you did lay it out,
2   but it's limited to one year, is that correct?
3              THE COURT:  Oh, it's one year.  Yes, it's one year.
4   Any claims should be made within a year.  Yes, thank you.  I
5   neglected that.  So thanks for bringing that up.  Anything
6   further from anybody?
7              MR. BROWN:  Yes.
8              THE COURT:  Yes, sir.
9              MR. BROWN:  Your Honor, the CHA screening process is
10  just not limited to someone working 20 hours.  If they are a
11  full-time student --
12             THE COURT:  Student, right.  Right.
13             MR. BROWN:  -- they are also eligible for the
14  program.
15             THE COURT:  Right.  Right.  Right.
16             MR. RALPH:  And, Judge, I apologize again if you
17  covered this, but the best efforts --
18             THE COURT:  That's what this is for.
19             MR. RALPH:  The best efforts of the CHA to utilize
20  the rent to own program for tenants.
21             THE COURT:  Right.
22             MR. BROWN:  Yes.
23             THE COURT:  Yes, I did say that, yes.
24             MR. RALPH:  And one last point of clarification.
25             THE COURT:  Sure.

PDF created with pdfFactory trial version www.pdffactory.com

1           MR. RALPH:  On the $25,000 escrow.
2           THE COURT:  Yes.
3           MR. RALPH:  If there are any remaining balance after
4  the one year, it will revert back.
5           THE COURT:  Yes.  After one year if there have been
6  no claims made, the balance is returned in full to the
7  developer.
8           MR. RALPH:  Would that be upon application to the
9  Court?
10          THE COURT:  Yes.  I would have to approve that.
11          MR. RALPH:  Okay.
12          THE COURT:  You would have to move -- you would be --
13 you know, your lawyer would be notified just in case there's
14 something you might not be aware of that had come in.  And then
15 I would say yes, the money would be returned.
16          MR. RALPH:  Right.
17          THE COURT:  I would close that out.  I'll probably
18 have to close out the other escrow as well on the completion of
19 the lift.
20          Okay.  So what I'm going to ask you guys to do now is
21 all indicate by saying yes that this is the -- that this is the
22 agreement that we negotiated.  And again, we all know that this
23 is subject to the HUD approval.  But subject to that proviso
24 indicate yes, you agree that this is the settlement.
25          MR. FISHBEIN:  Yes.

PDF created with pdfFactory trial version www.pdffactory.com

```
 1              MR. HOFFMAN:  Yes.
 2              MR. AMARAL:  Yes.
 3              MR. HEINTSKILL:  Yes, Your Honor.
 4              MR. BROWN:  Yes, Your Honor.
 5              MR. RALPH:  Yes, Your Honor.
 6              MR. CATCHINGS:  Yes, Your Honor.
 7              MS. CRUZ:  Yes.
 8              MS. GARDNER:  Yes.
 9              THE COURT:  So you all?
10              ENTIRE GROUP:  Yes.  Yes, Your Honor.
11              THE COURT:  Okay.  All right.  There not being any
12   further changes and everybody having agreed and assented, we
13   are concluded for the evening, or for the day.  Thank you very
14   much everyone for your patience and your willingness to
15   negotiate.  I appreciate it.  I will notify Judge Lee of what's
16   occurred so you're -- anything you have scheduled in front of
17   him is officially not -- is gone.  And I will set the matter
18   for status.  What would you suggest, lawyers?
19              MR. HEINTSKILL:  We're supposed to be before Judge
20   Lee on the 8th.
21              THE COURT:  That will be stricken, without a doubt.
22              MR. HEINTSKILL:  Do you want to schedule it for that
23   date or do you think that's too optimistic?
24              THE COURT:  I think that's too optimistic, and I'm
25   not going to be here.  Why don't I see you the week of August
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   27th.  I'll see just the lawyers.  On let's say the 29th, which
 2   is a Wednesday at 9:30.
 3              MR. RALPH:  That's fine with me.
 4              THE COURT:  Okay.  Good.
 5              MR. HEINTSKILL:  And, Judge, that -- again, is that
 6   for status?
 7              THE COURT:  Just a status.
 8              MR. HEINTSKILL:  Okay.
 9              THE COURT:  To see if there's any wrinkles I need to
10   hear about.
11              MR. HEINTSKILL:  We've agreed to a referral to Your
12   Honor for purposes of entering the consent decree as well.
13              THE COURT:  Right.  Right.  Yes.  The consent, right.
14              MR. HEINTSKILL:  Okay.
15              THE COURT:  Right.  Okay.  Wonderful.  Thank you.
16              MR. HEINTSKILL:  Thank you for your time, Your Honor.
17              MR. BROWN:  Thank you, Your Honor, very much.
18              THE COURT:  Again thank you everybody for your
19   presence.
20
21
22
23
24
25
```

PDF created with pdfFactory trial version www.pdffactory.com

| | |
|---|---|
| 1 | CERTIFICATE |
| 2 | I HEREBY CERTIFY that the foregoing is a true, |
| 3 | correct and complete transcript of the proceedings had at the |
| 4 | hearing of the aforementioned cause on the day and date hereof. |
| 5 | |
| 6 | */s/TRACEY D. McCULLOUGH*          *August 7, 2012* |
| 7 | Official Court Reporter                     Date |
| 8 | United States District Court<br>Northern District of Illinois<br>Eastern Division |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

PDF created with pdfFactory trial version www.pdffactory.com